UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)



| | |
|---|---|
| In re:<br><br>FORT HILL SQUARE ASSOCIATES and<br>FORT HILL SQUARE PHASE 2 ASSOCIATES,<br><br>Debtors. | Chapter 11<br>Case Nos. 04-13855-CJK<br>and 04-13857-CJK<br>Jointly Administered |

04cv 11472 PBS

### NOTICE OF APPEAL

IP Company, L.L.C. ("IP Company"), the secured creditor of debtors Fort Hill Square Associates and Fort Hill Square Phase 2 Associates (the "Debtors"), appeals under 28 U.S.C. § 158 from the following orders of the Bankruptcy Court, respectively (the "Orders"): (i) Order Granting Final Approval of Use of Cash Collateral and Granting of Adequate Protection dated May 28, 2004 [# 164]; and (ii) Amended and Corrected Order Granting Final Approval of Use of Cash Collateral and Granting of Adequate Protection dated June 3, 2004 [# 189]. A copy of each of the Orders is attached hereto as Exhibit A.

The names of all parties to the Order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

1. IP Company, L.L.C., c/o Richard E. Mikels (rmikels@mintz.com), Michael S. Gardener (mgardener@mintz.com), Daniel S. Bleck (dbleck@mintz.com), Kevin J. Walsh (kwalsh@mintz.com) and John T. Morrier (jmorrier@mintz.com), Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, (617) 542-6000, and Charles R. Dougherty, Epstein, Becker & Green, PC, 111 Huntington Avenue, Boston, MA 02199, (617) 342-4000.

2. Fort Hill Square Associates and Fort Hill Square Phase 2 Associates, c/o Harold B. Murphy, Charles R. Bennett, Jr., and D. Ethan Jeffrey, Hanify & King, P.C., One Beacon Street, 21st Floor, Boston, MA 02108, (617) 423-0400.

TRA 1926211v1



    3.    The Official Committee of Unsecured Creditors of the Debtors, c/o William R. Baldiga and John C. Elstad, Brown Rudnick Berlack Israels LLP, One Financial Center, Boston, MA 02111, (617) 856-8200.

Dated: June 7, 2004

Respectfully submitted,

IP COMPANY, L.L.C.

By its attorneys,

*/s/ Michael S. Gardener*
R. Robert Popeo, BBO No. 403360
Richard E. Mikels, BBO No. 345620
Michael S. Gardener, BBO No. 185040
Kevin J. Walsh, BBO No. 629984
Daniel S. Bleck, BBO No. 560328
John T. Morrier, BBO No. 628624
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Fax: (617) 542-2241

- AND –

Charles R. Dougherty, BBO No. 132260
Epstein, Becker and Green
111 Huntington Avenue
Boston, Massachusetts 02199
Telephone: (617) 342-4000
Fax: (617) 342-4001

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

In re:

FORT HILL SQUARE ASSOCIATES and
FORT HILL SQUARE PHASE 2 ASSOCIATES,

                Debtor

Chapter 11
Case Nos. 04-13855-CJK
and 04-13857-CJK
Jointly Administered

### ORDER GRANTING FINAL APPROVAL OF USE OF CASH COLLATERAL AND GRANTING OF ADEQUATE PROTECTION

Upon consideration of 1) the Debtors' Motion for the Entry of a Final Order Authorizing the Debtors to Use Cash Collateral (the "Motion for Use of Cash Collateral"); 2) the Objection and Supplement to Objection filed by IP Company, L.L.C. ("IP") to the Statement of Support of the Official Committee of Unsecured Creditors for a Final Order Authorizing the Debtor's Use of Cash Collateral; 3) Reply of the Chiofaro Company, Inc. and Chiofaro Building Services, Inc. to Opposition of IP to Entry of a Final Order Authorizing the Debtors Use of Cash Collateral; 4) the numerous Affidavits filed and Exhibits submitted by various interested parties; 5) the Memoranda of Law submitted by various interested parties; 6) the arguments of counsel at the hearing held on May 28, 2004; 7) the entire record of proceedings in these Chapter 11 cases; 8) the Bankruptcy Code provisions applicable to a Debtor's use of rents as cash collateral and adequate protection, in particular 11 U.S.C. Sections 361, 363, 552, and case law interpreting those sections, NOW, THEREFORE, the Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052:

