**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

200 JUL 13 P 4 46

US DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| **In re**<br>**FORT HILL SQUARE ASSOCIATES and**<br>**FORT HILL SQUARE PHASE 2 ASSOCIATES** | |
| **IP COMPANY, L.L.C,**<br><br>    **Appellants**<br><br>    **v.**<br><br>**FORT HILL SQUARE ASSOCIATES,**<br>**FORT HILL SQUARE PHASE 2 ASSOCIATES,**<br>**and OFFICIAL COMMITTEE OF**<br>**UNSECURED CREDITORS,**<br><br>    **Appellees.** | **Civil Action No.**<br>**04-CV-11473-PBS** |

**DEBTORS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS APPEAL**

Pursuant to Federal Rules of Bankruptcy Procedure 8001, 8003 and 8011, and 28 U.S.C.

§158, Appellees Fort Hill Square Associates and Fort Hill Square Phase 2 Associates

(collectively the "Debtors"), submit this Memorandum in Support of Their Motion to Dismiss

Appeal. This appeal of orders for use of the cash collateral issued by the United States

Bankruptcy Court (Feeney, J.) should be dismissed because the orders are not final, the

appellants did not seek leave to file an interlocutory appeal, and no grounds exist for permitting

an interlocutory appeal in this case. The very nature of the orders – approval of the Debtor's use

of cash collateral for a 13-week period – is interim and subject to constant review as the

collateral changes and as new leases are signed and new space needs to be built out. Appellant

IP Company LLC ("IP Company") seeks exactly the piecemeal review of the Bankruptcy

Court's ongoing administration of Debtors' reorganization that is both impractical and discouraged, especially in light of the replacement liens granted by the Bankruptcy Court.

In addition, as will be discussed below, the only categorical objection to use of cash collateral was to professional fees for counsel to the Debtor and the Committee of Unsecured Creditors. The other partial objections were to the percentage that should be paid as commissions for leasing and management efforts of affiliates of the Debtors – historically sanctioned commissions as specifically provided in the loan documents. IP's narrowly targeted objections therefore call into question whether it truly considers its collateral inadequately protected or whether it is seizing this opportunity to leverage the Debtors' compromised financial status to hamstring a reorganization.   IP Company's appeal should be dismissed.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Debtors own and operate two commercial office buildings, One and Two International Place (collectively "International Place"), two of the premier commercial office buildings in Boston's financial district. The Debtors' each filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code on May 7, 2004 (the "Petition Date"), in the United States Bankruptcy Court for the District of Massachusetts. Each of the Debtors is a Massachusetts General Partnership consisting of a joint venture between one or more affiliates of The Hillman Company and The Chiofaro Company, Inc. ("Chiofaro Company"). The Debtors continue to operate as debtors in possession pursuant to 11 U.S.C. §1107 and 1108.

Fort Hill Square Associates ("FHS1") owns One International Place. One International Place is 46 stories tall and has over 1.0 million rentable square feet. As of the Petition Date, approximately 76.4% of One International Place was leased.  FHS1 has pending and/or approved leases for an additional 11.8% of the space. Fort Hill Square Phase 2 Associates

2

("FHS2") owns Two International Place.  Two International Place is 35 stories tall and has approximately 800,000 rentable square feet.  As of the Petition Date, approximately 78.9% of Two International Place was leased.  FHS2 has pending and/or approved leases that will result in over 93% occupancy.  The leases that have been brought before the Bankruptcy Court for approval since the filing of the petition will amount to more than $100 million in new rents for the estate over their lease terms.  (Transcript of May 28, 2004 Hearing before Hon. Joan N. Feeney, J. U.S.B.C. ("May 28 Hearing Transcript") attached as Exhibit A hereto, at 4).  The Chiofaro Company manages International Place pursuant to Property Management Agreements with the Debtors and Building Services Agreements between an affiliate, Chiofaro Building Services, Inc ("CBS"), and the Debtors.

In 1988, the Debtors obtained financing from TIAA to replace the then-existing financing utilized to construct International Place.  The financing agreement with TIAA was amended in 1993.  In conjunction with the financing from TIAA, the Debtors each executed notes, a single mortgage and other related documents (collectively, the "Loan Documents").  Pursuant to the Loan Documents, TIAA was granted a mortgage on International Place.

On or about April 2, 2004, IP Company acquired the Loan Documents from TIAA.  On information and belief, IP Company purchased the Loan Documents for less than $600 hundred million, a substantial discount from the face amount of the Debtors' obligations under the Loan Documents. IP Company is an affiliate of Tishman Speyer Properties, a New York-based commercial real estate developer that owns a commercial office building located at 125 High Street, Boston, Massachusetts ("125 High Street").  125 High Street is directly adjacent to International Place and it and Tishman Speyer are direct competitors of the Debtors.

