UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
**In re**                                   )
**FORT HILL SQUARE ASSOCIATES and**         )
**FORT HILL SQUARE PHASE 2 ASSOCIATES**     )
_____)
                                            )
**IP COMPANY, L.L.C.,**                     )
                                            )
    Appellants              )
                                            )
    v.                      )    Civil Action No.
                                            )    04-CV-11473-PBS
**FORT HILL SQUARE ASSOCIATES,**            )
**FORT HILL SQUARE PHASE 2 ASSOCIATES**     )
**and OFFICIAL COMMITTEE OF**               )
**UNSECURED CREDITORS,**                    )
                                            )
    Appellees.              )
_____)

**OPPOSITION OF I.P. COMPANY, L.L.C. TO
<u>DEBTORS' MOTION TO DISMISS APPEAL</u>**

**INTRODUCTION**

    Pursuant to Federal Rule of Bankruptcy Procedure 8011(a), I.P. Company, L.L.C. ("IP Company"), respectfully opposes the Debtors' Motion to Dismiss Appeal (the "Motion" or "Motion to Dismiss").

    IP Company took this appeal from a final cash collateral order of the United States Bankruptcy Court. The Bankruptcy Court itself expressly denominated its order as final because the Court understood that the order conclusively authorizes the Debtors to spend the cash collateral (primarily rental income from International Place) of IP Company for the period covered by the order. Once expended, that collateral is gone, forever, and can never again secure the obligations which the Debtors owe to IP Company. Nothing could be more final.

The Bankruptcy Court's cash collateral order was not, as the Debtors contend, based upon factual circumstances capable of change during the course of these proceedings. Rather, it was based upon the Bankruptcy Court's determination -- which IP Company contends is erroneous -- of what the law requires for adequate protection of a secured party's interest in rents as cash collateral. By permitting the Debtors the irremediable use of IP Company's cash collateral as the necessary consequence of the Bankruptcy Court's ruling as to the applicable law, the Order was the definitive resolution of a discrete and critical legal, not factual, issue. In other words, it was final.

Finally, for largely the same reasons that the Bankruptcy Court's order is final and appealable, it is also ripe for appeal as "interlocutory" and under the "collateral order doctrine." Accordingly, the Motion should be denied and this appeal must be addressed expeditiously on the merits.

## PROCEDURAL BACKGROUND

The Motion concerns an appeal taken from a final order entered in the United States Bankruptcy Court for the District of Massachusetts (Feeney, J.) (the "Bankruptcy Court") on May 28, 2004, as amended on June 3, 2004 (the "Cash Collateral Order"). The Cash Collateral Order was entered following a contested hearing between the Debtors, the owners of the International Place office towers, and IP Company, the sole secured creditor of the Debtors. The hearing concerned the use by the Debtors of IP Company's cash collateral for the thirteen-week period covered by the budget submitted by the Debtors, and whether the statutorily required adequate protection existed for the use of such collateral.

The Debtors commenced these bankruptcy cases by filing voluntary petitions on May 7, 2004 (the "Petition Date").  As an emergency matter at the beginning of these cases, and over IP Company's objection, the Bankruptcy Court permitted the Debtors to use cash collateral on an interim basis, until May 28, 2004, subject to the budget attached to the cash collateral motion.  The Bankruptcy Court purported to grant IP Company "adequate protection" for such interim use of its cash collateral in the form of a "replacement lien" on the same collateral already securing IP Company's claim (i.e., the rents received from the property).

On May 26, 2004, IP Company filed an objection to the entry of a final order authorizing the use of cash collateral.  In addition to the objections stated in its original objection, IP Company noted that:  (i) it is entitled as a matter of law to adequate protection for the use by the Debtors of cash collateral and the Debtors have the burden of proof on this issue (See Section 363(o) of the Bankruptcy Code); (ii) because, by operation of Section 552(b)(2) of the Bankruptcy Code, all rents generated postpetition are already subject to IP Company's existing lien, a "replacement lien" in postpetition rents as a matter of law would not provide adequate protection to IP Company for the use of its cash collateral, as it was not the additional or replacement collateral required by § 361(2) of the Bankruptcy Code; (iii) at the same time that Debtors are not making any debt service payments to IP Company and, to the contrary, are proposing to use up its cash collateral in litigating against IP Company, and by paying one of the Debtor's equity holders a management fee, which IP Company asserted to be at above-market rates; (iv) the Debtors have failed to provide the reports and other information required by the Notes and the Mortgage, so that IP Company has no means of verifying the use of its cash collateral; and (v) as a matter of law a debtor in a Chapter 11 proceeding is not entitled to have its professional fees funded by an undersecured lender.