At the hearing held on May 28, 2004, all of the interested parties indicated that the issues before the Court in connection with the Motion for Use of Cash Collateral Motion and IP's Objections could be decided on the submissions and record to date and without the necessity of live testimony or further evidence. Furthermore, at the hearing, all of the interested parties agreed that use of rents/cash collateral is appropriate to maintain the Debtors' properties, and that the majority of the expenses proposed to be paid by the Debtor are proper and reasonable. IP has not challenged the Debtors' Budgets, except for several categories, discussed below. Thus, the sole issues presented at this time are whether the interest of IP, the mortgagee, which has a security interest in rents, is adequately protected,[1] and whether certain expenditures of the Debtors to operate and maintain the properties which are set forth the Budgets attached to the Motion for Use of Cash Collateral are proper and reasonable expenses.

None of the interested parties have argued or submitted evidence that the value of the Debtors' real estate is declining. Indeed, at the hearing, the interested parties acknowledged that the value of the Debtors' real estate is not declining. Moreover, there has been no allegation, argument, or evidence presented that the stream of rental income generated by the Debtors is decreasing or that the value of IP's interest in net rents will diminish over time.

IP has an enforceable security interest in rents, including postpetition rents, see 11 U.S.C. Section 552(b), which are cash collateral, and its interest in rents is deserving of adequate protection. In addition to IP's security interest in rents, it has mortgages on the Debtors' real estate, which are separate and distinct interests. With respect to the realty, IP claims it is undersecured because the value of the Debtors' properties is less than the amount owed on its claim. However, because IP has a separate property right in rents, Bankruptcy Code Section

---

[1] IP has not filed a motion for adequate protection with respect to the Debtors' realty.

2

552(b) has the effect of increasing the amount of collateral that secures a claim, subject to an "equities of the case" exception.[2] The issue presented is whether the Debtor must protect the value of the collateral from diminution. In the absence of evidence that the value of the real property is declining, IP does not lack adequate protection in the realty. With respect to the rents, IP does not lack adequate protection in the present value of the future stream of rents because, according the Debtors' Budgets, the net rents remain steady and are increasing.

The Court finds even though further adequate protection is not necessary, the Debtors' proposal of a replacement lien on postpetition rents, so called "renewal rents," further protects IP's interest in rents. "This is because the lien on each month's rents replaces the lien on the prior month's rents, so there is ... equal value under Section 361 of the Bankruptcy Code." In re Wrecclesham Grange, Inc., 221 B.R. 978 980 (Bankr. M.D. Fla. 1997). Thus, as long as the rental stream is steady or increasing, and is not decreasing, IP's security interest in rents is adequately protected by a lien on renewal rents as the Debtors use of rental income does not diminish the value of the cash collateral. The Debtors' Budgets demonstrate that that the Debtors will have positive cash flow, and that IP's interest in rents will not be diminished during these Chapter 11 cases.

With respect to IP's arguments that administrative expenses of Debtor's professionals, management fees over and above actual costs, and other marketing and labor expenses, should not be paid from cash collateral, the Court makes the following rulings.

It is well established that cash collateral may appropriately be used to pay operation expenses and administrative expenses if the interest secured by the cash collateral is adequately protected. See Matter of James Wilson Asocc., 965 F. 2d 160, 171 (7th Cir. 1992); In re Addison,

---

[2] The Court shall not make any determination at this time of the applicability of such exception at this time.

3

L.P., 185 B.R. 766, 786 (Bankr. N.D. Ill. 1995). In the present case, because the cash collateral (and the realty) are not depreciating, the Debtor may use rental income to pay administrative expenses, including court-approved compensation to professionals employed by the estate, because IP is adequately protected for cash collateral purposes. In re Citicorp Park Assoc., 180 B.R. 15 (Bankr. D. Maine 1995).