3

On the petition date, May 7, 2004, the Debtors filed a motion entitled "Motion for Authorization of (1) the Interim and Permanent Use of Cash Collateral, (2) the Granting of Replacement Liens, (3) Entry of Scheduling Order Regarding Continued Use of Cash Collateral and (4) Additional Relief." (Docket No. 5; attached hereto as Exhibit B, hereinafter, "Cash Collateral Motion"). In the Cash Collateral Motion, the Debtors sought, *inter alia,*

(i)    entry of an interim Order authorizing the use of Cash Collateral on an emergency basis in an amount necessary to avoid immediate and irreparable harm;

(ii)   entry of a permanent Order authorizing use of Cash Collateral in the ordinary course of business;

(iii)  granting replacement liens to Tishman Speyer, L.L.C. ("Tishman Speyer") to the extent described in this motion to provide adequate protection to Tishman Speyer for the use of Cash Collateral;[1] and

(iv)   entry of a scheduling Order regarding the continued use of Cash Collateral.

Cash Collateral Motion at 2. Attached to the motion were two budgets (one for each Debtor FHS1 and FHS2) that covered operations of the Debtors for a 13-week period from May 8, 2004 to August 6, 2004[2]. Pursuant to the motion, "the Debtors request[ed] the authority to utilize cash on hand, rents generated by Debtors' operations, including parking garage revenue and the funds in the TI Accounts, to fund their operations during the Budget Period." Cash Collateral Motion at 8. In return for use of cash collateral, the Debtors proposed to grant IP Company replacement liens in the revenues generated by the properties. *Id.* at 8-9. IP Company then filed both an opposition to the Debtors' request for authorization to use cash collateral on an expedited basis,

---

[1]    As of the Petition Date, the Debtors have not determined the extent, priority or validity of any of the liens asserted by Tishman Speyer and reserve the right to challenge any such liens on appropriate grounds.

[2]    On June 24, 2004, the Bankruptcy Court entered a Stipulated Order Between Debtors and IP Company LLC according to which the Debtors are authorized to use cash collateral pursuant to amended budgets that provide for expenditures through September 10, 2004. A hearing has been set for August 18, 2004 at 10 a.m. to take up a proposal for the use of cash collateral after this date.

as well as filing an objection to certain requested uses for the cash collateral as budgeted (See

Objection of IP Company, LLC to Debtors' Motion to Use Cash Collateral ("First IP

Objection"), dated May 10, 2004, attached as Exhibit C). In the First IP Objection, IP

specifically requested replacement liens and agreed that, for an interim period, the cash collateral

could be used for "ordinary, necessary and reasonable post petition operating expenses solely

related to routine maintenance, repairs and preservation of the Property" pending a further

hearing. First IP Objection at 11. The Bankruptcy Court then issued an order allowing the

Debtors to use cash collateral per the budgets attached to the Debtors' motion for a two-week

period prior to a hearing scheduled for May 28, 2004 and granted replacement liens in IP

Company's favor. (See Order, dated May 10, 2004 ("Interim Cash Collateral Order"), attached

as Exhibit D). No appeal has been taken from the First Cash Collateral Order.

Prior to the May 28 hearing, IP Company filed a 32-page objection to the Cash Collateral

Motion ("Second IP Objection")[3] in which they again assert "IP Company has no objection to

the use of its cash collateral for ordinary and necessary operating expenses for the purposes of

maintaining and preserving the Property, subject to the terms and conditions outlined herein . . ."

Second IP Objection at 4 (attached hereto as Exhibit F). In sum, the objections to use of cash

collateral were as follows:

> 1) For use of cash collateral for **tenant improvements** *for leases not yet*
>    *approved by IP Company*, such use "will be subject to various factors
>    including, without limitation, what the affect of tenant improvements will be
>    upon the value of the Property and the impact on the claim of IP Company . . .

---

[3]    In addition to the Second IP Objection, IP Company submitted 3 affidavits, a Supplement to Objection of
IP Company, LLC to the Entry of a Final Order Authorizing the Debtors to Use Cash Collateral and a Bench
Memorandum of IP Company, LLC in Support of its Lien on PostPetition Rents (submitted at the hearing). See
docket, attached hereto as Exhibit E.

> IP Company will review the extent of adequate protection generated from the underlying lease subject to the tenant improvements." Second IP Objection at 4.

2) Paying any entity related to the Chiofaro Company more than 1% of gross rents as a **management fee** for managing the buildings[4];

3) Payments from certain **escrowed funds** (cash collateral) had to be made in accordance with the terms of the agreement governing the escrowed funds;

4) No payments for Chapter 11 professionals.