On May 28, 2004, after a contested hearing, the Bankruptcy Court entered its Order Granting Final Approval of Use of Cash Collateral and Granting Adequate Protection, allowing the Debtors to use cash collateral for all of the purposes set forth in the budget, including professional fees in litigating against IP Company, and finding that IP Company's interest in the cash collateral was adequately protected on the grounds that the rents and the realty were not declining in value, and as each month's rents were used, IP Company would receive a replacement lien on the next month's rents. Subsequently, the Bankruptcy Court made certain amendments to its order. IP Company timely appealed from the Cash Collateral Order and on July 14, 2004 filed its Initial Brief. The Debtors have moved to dismiss the appeal.

## STATEMENT OF FACTS

### The Property and the Amount Owed

The Debtors, each a Massachusetts general partnership, own property known as One and Two International Place located in Boston, Massachusetts (the "Property") (See App., Tab F at 5-6).[1/] The Debtors have no operations or employees; rather, they are merely entities created to hold bare legal title to the Property. (See App., Tab F at 17-18). In 1993, the Debtors entered into two promissory notes (the "Notes"), a mortgage agreement (the "Mortgage") granting a first priority mortgage against the Property, and an assignment of all rents generated from the Property (the "Assignment of Rents") in favor of the Teachers Insurance and Annuity Association of America ("Teachers") (See App., Tab F at 6-7). As of the Petition Date, the aggregate outstanding base principal and interest owed under the Notes is not less than $650,830,820, plus certain additional amounts to be determined (See App., Tab F at 6-7).

---

[1/]   All references to the Appendix are to the Appendix to IP Company's Initial Brief.

**The Notes and the Collateral Supporting the Obligations Thereunder**

IP Company purchased the Notes and the related loan documents evidencing the obligations owed by the Debtors thereunder, pursuant to an auction at which Teachers offered to sell the Notes and related loan documents (collectively, the "Loan Documents") (See App., Tab F at 6). The sale of the Notes closed in early April 2004 (See App., Tab F at 6).

As collateral for the obligations due under the Notes, the Debtors, *inter alia*, (i) granted a valid and perfected first priority mortgage against the Property, and (ii) entered into an assignment of leases and rents, pursuant to which the Debtors assigned, *inter alia*, all current and future tenant leases on the Property and the rents derived therefrom (See App., Tab F at 7-8). As additional collateral, IP Company obtained rights in certain escrow accounts established in connection with the Property (See id.).

**The Value of the Collateral**

The appraiser retained by IP Company has valued the real estate at no more than $600 million (See App., Tab F at 8). As of the Petition Date, the Debtors have listed cash on hand in the amount of $7,243,128, as well as funds in the escrow accounts in the amount of $12,469,904 (See id.). The appraisal submitted by IP Company was the only evidence presented to the Bankruptcy Court on the issue of valuation. In a recently filed adversary proceeding complaint brought to determine the full amount of IP Company's claims, the Debtors have admitted that IP Company is undersecured but continue to avoid stating their position as to the actual value of the Debtors assets. Based on the only evidence to date, the total value of IP Company's collateral in the real estate and the escrow as of the Petition Date is not more than $619,713,032. Thus, IP Company is substantially undersecured on the indebtedness due to it from the Debtors.

**Bankruptcy**

On May 7, 2004, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. This single asset bankruptcy is nothing more than a two-party business dispute between the equity holders of the Debtor entities and the sole secured creditor. The remaining unsecured creditors in these cases are a handful of trade creditors whose claims are entirely manufactured by the Debtors to meet their litigation strategy, as there existed more than sufficient cash to pay all of these claims in full prior to these petitions being filed. In contrast to their treatment of the trade debt, prior to commencing this proceeding the Debtors did make certain to pay in full the invoices of the management companies owned by their affiliate. The Debtors also timed their filing just before an interest payment was due to be paid and just as IP Company was about to commence an audit. Because of the lack of any adequate protection for the use of its collateral, IP Company objected and continues to object to the use of its cash collateral for any purpose other than to preserve and maintain the Property. (See App., Tab B, F).