IP also objects to use of cash collateral for three budget items that directly relate to maintaining the buildings and marketing the space therein: management fees, marketing expenses, and administrative labor. The basis of the objection is, fundamentally, lack of adequate protection: use of rents to pay these expenses diminishes the value of the mortgagee's collateral on a dollar-for-dollar basis and may be justified only if and to the extent that these expenditures actually enhance the value of the building and its rent flow (that is, the collateral). More specifically, the mortgagee takes the position that each of these particular budgeted expenditures—or at least some portion of each—does not serve that purpose and therefore results in a diminution of the value of cash collateral to which the mortgagee is not willing to consent. The mortgagee offers specific objections to each of the three items, stating why it believes the items in question are not necessary for maintenance of the collateral. The Debtor's response to the objections both specifically and generally: the Debtor has responded on an item-by-item basis to the substance of each of the specific objections; and generally, the Debtor has argued, with respect to all three, that the stability in value of the real property renders the specific objections irrelevant: because the real property is not declining in value, the mortgagee's collateral base is adequately protected regardless of how the cash collateral is expended.

The Court agrees with the Debtor on its general response. As I concluded above, the real property is not declining in value, and therefore the mortgagee is adequately protected against

4

any diminution in value of its collateral by virtue of Debtor's use of the cash collateral. This is so regardless of the use to which the collateral is put (provided only that the Debtor's rent generating enterprise is adequately being maintained[3]). Therefore, the objection of lack of adequate protection is answered and satisfied without need to address the use to which the challenged expenditures are being put. The Court holds that the specific expenditures are not subject to objection for lack of adequate protection.

Notwithstanding the above ruling, the Court rejects IP's argument that the management fee should be disallowed in part because a portion of that fee is a disguised distribution to equity. This might well be a valid basis to deny payment of the portion of the fee that exceeds the actual costs of market value of the services being provided, but the mortgagee chose not to offer evidence on the issue.[4] Payment of the fee has been challenged only on the basis that it results in diminution of the value of the mortgagee's collateral, and the Court has ruled only that it does not leave the collateral inadequately protected.

A review of the current record of the purposes and details of the labor and administrative expenses set forth in the Budgets supports the reasonableness of these expenditures. Absent evidence that these expenditures are unreasonable, the Court approves payment of them from cash collateral.

NOW THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED that:

---

[3] The mortgagee does not contend that the enterprise is not being adequately maintained.

[4] Contrary to the mortgagee's arguments, the answer is not self-evident. The Court heard representations from counsel that, if verified by evidence, might lead one to conclude that any portion of the fee over one percent was, in essence, an equity distribution. Other representations and evidence cut the other way. The value of the services provided by the insider manager may be greater than one percent but less than 2.2 percent. The answer simply is not clear.

5

A. The Debtors are permitted to use IP's Cash Collateral in accordance with the Budgets attached to the Debtors' Motion.

B. The Debtors will provide IP Company with adequate protection as follows:

- In addition to the continuing lien of IP in the postpetition rents pursuant to 11 U.S.C. §552(b), IP is granted a first priority perfected and enforceable replacement lien on the same types of postpetition property of the estate against which IT had liens as of the petition date. The replacement liens shall secure the diminution in value of IP's prepetition collateral.