Second IP objection at p. 27 (emphasis supplied). In addition, IP Company reiterated its request for replacement liens "against the postpetition assets" and a superpriority claim for any dimunition in the collateral. Administratively, it requested a turnover of net rents on a monthly basis and that certain reporting and insurance be maintained. *Id.* at 27-28. Thus the only categorical objection to use of cash collateral was to pay professional fees[5]. Rather than argue any significant exposure to its collateral, IP Company instead focused its objection so as to restructure the Debtors' business agreements for commissions (of which IP Company was fully aware when it acquire TIAA's position and to which it had previously agreed) and prevent any interested party (either the Debtors or the Unsecured Creditors) from meaningfully participating in the bankruptcy proceeding by holding funds to pay administrative fees hostage.

---

[4]       Interestingly the Promissory Notes acquired by IP Company from TIAA provide that the Chiofaro Company will be paid 3% to manage the building. At the hearing held on May 28, 2004, IP Company's counsel apparently accepted payment up to 2.2% of gross rents as a management fee. See of May 28 Hearing Transcript Exhibit A, at 37-38.

[5]       IP Company's counsel emphasizes its consent when he argued to the Court during the May 28 hearing, "we have consented to three of the four categories they're seeking, notwithstanding the fact that we can't get adequate protection, Your Honor . . . " Exhibit A, May 28 Hearing Transcript at 46.

Despite the Court's invitation, IP Company declined to offer any testimony at the hearing. "It seems to me that both parties agree that evidence is not necessary on the limited issues before the Court today with respect to the particular categories of expenses that are . . . requested to be approved pursuant to the budget." May 28 Hearing Transcript, Exhibit A, at 48.

On June 3, 2004, the Bankruptcy Court issued its Amended and Corrected Order Granting Final Approval of Use of Cash Collateral and Granting Adequate Protection (the "Cash Collateral Order" attached as Exhibit G). The Bankruptcy Court determined, "[a]t the hearing [held on May 28, 2004], all of the interested parties agreed that the use of rents/cash collateral is appropriate, and that the majority of the expenses proposed to be paid by the Debtor are proper and reasonable." Cash Collateral Order at 2. As to the objection to the payment of a management fee above 1% of gross rents, the Bankruptcy Court pointed out that that "reasonableness of the management fee is more appropriately raised in *other procedural contexts at a later date*." *Id.* at 5 (emphasis supplied). Ultimately, the Bankruptcy Court determined that IP Company was adequately protected by the replacement liens it requested, such that all expenses in the budget, including administrative and professional costs, should be paid from cash collateral. *Id.* at 6.

If the Debtors seek to further use cash collateral when the budgets expire on August 6, 2004[6], the Bankruptcy Court will be required to reconsider the issues in the Cash Collateral Order, taking into account any intervening changes in circumstance. Furthermore, the Court has been asked to approve four additional leases or subleases since the petition in this matter was filed (see Docket of Court Orders, Exhibit E, at Docket at Nos. 115, 194, 224, 278), which has

---

[6] See n. 2.

required a review of use of cash collateral in each instance as IP Company mandated in its

objections, above.

**ARGUMENT**

A.      **This Court Lacks Subject Matter Jurisdiction as the Bankruptcy Court's Orders are not Final and Leave for an Interlocutory Appeal is not Warranted.**

As a threshold matter, this Court must determine that jurisdiction appropriately lies

before it may hear IP Company's appeal. *Fleet Data Processing Corp. v. Branch (In re Bank of*

*New England Corp.)*, 218 B.R. 643, 645 (1st Cir. B.A.P 1998) ("this panel is duty bound to

determine its jurisdiction over this appeal before proceeding to the merits") (and cases cited

therein). For the reasons below, no such jurisdiction exists.

The jurisdiction of the District Court over the appeal is controlled by 28 U.S.C. §158(a),

which provides in relevant part:

(a) The district court of the United States shall have jurisdiction to hear appeals

      (1) from final judgments, orders and decrees;

. . . .

      (3) with leave of the court, from other interlocutory orders and decrees;

Thus, in order for this Court to review Judge Feeney's orders, it must find that the

orders fall within 158(a)(1) or (3) above. *Michigan Bureau of Workers' Disability Compensation*

*v. Chateaugay Corporation (In re Chateaugay Corp.)*, 80 B.R. 279 (S.D.N.Y. 1987); *Northeast*

*Savings, N.A. v. Geremia (In re Kalian)*; 191 B.R. 275, 277 (D.R.I. 1996). IP Company cannot

make such a showing.