**The Cash Collateral Motion**

The budgets submitted by the Debtors in connection with the Cash Collateral Motion indicate that in addition to using the cash collateral to operate the Property, they will spend some $800,000 on costs of administering these bankruptcy cases during just the thirteen-week period covered by the Cash Collateral Motion (See App., Tab A).

**The Appeal**

IP Company filed a Notice of Appeal from the Cash Collateral Order on June 7, 2004, together with an Election to Proceed before this Court (See App., Tab L, M).

## ARGUMENT

The District Court's jurisdiction over bankruptcy appeals is governed by 28 U.S.C § 158. The statute provides for two avenues of appeal. A party may appeal as a matter of right "from final judgments, orders, and decrees [of bankruptcy courts]." Id. at § 158(a)(1). In addition, the District Court has discretion to permit appeals from "other interlocutory orders and decrees [of bankruptcy courts]." Id. at § 158(a)(3). This appeal is proper under either provision.

### I. THE CASH COLLATERAL ORDER IS A FINAL ORDER, PROPERLY APPEALABLE AT THIS TIME

#### A. The Standard For A "Final Order."

In assessing whether a bankruptcy court order is final, appellate courts, including the Court of Appeals and other courts in this Circuit, apply a more flexible standard in bankruptcy cases than in traditional civil cases. See In re American Colonial Broad. Corp., 758 F.2d 794, 801 (1st Cir. 1985) ("Finality is viewed more flexibly in the bankruptcy context than it is in other civil litigation contexts"); In re Newport Creamery, Inc., 295 B.R. 408, 415 ( B.A.P. 1st Cir. 2003) (same). Because a bankruptcy case holds more potential for the resolution of discrete disputes that might qualify as "judicial units" for purposes of appeal a bankruptcy court order "is not appealable unless it conclusively determines a discrete dispute within the larger case." In re Bank of New England Corp., 218 B.R. 643, 646 (B.A.P. 1st Cir. 1998) (quoting In re Harrington, 992 F.2d 3, 5 (1st Cir. 1993)); see also In re Saco Local Dev. Corp., 711 F.2d 441, 444 (1st Cir. 1993) ("Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case."). Though the Debtors would have it otherwise, the Order on appeal here was just that, a conclusive determination of a discrete dispute within the larger cases.

      **B.**     **The Bankruptcy Court Recognized Its Order As Final.**

Significantly, the Bankruptcy Court itself clearly considered the Cash Collateral Order final. The May 28 hearing began with the court declaring that "[t]his is a hearing on the debtor's request for final approval of use of cash collateral." Following that hearing, the Bankruptcy Court entered its order entitled "Order Granting <u>Final</u> Approval of Use of Cash Collateral and Granting of Adequate Protection." <u>See</u> Cash Collateral Order (emphasis added) (<u>See</u> App., Tab H). Unsurprisingly, while the Debtors are pleased to accept the benefits of the Bankruptcy Court's order, they neglect in their Motion to acknowledge the Bankruptcy Court's repeated statements that the Order entered that day was "final."

      **C.**     **The Cash Collateral Order Meets The Standard For A Final Order.**

The Bankruptcy Court denominated the Cash Collateral Order as final because that order conclusively determined a discrete issue within these bankruptcy cases. Understanding clearly the context for that Order is essential. The cash collateral at issue is primarily the rents from the leasing of office and retail space in the Debtors' two office towers. IP Company has a perfected, first priority lien on those rents, both the rents now due and, pursuant to 11 U.S.C. § 552(b), the rents that will accrue in the future. The Cash Collateral Order authorized, on a final basis, the Debtors' use of the rents for the administration of these cases over the objection of IP Company. And, most importantly, because IP Company already has a lien on all of the Debtors' material assets but is <u>under</u>secured, there is no free value in the Debtors' estates from which to compensate IP Company for the consumption by the Debtors of the rents, that is, IP Company's cash collateral. Thus, once the rents are spent by the Debtors as permitted by the Bankruptcy Court's Order, that collateral is gone forever and, thus, is no longer available to secure the obligations owed by the Debtors to IP Company. To summarize, for the period covered by the

8

Order, the Bankruptcy Court definitively determined the fate of the rents and the protection, or not, of IP Company's interest in those rents.