C. This Order shall become effective on the date hereof.

DATED: May 28, 2004

/s/ Joan N. Feeney
Joan N. Feeney, United States Bankruptcy Judge

TRA 1916458v1

6

# UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

FORT HILL SQUARE ASSOCIATES and
FORT HILL SQUARE PHASE 2 ASSOCIATES,

Debtor

Chapter 11
Case Nos. 04-13855-CJK
and 04-13857-CJK
Jointly Administered

## AMENDED AND CORRECTED ORDER GRANTING FINAL APPROVAL OF USE OF CASH COLLATERAL AND GRANTING OF ADEQUATE PROTECTION

Upon consideration of 1) the Debtors' Motion for the Entry of a Final Order Authorizing the Debtors to Use Cash Collateral (the "Motion for Use of Cash Collateral"); 2) the Objection and Supplement to Objection filed by IP Company, L.L.C. ("IP"); 3) the Statement of Support of the Official Committee of Unsecured Creditors for a Final Order Authorizing the Debtor's Use of Cash Collateral; 4) Reply of the Chiofaro Company, Inc. and Chiofaro Building Services, Inc. to Opposition of IP to Entry of a Final Order Authorizing the Debtors Use of Cash Collateral; 5) the numerous Affidavits filed and Exhibits submitted by various interested parties; 6) the Memoranda of Law submitted by various interested parties; 7) the arguments of counsel at the hearing held on May 28, 2004; 8) the entire record of proceedings in these Chapter 11 cases; and 9) the applicable Bankruptcy Code provisions applicable to a Debtor's use of rents as cash collateral and adequate protection, in particular 11 U.S.C. Sections 361, 363, 552, and case law interpreting those sections, NOW, THEREFORE, the Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052:

At the hearing held on May 28, 2004, all of the interested parties indicated that the issues before the Court in connection with the Motion for Use of Cash Collateral and IP's Objections could be decided on the submissions and record to date and without the necessity of live testimony or further evidence. Furthermore, at the hearing, all of the interested parties agreed that use of rents/cash collateral is appropriate, and that the majority of the expenses proposed to be paid by the Debtor are proper and reasonable. IP has not challenged the Debtors' Budgets, except for several categories, discussed below. Thus, the sole issues presented at this time are whether the interest of IP, the mortgagee, which has a security interest in rents, is adequately protected,[1] and whether certain expenditures of the Debtors to operate and maintain the properties which are set forth in the Budgets attached to the Motion for Use of Cash Collateral are proper and reasonable expenses.

None of the interested parties has argued or submitted evidence that the value of the Debtors' real estate is declining. Indeed, at the hearing, the interested parties acknowledged that the value of the Debtors' real estate is not declining. Moreover, there has been no allegation, argument, or evidence presented that the stream of rental income generated by the Debtors is decreasing or that value of IP's interest in net rents will diminish over time.

IP has an enforceable security interest in rents, including postpetition rents, see 11 U.S.C. Section 552(b), which are cash collateral, and its interest in rents is deserving of adequate protection. In addition to IP's security interest in rents, it has mortgages on the Debtors' real estate, which are separate and distinct interests. With respect to the realty, IP claims it is undersecured because the value of the Debtors' properties is less than the amount owed on its claim. However, because IP has a separate property right in rents, Bankruptcy Code Section

---

[1] IP has not filed a motion for adequate protection with respect to the Debtors' realty.

2

552(b) has the effect of increasing the amount of collateral that secures a claim, subject to an "equities of the case" exception.[2] The first issue presented is whether the Debtor must protect the value of the collateral from diminution. In the absence of evidence that the value of the real property is declining, IP does not lack adequate protection in the realty. With respect to the rents, IP does not lack adequate protection in the present value of the future stream of rents because, according to the Debtors' Budgets, the net rents remain steady and are increasing.

The Court finds even though further adequate protection is not necessary, the Debtors' proposal of a replacement lien on postpetition rents, so called "renewal rents," adequately protects IP's interest in rents. "This is because the lien on each month's rents replaces the lien on the prior month's rents, so there is ... equal value under Section 361 of the Bankruptcy Code." In re Wrecclesham Grange, Inc., 221 B.R. 978, 980 (Bankr. M.D. Fla. 1997). Thus, as long as the rental stream is steady or increasing, and is not decreasing, IP's security interest in rents is adequately protected by a lien on renewal rents as the Debtors' use of rental income does not diminish the value of the cash collateral. The Debtors' Budgets demonstrate that the Debtors will have positive cash flow, and that IP's interest in rents will not be diminished during these Chapter 11 cases.

With respect to IP's arguments that administrative expenses of the Debtors' professionals, management fees over and above actual costs, and other marketing and labor expenses, should not be paid from cash collateral, the Court makes the following rulings.