Because the order raised by IP Company on its appeal 1) is not final and 2) interlocutory

review of Judge Feeney's discretionary grant of the use of cash collateral for 13 weeks (several

8

of which have already passed) will only result in piecemeal review of interim orders that do not

terminate the rights of any party, this Court should dismiss the appeal for lack of jurisdiction. *In*

*re Bank of New England Corp.*, 218 B.R. at 652-54 (finding that order was not final and neither

the collateral order doctrine nor the standards for interlocutory appeal pursuant to §158(a)(3)

were satisfied, divesting the Bankruptcy Appellate Panel of jurisdiction to review the bankruptcy

court's order).

### I. The Cash Collateral Order is not a Final Order.

Because the Cash Collateral Order is not a final order, the Notice of Appeal filed by IP

Company is simply premature and of no effect. *See United States Abatement Corp. v. Mobile*

*Exploration & Producing U.S., Inc. (In re U.S. Abatement)*, 39 F.3d 563, 568 (5th Cir. 1994);

*American Inst. for Mental Studies v. Brinn*, 1985 WL 3486 (S.D.N.Y. Nov. 4, 1985).

An order of the bankruptcy court is final only when it resolves a particular proceeding or

controversy within the entire bankruptcy proceeding or irrevocably decides a dispositive issue of

law or the rights of any party. *See In re Saco Dev. Col.*, 711 F.2d 441, 444-46 (1st Cir. 1983); *In*

*re Bank of New England Corp.*, 218 B.R. at 647); *In re Shepard Clothing Co., Inc.*, 280 B.R.

786, 789-90 (D. Mass. 2002); *In re Chateaugay Corp.*, 80 B.R. at 282-83. The reason for

requiring finality in order for appellate jurisdiction to attach is persuasively argued by Judge

Pratt:

> If an appeal is taken from a non-appealable order the [trial] court may proceed
> with the case as if the notice of appeal had not been filed.... [A]n appeal not
> permitted by law may not be "taken" at all, and the [appellate] court acquires no
> jurisdiction over it.... Furthermore the appellate courts recognize that preventing
> [trial] courts from proceeding when an appeal is taken from a non-appealable
> order *would enable a party to interrupt the process of the proceedings at will,* and
> delay all proceedings until the appeal is dismissed or the [appellate] court
> remands the case.

20 D. Coquilette et al, Moore's federal practice, §303.32[2][b][iv][B] (3d ed. 2004) (emphasis

supplied); *see also United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir. 1979).

Because the Cash Collateral Order does not "conclusively determine a discrete issue within the larger case," it is not a final appealable order. *In re Bank of New England Corp.*, 218 B.R. at 647, quoting *Estancias La Ponderosa Dev. Corp. v. Harrington (In re Harrington)*, 992 F.2d 3, 5 (1st Cir. 1993). Although bankruptcy cases often require "special consideration," the Cash Collateral Order is patently interlocutory even in that context. *See In re Harrington*, 992 F.2d at 5.

By its very terms, the Cash Collateral Order will expire in the first week of August, and the Debtors will again be required to demonstrate the adequacy of IP Company's protection. And, as the Bankruptcy Court noted, of the few objections raised by IP Company, at least one (the management fee amount) can be addressed collaterally by motion. These inevitable opportunities to revisit the use of cash collateral make the Cash Collateral Order a moving target at best, and preclude its treatment as a final order. *See In re Kilian*, 191 B.R. 275; *In re Chateaugay Corp.*, 80 B.R. at 283 (where an order of the bankruptcy court leaves open the possibility of future challenges or further hearings, it is necessarily interlocutory.); *The Charter Co. v. Prudential Ins. Co. of Amer. (In re Charter Co.)*, 778 F.2d 617, 622 (11th Cir. 1985) (order allowing consolidation of cash management interlocutory because the court stated that the order would be open to challenge and suggestion); *In re Chateaugay Corp.*, 64 B.R. 990, 996 (S.D.N.Y. 1986) (bankruptcy order interlocutory where court would need to reconsider issue again in six months and judge clearly indicated intent to resolve factual and legal issues at later hearing).