The Order is also a conclusive determination of the key cash collateral legal issue. The Court's ruling was based not on any factual finding, subject to change over time, but rather rests on the Court's (erroneous) application of law. As set forth at pages 12-18 of IP Company's Initial Brief, in ruling as it did the Bankruptcy Court rejected the majority rule, choosing instead to follow the discredited approach followed in In re Mullen, 172 B.R. 473, 476 (Bankr. D. Mass. 1994) but expressly rejected by this Court in Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship, 248 B.R. 668 (D. Mass. 2000). Thus, no matter how many times cash collateral issues come before the Bankruptcy Court over the course of the proceedings, the result must always be the same, because under the Bankruptcy Court's (mistaken) view of the law, the Debtors may spend the rents, and IP Company is always "adequately protected," as long as it receives a "replacement lien" in one month's rent -- rents in which IP Company already has a security interest under section 552(b) of the Bankruptcy Code. Under the Debtors' position on appellate review, this continuing loss of collateral should be permitted to occur without providing IP Company with the opportunity for an appellate determination.

None of the cases on which the Debtors appear to rely in their Motion support dismissal of this appeal. Debtors appear to suggest that the Bankruptcy Appellate Panel's decision in In re Bank of New England Corp., requires dismissal. 218 B.R.643 (B.A.P. 1st Cir. 1998). But that case addressed a bankruptcy court's summary judgment order in an adversary proceeding that resolved fewer than all of the claims of the plaintiff, a classic non-final order. The Debtors also appear to rely significantly on the decisions in In re Chateaugay Corp., 80 B.R. 279 (S.D.N.Y. 1987) and In re The Charter Company, 778 F.2d 617, 622 (11th Cir. 1985). But in both of those

cases the orders at issue, which had nothing to do with cash collateral, were recognized to be nonconclusive treatments of certain claims that remained subject to future review and adjudication. The First Circuit's per curiam opinion in <u>First Fidelity Bank v. Public Serv. Co. of N.H.</u>, 879 F.2d 987 (1st Cir. 1989), is of no consequence as it expressly does not address the question of finality in reviewing the appeal of a Bankruptcy Court's order and the District Court's affirmance of that order. Finally, the Debtors invoke <u>In re U.S. Abatement Corp., 39 F.3d 563 (5th Cir. 1994)</u> and <u>Cont'l Ill. Nat. Bank & Trust Co. v. Wooten (In re Evangeline Refining Co.), 890 F.2d 1312 (5th Cir. 1989)</u>, to suggest that the Cash Collateral Order is not final because it is subject to future review and revision. Those decisions, however, involved not cash collateral orders but, respectively, an incomplete order of contempt and interim fee applications, the latter of which by statute are not final. There is no commonality between the Cash Collateral Order, which authorizes the use of cash that cannot be undone, and an incomplete contempt citation or an expressly interim fee order. What a fair reading of the decisions relied on by the Debtors reveals is the utter absence of authority for the relief the Debtors seek.

     Debtors also assert in their Motion that the Cash Collateral Order is not final because at the conclusion of the period covered by the Order, "the Debtors will again be required to demonstrate the adequacy of IP Company's protection," and because "[t]hese inevitable opportunities to revisit the use of cash collateral make the Cash Collateral Order a moving target at best, and preclude its treatment as a final order." Motion to Dismiss, at 10. The Debtors fail to appreciate two critical facets of the Cash Collateral Order, either of which illustrate the finality of the Order.