It is well established that cash collateral may appropriately be used to pay operation expenses and administrative expenses if the interest secured by the cash collateral is adequately protected. See Matter of James Wilson Asocc., 965 F. 2d 160, 171 (7th Cir. 1992); In re Addison,

---

[2] The Court shall not make any determination at this time of the applicability of such exception at this time.

3

L.P., 185 B.R. 766, 786 (Bankr. N.D. Ill. 1995). In the present case, because the cash collateral (and the realty) are not depreciating, the Debtor may use rental income to pay administrative expenses, including court-approved compensation to professionals employed by the estate, because IP is adequately protected for cash collateral purposes. In re Citicorp Park Assoc., 180 B.R. 15 (Bankr. D. Maine 1995).

IP also objects to use of cash collateral for three budget items that directly relate to maintaining the buildings and marketing the space therein: management fees, marketing expenses, and administrative labor. The basis of the objection is, fundamentally, lack of adequate protection: use of rents to pay these expenses diminishes the value of the mortgagee's collateral on a dollar-for-dollar basis and may be justified only if and to the extent that these expenditures actually enhance the value of the building and its rent flow (that is, the collateral). More specifically, the mortgagee takes the position that each of these particular budgeted expenditures—or at least some portion of each—does not serve that purpose and therefore results in a diminution of the value of cash collateral to which the mortgagee is not willing to consent. The mortgagee offers specific objections to each of the three items, stating why it believes the items in question are not necessary for maintenance of the collateral. The Debtor's response to the objections both specifically and generally is: the Debtor has responded on an item-by-item basis to the substance of each of the specific objections; and generally, the Debtor has argued, with respect to all three, that the stability in value of the real property renders the specific objections irrelevant: because the real property is not declining in value, the mortgagee's collateral base is adequately protected regardless of how the cash collateral is expended.

The Court agrees with the Debtor on its general response. As I concluded above, the real property is not declining in value, and therefore the mortgagee is adequately protected against

4

any diminution in value of its collateral by virtue of the Debtor's use of the cash collateral. This is so regardless of the use to which the collateral is put (provided only that the Debtors' rent generating enterprise is adequately being maintained[3]). Therefore, the objection of lack of adequate protection is answered and satisfied without need to address the use to which the challenged expenditures are being put. The Court holds that the specific expenditures are not subject to objection for lack of adequate protection.

The Court rejects IP's argument that the management fee should be disallowed in part because a portion of that fee is a disguised distribution to equity. This might well be a valid basis to deny payment of the portion of the fee that exceeds the actual costs of market value of the services being provided, but the mortgagee chose not to offer evidence on the issue.[4] Payment of the fee has been challenged only on the basis that it results in diminution of the value of the mortgagee's collateral, and the Court has ruled only that it does not leave the collateral inadequately protected. The reasonableness of the management fee is more appropriately raised in other procedural contexts at a later date.

A review of the current record of the purposes and details of the labor and administrative expenses set forth in the Budgets supports the reasonableness of the Debtors' expenditures. Absent evidence that these expenditures are unreasonable, the Court approves payment of them from cash collateral.

---

[3] The mortgagee does not contend that the enterprise is not being adequately maintained.

[4] Contrary to the mortgagee's arguments, the answer is not self-evident. The Court heard representations from counsel that, if verified by evidence, might lead one to conclude that any portion of the fee over one percent was, in essence, an equity distribution. Other representations and evidence cut the other way. The value of the services provided by the insider manager may be greater than one percent but less than 2.2 percent. The answer simply is not clear.

NOW THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED that:

A. The Debtors are permitted to use IP's Cash Collateral in accordance with the Budgets attached to the Debtors' Motion.

B. The Debtors will provide IP Company with adequate protection as follows:

- In addition to the continuing lien of IP in the postpetition rents pursuant to 11 U.S.C. §552(b), IP is granted a first priority perfected and enforceable replacement lien on the same types of postpetition property of the estate against which IP had liens as of the petition date. The replacement liens shall secure the diminution in value of IP's prepetition collateral.

C. This Order shall become effective on the date hereof.

DATED: June 3, 2004

_____
Joan N. Feeney, United States Bankruptcy Judge

TRA 1916458v1

6