Moreover, to the extent IP Company claims that the Cash Collateral Order was effectively a denial of adequate protection, the United States Court of Appeals for the First

Circuit has unambiguously concluded out that the "denial of a request for 'adequate protection' is interlocutory and not appealable." *First Fidelity Bank v. Public Serv. Co. of N.H. (In re P.S.C.N.H.)*, 879 F.2d 987, 988 (1st Cir. 1989) (per curiam) (citing *In re Alchar Hardware*, 730 F.2d 1386 (11th Cir. 1984)); *see also In re Kilian*, 191 B.R. at 278. Because the bankruptcy court is free to reconsider and vacate its order, as it plainly will be if IP Company demonstrates it is no longer adequately protected, the order by definition cannot be considered "final." *In re U.S. Abatement*, 39 F.3d at 567; *Continental Ill. Nat. Bank & Trust Co. v. Wooten, (In re Evangeline Refining Co.)*, 890 F.2d 1312, 1321 (5th Cir. 1989) (interim fee awards are subject to future adjustment and are therefore in no respect final adjudications).[7]

As one judge in this District recently observed in similar circumstances: "Each time the bankruptcy judge revisits the cash collateral order, the creditors have an opportunity to object and to re-examine the question of the value of Shepard's assets. In these circumstances it cannot be said that the bankruptcy judge has finally resolved the questions underlying the denial of the motion for relief from the automatic stay; the bankruptcy judge has not conclusively determined whether the creditors were adequately protected." *In re Shepard Clothing Co., Inc.*, 280 B.R. at 788[8].

## II. The Cash Collateral Order is not a "Collateral Order."

The Cash Collateral Order is also not of the limited class of appealable "collateral orders." Although the collateral order doctrine, first articulated in *Forgay v. Conrad*, 47 U.S.

---

[7]    Indeed, because the full panoply of rights inuring to secured creditors remain available to IP Company, the Cash Collateral Order must be viewed as interlocutory. *See In re Chateaugay*, 80 B.R. at 283 (where other Code remedies are available, bankruptcy court order less likely to be considered final); *In re 405 N. Bedford Dr. Corp.*, 778 F.2d 1374, 1377-78 (9th Cir. 1985) (denial of motion to dismiss bankruptcy proceeding not final since appellants could protect their security interest through various code provisions).

[8]    The inchoate stage of the adequate protection determination is underscored by the fact that there has been no definitive valuation of the collateral and IP Company has not requested a determination of adequate protection pursuant to 11 U.S.C. §363(e).

201 (1848) and confirmed in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), has

been grafted onto the bankruptcy appellate system, it does not apply in the circumstances of this

case. *See In re American Colonial Broad. Corp.*, 758 F.2d 794, 803 (1st Cir. 1985); 1 Collier on

Bankruptcy ¶5.07[3] (15th Ed. 2004). The doctrine is, in essence, "a 'narrow exception to the

normal application of the final judgment rule,'" prescribed in 28 U.S.C. § 1291. *Petralia v.*

*AT&T Global Info. Solns. Co.*, 114 F.3d 352, 354 (1st Cir. 1997) (citations omitted); *Midland*

*Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989). It applies only to orders that (1)

conclusively determine (2) important legal questions that are (3) completely separate from the

merits of the underlying action and are (4) effectively unreviewable on appeal from a final

judgment. *Id.*; *See In re American Colonial Broad. Corp.*, 758 F.2d at 803; *In re Bank of New*

*England Corp.*, 218 B.R. at 649. The doctrine's fourth prong incorporates a requirement that the

appellant would suffer "irreparable harm" incapable of vindication on appeal from a later

judgment. *See, e.g., Appeal of Licht & Semonoff*, 796 F.2d 564, 571 (1st Cir. 1986); *In re*

*Shepard*, 280 B.R. at 791. The doctrine is stringently applied to ensure that it does not "swallow

the rule" requiring finality as a prerequisite to an appeal. *See, e.g., Digital Equip. Corp. v.*

*Desktop Direct Inc.*, 511 U.S. 863 (1994). There is no rationale for its application in this case.

        1.      The Cash Collateral Order lacks a "conclusive determination."

The Cash Collateral Order is the antithesis of a "conclusive determination." Courts have

interpreted this requirement to mean that the lower court has "clearly said its last word on the

subject." *.E.g., Rosenstein v. Merrell Dow Pharmaceuticals, Inc.*, 769 F.2d 352, 354 (6th Cir.

1985). Not one of the issues designated for appeal by IP Company was conclusively determined;

to the contrary, each issue is subject to review by the Bankruptcy Court any time the Debtors

move for further use of the cash collateral and any time a creditor seeks to prohibit, limit, or

curtail the continued use of the cash collateral (which has been true, for example, of the Debtors' attempts to procure authorization to enter into four leases with new tenants). Thus, the order is "unfinished" and "inconclusive." *See In re Bank of New England*, 218 B.R. at 650 (summary judgment in adversary proceeding requiring indemnification not conclusive because the extent of liability still undetermined); *In re American Colon. Broad. Corp.*, 758 F.2d at 801-03 (appeal of bankruptcy court's order authorizing acceptance of bid on debtor's assets and negotiation of a contract was inconclusive given array of contingencies that could intervene).