First, the Bankruptcy Court's determination was based on a conclusion of law-- not mutable factual circumstances -- that will continue to control future proceedings in this case. In adopting the discredited Mullen approach to adequate protection the Bankruptcy Court has set a legal stake in the ground that already has largely determined the course of other proceedings. Just in the first eight weeks of these cases the Bankruptcy Court has, over the objection of IP Company, approved the retention of additional professionals and several very substantial leases, which together will consume millions of dollars of IP Company's cash collateral over and above the original cash collateral budgets. Although each of these matters raised new and different facts than those before the Bankruptcy Court when it entered the Cash Collateral Order, there was no question that the Court's original legal ruling in that Order dictated the result in each of those new matters. Nor is there any reason whatsoever to believe that the result will be different in future proceedings that implicate the use of IP Company's cash collateral.

In their Motion Debtors concede at one point that an order constitutes a "conclusive determination" when "the lower court has 'clearly said its last word on the subject.'" Id. at 12 (citations omitted). Precisely because the Order is premised on a conclusion of law, and not on a potentially shifting landscape of facts, it is apparent that the Bankruptcy Court has given its last word on the subject and an appeal is properly taken now.

What the Debtors also fail to recognize is that there can be no "revisiting" of the use of cash collateral for the period covered by the Order. Because the cash collateral covered by the Order, once spent, is gone forever, unless the issues raised on this appeal are determined, IP Company will never be able to "revisit the use of the [spent] cash collateral." Motion to Dismiss at 10. See In re Safeguard Self-Storage Trust v. Valley Fed. Savings & Loan, 2 F.3d 967, 969 (9th Cir. 1993). Given that the value of the property securing the Debtors' obligations

11

to IP Company is undisputedly less than the amount of those obligations, IP Company is undersecured. There is no equity cushion or free asset from which to compensate IP Company for the loss of its cash collateral.

In sum, because the Bankruptcy Court itself determined its Cash Collateral Order to be final, because the order determines discrete disputes within these larger cases, and because the determination is conclusive of those issues, the Cash Collateral Order is a final order and appealable as of right under 28 U.S.C. § 158(a)(1).

## II. EVEN IF THE CASH COLLATERAL ORDER IS AN INTERLOCUTORY ORDER, THIS COURT HAS JURISDICTION OF THE APPEAL

Although the foregoing analysis demonstrating the finality of the Cash Collateral Order ought to be dispositive, should the Court determine that the Order is not final the Appeal nevertheless remains sound under two separate bases that confer appellate jurisdiction over interlocutory appeals: the Collateral Order Doctrine and 28 U.S.C. § 158(a)(3). See generally Watson v. Boyajian (In re Watson), 309 B.R. 652, 658 (B.A.P. 1st Cir. 2004); Sears Roebuck & Co. v. Lamirande, 199 B.R. 221, 222 (D. Mass. 1996).

### A. The Collateral Order Doctrine Permits Appeal of the Order.

As the Debtors acknowledge, even where a bankruptcy court's order is not considered final, an appeal still may be taken if it satisfies the Collateral Order Doctrine. Motion to Dismiss, at 11-20. See In re Bank of New England Corp., 218 B.R. 643, 647 (B.A.P. 1st Cir. 1998). An order is appealable under the Collateral Order Doctrine if it (1) conclusively determined, (2) an important legal question, (3) completely separate from the merits of the primary action, and (4) is effectively unreviewable on appeal from a final judgment. Bank of New England Corp., 218 B.R. at 649 (citing Petralia v. AT&T Global Info. Solutions Co., 114 F.3d 352, 354 (1st Cir. 1997) and other cases). IP Company's appeal here meets each of these

12

elements, this appeal properly lies even if the Cash Collateral Order was not, as it plainly is, a final order.

As discussed at length above, the first prong of the test is met because the Cash Collateral Order conclusively determines the use of IP Company's cash collateral for the period covered by the Order. There is no support for the Debtors' contention that the Order fails to satisfy this element because there is no basis to even suggest that the Bankruptcy Court will revisit the substance of its ruling. Contrast Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 278 (1988) (ruling that order denying a stay failed to satisfy "conclusive" element when district court clearly expected to revisit and reassess the order).

The second prong is also easily satisfied because the legal issue involved is an important one—whether or not the "protection" granted IP Company satisfies the requirements of 11 U.S.C. § 363, particularly given the Bankruptcy Court's election to adopt a position that runs counter to the majority of other courts, including this Court.