2.     The Cash Collateral Order did not Address an Important Legal Question.

Similarly, the bankruptcy court's determination respecting IP Company's adequate protection and the Debtors' use of cash collateral holds minimal precedential promise, and therefore does not present an important legal question for review (especially one that will evade review on final appeal, as the next section discusses). *In re Bank of New England*, 218 B.R. at 650; *In re Continental Inv. Corp.*, 637 F.2d 1, 6 (1st Cir. 1980). While IP Company may disagree with the bankruptcy court's determination, its dispute respecting the adequacy of its protection can hardly be described as "grappling with 'an important and unsettled question of controlling law.'"[9] *In re Bank of New England*, 218 B.R. at 650, quoting *United States v. Sorren*, 605 F.2d 1211, 1213 (1st Cir. 1979).

3.     The Cash Collateral Order is not "Completely Separate" from the Overall Bankruptcy Case.

The bankruptcy court's Cash Collateral Order likewise fails to satisfy the "completely separate" element of the collateral order doctrine.   An Order is completely separate when it does not "affect or be affected by" the overall merits of the ongoing case. *Coopers & Lybrand v.*

---

[9]      IP Company would be hard-pressed to demonstrate that any issue presented in its appeal will be "controlling" as it agreed to so much of the Debtors' use of cash collateral prior to any determination by the Bankruptcy Court.

*Livesay,* 437 U.S. 463, 468 (1978); *United States v. Quintana-Aguayo,* 235 F.3d 682, 685 (1st

Cir. 2000). The Debtors' ability to continue as debtors-in-possession under Chapter 11 depends

on the integrity of the Cash Collateral Order. As stated above, the adequacy of IP Company's

protection is fluid, at best. Surely, the ultimate issue as to use of the cash collateral is "an

ingredient" of the overall contest between the Debtors and IP Company, and requires

consideration in the context of the overall bankruptcy case (i.e., the valuation of the collateral,

the cash flow of the business, etc.). *See Cohen,* 337 U.S. at 546-47 (order is collateral when "it

is a final disposition of a claimed right which is not an ingredient of the cause of action and does

not require consideration with it"). Review of the interlocutory Cash Collateral Order at this

stage of the proceedings will unquestionably disrupt the remainder of the case, making review at

this time inappropriate. *See In re Bank of New England,* 218 B.R. 650-51 (order is separate if

review "would most likely not disrupt disposition of the remainder of the case").

> 4.    The Cash Collateral Order is Reviewable on an Appeal from a Final
>        Order.

The "unreviewability" prong has been equated to, if not defined as, the threat of

"irreparable harm" if review is delayed. *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S.

368, 376 (1981); *Stubbe v. Banco Central Corp. (In re Empresas Noroeste, Inc.),* 806 F.2d 315,

317 (1st Cir. 1986); *Soto v. Barcelo (In re San Juan Star Co.),* 662 F.2d 108, 112 (1st Cir.1981).

To qualify under this element, denial of the immediate appeal must "render impossible any

review whatsoever." *United States v. Ryan,* 402 U.S. 530, 533 (1971). Under this standard, the

Cash Collateral Order is not a collateral order reviewable by this court at this time. In fact, the

Bankruptcy Code makes provision to remedy any misstep in its conclusions regarding adequate

protection. If the bankruptcy court's determination respecting IP Company's adequate protection

should later prove to be erroneous, the Code will afford IP Company the right to stand first in

14

line for recovery from the Debtors' assets. *See,* 11 U.S.C. §507(b) (granting superpriority claim where there is a failure of adequate protection).

### III.    The Issues Raised in this Appeal are Interim in Nature, Dispose of No Claims, and Do Not Merit Leave for Interlocutory Review.

Without grounds for appeal as of right or as a collateral order, the only other avenue potentially open to IP Company for an appeal of Judge Feeney's orders is an interlocutory appeal pursuant to 18 U.S.C. §158(a)(3).   That statute clearly requires that IP Company seek leave of Court to pursue an interlocutory appeal, a requirement designed to discourage piecemeal appellate parsing of issues in a case that is still being actively litigated. *In re Bank of New England Corp.,* 218 B.R. at 652 ("[a]lthough §158(a)(3) provides discretionary authority to hear appeals of interlocutory orders, we approach the question with caution, particularly where, as here, the appeal does not address a 'collateral order'"); *Abel v. Shugrue (In re Ionosphere Clubs, Inc.,* 179 B.R. 24, 28 (S.D.N.Y. 1995) ("leave to appeal should be granted only in 'exceptional circumstances' because to do otherwise would contravene the well-established judicial policy of discouraging interlocutory appeals and avoiding the delay and disruption which results form such piecemeal litigation"); *In re Kilian,* 191 B.R. at 278 ("'[g]enerally, federal law abhors piecemeal appeals disputing interlocutory . . . . orders,'" quoting *Cummins v. EG & Sealol, Inc.,* 697 F. Supp. 64, 67 (D.R.I. 1998)).