The third element is met because the resolution of the cash collateral controversy has nothing to do with the merits of the underlying action here, which concerns the efforts of the Debtors to refinance or restructure the loan and reorganize the enterprise. Compare In re Nineteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig, 982 F. 2d 603, 610 (1st Cir. 1992) (deciding that an order which definitively resolves claims for attorneys' fees and expenses payable out of a common fund is severable from the decision on the merits). Indeed, the Debtors concede that resolution of this issue "will not effect the ultimate disposition of this bankruptcy proceeding." Motion to Dismiss, at 19.

Finally, the fourth element is satisfied because unless an appeal is heard now, the Bankruptcy Court's ruling will effectively be unreviewable on appeal from a final judgment.

That is, under the Cash Collateral Order, the Debtors are free to spend rents as they come in. Even if IP Company's position were upheld on appeal following final judgment in the bankruptcy cases, it would benefit IP Company not at all, since once spent, the rents can never be recovered. Because IP Company's claims are undisputedly undersecured, the loss of its cash collateral is irremediable. See SEC v. Forex Asset Mgmt. LLC, 242 F. 3d 325, 330 (5th Cir. 2001) (permitting review of order because order approving receiver's distribution plan was effectively unreviewable on appeal since the assets from the receivership would be distributed and likely unrecoverable before the underlying action would be subject to appellate review). Thus, the fourth prong of the collateral order test is met, as even the Debtors concede that a showing of irreparable harm satisfies the "unreviewability" requirement. Motion to Dismiss, at 14.

The Debtors' argument that if IP Company were to prevail on an appeal taken after the conclusion of the case its interests could be protected by an award of "the right to stand first in line for recovery from the Debtors' assets" (Motion to Dismiss, at 14-15), is patently empty. The undisputed facts are that (i) IP Company is already the sole secured creditor in the Debtors' only asset, the buildings; and (ii) those assets already are insufficient to satisfy the existing obligation owed to IP Company. Thus, because IP Company already stands "first in line," and because that position is already undisputedly inadequate, the harm to IP Company from not allowing this appeal to proceed now is irreparable.

**B.     28 U.S.C. § 158(a)(3) Permits Appeal of the Order.**

Section 158(a)(3) grants this Court the discretion to determine appeals from "other interlocutory orders and decrees." This appeal is proper under this provision.

### 1. The Order Satisfies Every Element of the 28 U.S.C. § 158(a)(3) Analysis.

As the statutes and rules governing section 158(a)(3) appeals do not provide district courts with codified standards for exercising that discretion, see 28 U.S.C. § 158; Fed.R.Bankr. 8001, 8003; Bank of New England Corp., 218 B.R. at 652, the courts have adopted the standards of review for certification of interlocutory appeals to the Circuit Court pursuant to 28 U.S.C. § 1292(b). Id. Accordingly, section 158(a)(3) permits discretionary jurisdiction to review interlocutory orders (1) that involve a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) when an immediate appeal from the order may materially advance the ultimate termination of the litigation. Bank of New England Corp., 218 B.R. at 652. IP Company's appeal meets these criteria.

The first element of the section 158(a)(3) grant of jurisdiction is satisfied because the Order involves a controlling question of law. See In the case of BancBoston Real Estate Capital Corp. v. JBI Assocs. Ltd. P'ship. (In re Jackson Brook Inst.), 227 B.R. 569, 582 (D. Me. 1998). The court there reasoned that an incorrect determination of abstention would result in a continuing injury, therefore concluding that the determination constituted a controlling issue of law for the purpose of permitting an appeal under section 158(a)(3). Here, as noted, the Cash Collateral Order turns on the Bankruptcy Court's application of the Mullen decision. Thus, the entire Cash Collateral Order hinges on the correct application of an issue of law. Further, similar to the facts in BancBoston Real Estate Capital Corp., IP Corporation will suffer a continuing injury if the Order cannot be appealed. Accordingly, the Order constitutes a controlling issue of law that merits appeal.