   1. Leave for an Interlocutory Appeal Should Not Be Granted Here.

IP Company has done nothing to support its case for an interlocutory appeal.  It merely filed a notice of appeal, assumedly because it unilaterally and incorrectly concluded that Judge Feeney's interim cash collateral orders would be viewed as final.  While Fed. R. Bankr. P. 8003(c) allows an appellate court the discretion to consider an improperly filed notice of appeal as a request for leave to file an interlocutory appeal, leave should not be presumed.  "If a

required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district

court or bankruptcy appellate panel *may* grant leave to appeal or direct that a motion for leave to

appeal be filed." Fed. R. Bankr. P. 8003(c) (emphasis supplied); *The Merchants Bank v. C.R.*

*Davidson Company, Inc. (In re C.R. Davidson Company, Inc.)*, 232 B.R. 549, 554 (2d Cir.

B.A.P. 1999) ("[t]he function of the motion for leave to appeal is to explain to the reviewing

court why it is that, notwithstanding the historic federal policy (and current bankruptcy policy)

against piecemeal appeals, the order in question should be reviewed immediately . . . . We stress

. . . that the mandates of Rule 8003 [that appellants must meet their burden of meeting the

requirements of 28 U.S.C. §1292(b)] must not henceforth be ignored"); *In re Bank of New*

*England Corp.,* 218 B.R. at 648-649.

Because §158(a)(3) provides no measure against which the District or Bankruptcy court

should exercise such discretion to grant leave, courts, including the First Circuit B.A.P., have

imported the standards of 28 U.S.C. §1292(b), which control the certification of an interlocutory

order of the district court to the court of appeals for review.

> Section 1292(b) provides that appeals of an interlocutory order may be
> granted when the ruling: (1) involves a controlling question of law; (2) as
> to which there are substantial grounds for difference of opinion; and (3)
> that an immediate appeal from the order may materially advance the
> ultimate termination of the litigation. 28 U.S.C. §1292(b) (2003). *Failure*
> *to meet any of these requirements warrants denial.*

*Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating*

*LLC),* 2003 WL 21507196, at *1 (S.D.N.Y. June 30, 2003) (citing *Primivera*

*Familienstifung v. Askin*, 139 F. Supp.2d 567, 573 (S.D.N.Y. 2001)) (emphasis supplied).

*Accord v. Branch, In re Bank of New England Corp.*, 218 B.R. at 652 ("[s]ection 158

provides no express criteria to guide our discretion, but most courts utilize the same

standards as govern the propriety of district courts' certification of interlocutory appeals

to the circuit courts under §1292(b)," and cases cited therein); *In re C.R. Davidson Co., Inc.,* 232 B.R. at 554 (in order to obtain leave to appeal "appellants have the burden of showing that the order meets the requirements of 28 U.S.C. § 1292(b)"); *Chateaugay,* 80 B.R. at 285 ("[t]he standards of 28 U.S.C. § 1292b are applicable in deciding whether to grant leave to appeal"); *Jasin v. Kunkel, (In re Kunkel)*, 2003 WL 23162328, at *2-3. (E.D. Pa. Dec. 29, 2003).   None of the 1292(b) factors are present with respect to the orders now before the District Court.

> a. Judge Feeney Was Not Presented with a Controlling Question of Law.

A controlling question of law exists if "either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially effect the outcome of the litigation.'" *In re Ames Department Stores, Inc.,* 2002 WL 511556, at *2 (S.D.N.Y. April 3, 2002) (quoting *North Fork Bank v. Abelson*, 207 B.R. 382, 389-390 (E.D.N.Y. 1997)).   Judge Feeney's order allowing interim use of cash collateral pursuant to a 13-week budget proposed by the Debtors simply lacks the case-ending stature that would make it worthy of an interlocutory appeal, especially given the extremely narrow areas of dispute decided. Temporary use of cash collateral where the Bankruptcy Court has held that IP Company, as mortgagee, was adequately protected and the value of its collateral is either remaining the same or increasing, is the type of interim order that will not materially affect the outcome of the case.   This is especially so given that Judge Feeney ordered replacement liens for the benefit of IP Company in the post-petition rents generated by the Debtors' leases.  Cash Collateral Order at 6.  Simply put, "[t]he denial of adequate protection is not a controlling question of law to which there is a substantial ground for a difference of opinion." *In re*

*Kilian*, 191 B.R. at 278; *In re Shepard Clothing Company, Inc.*, 280 B.R. 786 (because the Bankruptcy Court revisited the issue of the Debtor's use of cash collateral, as well as the corresponding issue as to whether the creditors were adequately protected, the bankruptcy court's order denying relief from the automatic stay was not appealable).