The second element of section 158(a)(3) is satisfied because, as demonstrated in IP Company's Initial Brief, at 12-18, there is substantial ground for a difference of opinion on this

controlling issue of law.  See In reWatson, 309 B.R. at 660.  Indeed, as demonstrated in that brief, the majority of courts have adopted the position taken by IP Company in this appeal, namely, that because of the operation of section 552(b), IP Company already has a security interest in all postpetition rents, and the adequate protection which must be shown before cash collateral may be used cannot be demonstrated where a "replacement lien" is to be put on collateral already subject to the creditor's security interest.  Given the decision of the Bankruptcy Court to reject this approach in favor of the discredited Mullen decision, the difference of opinion and need for its resolution is apparent.

Finally, the third element of section 158(a)(3) is met because resolution of the legal issue raised by this appeal will control all subsequent cash collateral hearings, and thereby promote the effective handling of this proceeding.  See In re Watson, 309 B.R. at 660 ("An interlocutory appeal materially advances the ultimate termination of the litigation where resolution of the issue on appeal 'greatly assist[s]' in resolving the underlying matter, and does not unnecessarily delay resolution of the underlying matter"); BancBoston Real Estate Capital Corp, 227 B.R. at 583 (ruling on order would materially advance the final resolution of bankruptcy proceeding because final resolution of legal issue would permit proceeding to "go forward unburdened by the issues" connected to the order).

Accordingly, even if the Cash Collateral Order were not a final order, and even if the criteria for satisfying the Collateral Order Doctrine were not present, compelling grounds would still exist for this appeal to proceed.

### 2. 28 U.S.C. § 158(a)(3) Permits Appeal Of Orders That Are Not Easily Classified As Interlocutory Or Final.

Finally, this Court can elect to hear the Appeal under 28 U.S.C. § 158(a)(3) without deciding that the Order is final or interlocutory.  See Stevens v. CSA, Inc., 271 B.R. 410, 413 (D.

Mass., 2001); In re Delta Petroleum (P.R.), Ltd., 193 B.R. 99, 105 & n.15 (1996) (although concluding that bankruptcy order was final, court explained that finality was not immediately apparent, and asserted that "[i]n the alternative that the order . . . was not a final order," court would nevertheless take notice of appeal under § 158(a)(3)).  In Stevens, the court concluded there was jurisdiction to hear an appeal on a bankruptcy court's denial of a motion to force assumption or rejection of an executory contract.  271 B.R. at 413.  In reaching its decision, the court noted there is "scant precedent addressing whether the particular type of decision at issue . . . is interlocutory or final."  Id.  Instructively, without expressly ruling whether the order was final or interlocutory, the court granted jurisdiction since it was presented with a "discrete and well-framed issue of law, the resolution of which will have important implications for" the parties, concluding that "[e]ven assuming that that order was interlocutory . . . review is therefore appropriate under § 158(a)(3)."  Id.  Accordingly, this Court has the authority to exercise jurisdiction to hear the Appeal on alternative grounds, even if it were to choose not to make a determination that the Order is final or interlocutory.

## CONCLUSION

For all of the reasons stated above, it is respectfully submitted that the Debtors' Motion to Dismiss the Appeal should be denied.

Date:  August 6, 2004                                  Respectfully submitted,

I.P. Company L.L.C.

By its attorneys,


/s/ Michael S. Gardener
R. Robert Popeo, BBO No. 403360
Richard E. Mikels, BBO No. 345620
Michael S. Gardener, BBO No. 185040
Kevin J. Walsh, BBO No. 629984
Daniel S. Bleck, BBO No. 560328
Mintz, Levin, Cohn, Ferris,
 Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Fax: (617) 542-2241

## CERTIFICATE OF SERVICE

      I, Michael S. Gardener, counsel for IP Company, L.L.C., hereby certify that a copy of the foregoing, OPPOSITION OF I.P. COMPANY, L.L.C. TO DEBTORS' MOTION TO DISMISS APPEAL**,** was served, this day, via first class mail, postage prepaid, on:

Charles R. Bennett, Jr.
Kathleen E. Cross
Christopher M. Morrison
Hanify & King
One Beacon Street
Boston, MA  02108
Tel: 617-423-0400

                                                /s/ Michael S. Gardener
August 6, 2004                                Michael S. Gardener

LIT 1472075v1