The Bankruptcy Court's ruling on the use of cash collateral for thirteen weeks where almost all uses had IP Company's consent and which included a new, first-priority, perfected and enforceable replacement lien on the same types of property of the estate to which IP Company had liens prepetition, in order to "secure the diminution in value of IP's prepetition collateral," simply is too limited a decision to warrant the costs of time and money that an appellate proceeding necessarily entails.   Allowing IP to appeal before the trial court has even had the opportunity to pass on IP's claims or the value of the collateral is certainly premature and without any corollary effect on the termination of the bankruptcy proceeding.  Because an "immediate appeal from the order" could not conceivably "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), leave is inappropriate.

　　　　b.  This Factual Dispute Does Not Support an Interlocutory Appeal.

"For there to be 'substantial grounds for difference of opinion,' there must be more than a strong disagreement between adversary parties." *In re Ames Department Stores, Inc.,* 2002 WL 511556, at *2 (citing, *Abelson*, 207 B.R. at 390).  Here, in the first instance, the disagreement is of a factual rather than legal nature, i.e., whether IP is adequately secured or whether use of cash collateral (essentially for attorneys' fees) will diminish its collateral position, which should not be disturbed as IP cannot demonstrate that Judge Feeney committed any clear error, as required (especially given the dearth of evidence IP presented for its position).  The appropriate standard

of review for a factual determination of the bankruptcy court is "not how [the appellate court] would have ruled . . . [but rather] 'whether *any* reasonable person could agree with the [bankruptcy] court." *BA Leasing Parties v. UAL Corp.,* 2003 WL 22176068, at *4 (N.D. Ill. September 15, 2003) (quoting *Peate v. McCann,* 294 F.3d 879, 884 (7th Cir. 2002) (citations omitted)) (emphasis in original); *In re Bank of New England Corp.*, 218 B.R. at 653 (finding that to justify an interlocutory review, the appeal must present "one or more difficult and *pivotal* questions of *law* not settled by controlling authority" (first emphasis in original, second supplied). Certainly, Judge Feeney's approval of the 13-week budget is justifiable based on her finding that IP's position is adequately protected. (in actuality, given that IP Company did not appeal from the Interim Order, only an 11-week budget is in dispute, of which over seven weeks have expired).

Furthermore, an appellate decision regarding use of certain of the cash collateral for certain administrative purposes will not effect the ultimate disposition of this bankruptcy proceeding -- the third consideration in granting leave for interlocutory appeals. At most, this Court may determine on appeal that cash collateral *cannot be used to pay attorneys' fees*, which is all that IP has advanced as categorically objectionable in Judge Feeney's order. However, Fed. R. Bankr. P. 552(b), which recognizes that a creditor's security interest in rents continues postpetition, also provides the court to determine otherwise "based on the equities of the case." While Judge Feeney specifically declined to "make any determination *at this time* of the applicability of such exception," she certainly would be free to do so in the future, especially if IP Company continues to pursue a stranglehold on all assets of the Debtor with the primary intention of undermining the Debtors' ability to rightfully seek the protections of the Bankruptcy Code. *See, In re Addison Properties Limited Partnership,* 185 B.R. 766, 778 & n. 13 (Bankr.

N.D. Ill. 1995) (noting that creditor/debtor situations like the one presented to this Court provide a creditor with "a veto on the bankruptcy case from the outset," which has struck a dissonant chord with the Appeals Court of the Fifth Circuit as a "'result which seems inconsistent with the congressional policy favoring attempts at reorganization,'" quoting, *In re Timbers of Inwood Forest Assoc. Ltd.,* 793 F.2d 1380, 1408 (5th Cir. 1986), *aff'd sub nom., United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365 (1988)). As such, this appeal is not justified. *In re Bank of New England Corp.,* 218 B.R. at 645 (even though a reversal of the bankruptcy court's decision would terminate the creditor's participation in adversary proceeding, it would not end the adversary proceeding and therefore did not merit leave to appeal).

### CONCLUSION

For the foregoing reasons, this Court should dismiss IP Company LLC's appeal.

Respectfully Submitted,

FORT HILL SQUARE ASSOCIATES and
FORT HILL SQUARE PHASE 2 ASSOCIATES,

By: their proposed counsel,

Charles R. Bennett, Jr. (BBO #037380)
Kathleen E. Cross (BBO # 556934)
Christopher M. Morrison (BBO #651335)
HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108
(617) 423-0400
Fax:    (617) 556-8985

Dated: July 13, 2004
*407906*