UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-CV-11473-PBS

Bankruptcy Case Nos.
04-13855 and 04-13857-JNF
(Jointly Administered)

FORT HILL SQUARE ASSOCIATES and
FORT HILL SQUARE PHASE 2 ASSOCIATES,
Debtors.

IP COMPANY, L.L.C,

Appellant,

v.

FORT HILL SQUARE ASSOCIATES,
FORT HILL SQUARE PHASE 2 ASSOCIATES, and
OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

Appellees.

**BRIEF OF APPELLEE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Submitted by:

William R. Baldiga
Margaret M. Pinkham
Amanda Buck Varella
John C. Elstad
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Fax: (617) 856-8201

August 6, 2004

## TABLE OF CONTENTS

| | | |
|---|---|---|
| TABLE OF AUTHORITIES | | i |
| I. | STATEMENT OF APPELLATE JURISDICTION | 1 |
| II. | STATEMENT OF APPELLATE REVIEW | 1 |
| III. | STATEMENT OF ISSUE PRESENTED | 1 |
| IV. | STATEMENT OF THE CASE | 1 |
| V. | ARGUMENT | 1 |
| | A. Where Collateral Is Not Depreciating, a Creditor Is Not Entitled to Adequate Protection. | 2 |
| | B. The Bankruptcy Court's Factual Finding That the Collateral Is Not Depreciating Has Ample Support in the Record. | 3 |
| | C. A Security Interest in Collateral Does Not Give the Creditor Right to Use of Funds. | 4 |
| | D. The Code Does Not Mandate Maximum Accumulation of Rental Payments for Lender's Benefit. | 5 |
| | E. The *Mullen* Decision Is Persuasive. | 6 |
| | F. Cash Collateral May Be Used For Professional Fees Where the Secured Creditor's Collateral Is Adequately Protected. | 9 |
| VI. | CONCLUSION | 11 |

## TABLE OF AUTHORITIES

### FEDERAL CASES

In re Addison Properties Ltd. P'ship,
   185 B.R. 766 (Bankr. N.D. Ill. 1995) ................................................................. 2, 7, 9

In re Barkley 3A Investors,
   175 B.R. 755 (Bankr. D. Kan. 1994) ........................................................................ 7

Beal Bank, S.S.B. v. Waters Edge Ltd. P'shp,
   248 B.R. 668 (D. Mass. 2000) ............................................................................... 6, 8

In re Ben Franklin Retail Stores,
   210 B.R. 315 (Bankr. N.D. Ill. 1997) ....................................................................... 6

Butner v. United States,
   440 U.S. 48 (1979) .................................................................................................... 2

In re Citicorp Park Assocs.,
   180 B.R. 15 (Bankr. D. Me. 1995) ........................................................................... 9

In re James Wilson Assoc.,
   965 F.2d 160 (7th Cir. 1992) .................................................................................... 9

In re Kalian,
   169 B.R. 504 (Bankr. D. R.I. 1994) .......................................................................... 4

In re Mullen,
   172 B.R. 473 (Bankr. D. Mass. 1994) ........................................................... 7, 8, 9, 10

In re Oak Partners, Ltd.,
   135 B.R. 440 (Bankr. N.D. Ga. 1991) ...................................................................... 6

Official Comm. of Unsecured Creditors of Western Pac. Airlines v. Western Pac.
   Airlines (In re Western Pac. Airlines),
   219 B.R. 575 (D. Colo. 1998) ................................................................................. 11

Official Comm. of Unsecured Creditors v. Belgravia Paper Co. (In re Great
   Northern Paper, Inc.),
   299 B.R. 1 (D. Me. 2003) ....................................................................................... 11

In re Precast Structures, Inc.,
   122 B.R. 304 (Bankr. S.D. Tex. 1990) ................................................................... 10

In re Rancourt,
   123 B.R. 143 (Bankr. D. N.H. 1991)..................................................................2, 6, 11, 12

In re Ridgewood Apartments,
   183 B.R. 784 (Bankr. S.D. Ohio 1995) ............................................................................7

In re Smithfield Estates, Inc.,
   48 B.R. 910 (Bankr. D. R.I. 1985)................................................................................2, 6

In re Subpoenas Duces Tecum,
   978 F.2d 1159 (9th Cir. 1992) ........................................................................................11

United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.,
   484 U.S. 365 (1988) .....................................................................................................3, 9

WHBA Real Estate Ltd. P'shp v. Lafayette Hotel P'shp,
   227 B.R. 445 (S.D.N.Y. 1998) .........................................................................................9

## FEDERAL STATUTES

11 U.S.C. § 1109 .......................................................................................................................2

11 U.S.C. § 330 .......................................................................................................................10

11 U.S.C. § 331 .......................................................................................................................10

11 U.S.C. § 361(1).....................................................................................................................3

## MISCELLANEOUS

140 Cong. Rec. H 10,768 (Oct. 4, 1994).................................................................................8

I. **STATEMENT OF APPELLATE JURISDICTION**

Appellee, the Official Committee of Unsecured Creditors (the "Committee"), incorporates by reference the Statement of Appellate Jurisdiction set forth in the Brief of Appellees Fort Hill Square Associates and Fort Hill Square Phase 2 Associates (the "Debtors' Brief").

II. **STATEMENT OF APPELLATE REVIEW**

The Committee incorporates by reference the Statement of Appellate Review set forth in the Debtors' Brief.

III. **STATEMENT OF ISSUE PRESENTED**

The Committee incorporates by reference the Statement of Issue Presented set forth in the Debtors' Brief.

IV. **STATEMENT OF THE CASE**

The Committee incorporates by reference the Statement of the Case set forth in the Debtors' Brief.

V. **ARGUMENT**

The Committee seeks affirmance of the Bankruptcy Court's order regarding Fort Hill Square Associates and Fort Hill Square Phase 2 Associates' (the "Debtors") use of cash collateral. The Committee is comprised primarily of trade vendors who continue to provide services necessary to operate International Place, including security, parking, cleaning, and trash removal services. The Committee participated fully in the briefings and hearings on the order on appeal

entered by the Bankruptcy Court, and pursuant to 11 U.S.C. § 1109,[1] has an absolute right to be heard. Furthermore, appellant IP Company L.L.C. (the "Lender") listed the Committee as a party to the order on appeal in its Notice of Appeal.

    A.    <u>Where Collateral Is Not Depreciating, a Creditor Is Not Entitled to Adequate Protection.</u>

As is appropriate with respect to any request by a debtor-in-possession to use cash collateral, the Bankruptcy Court properly first determined whether granting the request would put the creditor with a lien on the cash to be expended in a worse position with respect to its collateral protection than if the cash were to be not used. <u>In re Smithfield Estates, Inc.</u>, 48 B.R. 910, 914 (Bankr. D. R.I. 1985) (adequate protection relates to maintaining the status quo for the period after the filing of the petition and before confirmation or rejection of the plan); <u>In re Addison Properties Ltd. P'ship</u>, 185 B.R. 766, 769 (Bankr. N.D. Ill. 1995) (adequate protection "meant only to assure that a secured creditor does not suffer a decline in value of its interest in the estate's property," not to compensate it for delay in enforcing rights). The rationale behind this determination is straightforward: because a secured creditor is precluded from foreclosing on its collateral by the automatic stay, it is only fair that a debtor be required to refrain from conduct that decreases the value of the collateral during the pendency of the stay. <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979). By the same token, however, the lender is not entitled to any greater rights in its collateral than it would have had if the debtor had not filed for bankruptcy. <u>See</u> <u>In re Rancourt</u>, 123 B.R. 143, 150 (Bankr. D. N.H. 1991) (denying oversecured creditor's motion to sequester rents and limit use of cash collateral).

---

[1] Section 1109(b) of the Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, *a creditors' committee*, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b) (emphasis added).

The premise that a secured creditor is entitled to protection from a decrease in the value of its collateral while the automatic stay is in place is the underpinning of the analysis required when a debtor-in-possession seeks to use cash collateral. This analysis hinges on whether the value of the collateral is stable. An undersecured creditor whose collateral is <u>not declining</u> in value is <u>not entitled</u> to adequate protection payments or other extraordinary relief during the pendency of the automatic stay. <u>United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.</u>, 484 U.S. 365, 368-379 (1988). It is only in situations in which the court determines that the value of the collateral will decrease that adequate protection is required. <u>Id.</u>; <u>see also</u> 11 U.S.C. § 361(1) (if adequate protection is required, it can be accomplished by cash payments "to the extent the stay . . . results in a decrease in the value of [creditor's] interest in such property"); 11 U.S.C. § 361(2) (adequate protection may be provided "to the extent that such stay . . . results in a decrease in the value of [creditor's] interest in such property"); 11 U.S.C. § 361(3) (authorizing grant of other relief "as will result in the realization by [creditor] of the indubitable equivalent of [its] interest in such property").

    B.    <u>The Bankruptcy Court's Factual Finding That the Collateral Is Not Depreciating Has Ample Support in the Record</u>.

In these cases, the collateral that the Lender seeks to protect is the rental income generated by the property.[2] The cash collateral budget submitted by the Debtors showed an increase in its cash position of $739,644 over the thirteen week period covered, after taking into effect the amount of payments for management and professional fees, the two categories of expenses to which the Lender objects. *Appendix of IP Company, L.L.C.*, Tab J, Cash Collateral Order at p. 3. In addition, the Debtors assert that the three leases it executed will bring $100

---

[2] The Committee recognizes that the Lender has a security interest in the real estate as well. However, because the Lender has not alleged that the value of the real estate is in decline, and it is the Debtors' attempt to use the Lender's cash collateral in rents that is at issue in this appeal, the Committee will not address the Lender's argument that the Bankruptcy Court made an error of fact by finding that the value of the real estate is not declining.

million in new income over their terms and that such leases decreased the property's vacancy rate to below ten percent. *Debtors' Record on Appeal*, Tab 27, Cash Collateral Memorandum, at pp. 2-3, 3 n. 2. These facts provide ample support for the Bankruptcy Court's factual determination that the value of Lender's collateral is not declining. If anything, it is increasing.[3]

    C.    <u>A Security Interest in Collateral Does Not Give the Creditor Right to Use of Funds</u>.

The Lender argues that allowing the Debtors to use the rental stream will decrease the value of its collateral. The Lender overlooks a basic fact – that it has no right to control or collect the rent unless and until a default is declared. It has merely a security interest in the rent, not an ownership or possessory interest. Under the Agreement of Confirmation and Amendment of Amendment, Spreader and Consolidation of Assignments of Lessor's Interest in Lease(s), dated February 22, 1993, by and between the Debtors and the Lender, as successor in interest to Teachers Insurance and Annuity Association of America, the Debtors assigned the Lender the immediate and continuing right to collect the rents subject to a license back to the Debtors so long as no default has occurred. The license authorizes the Debtors to collect the rents and apply them to 1) taxes; 2) insurance, necessary maintenance and repairs; 3) lease obligations; and 4) interest and principal due under the Notes, before using the rents for any other purpose. *Debtors' Record on Appeal*, Tab 31, Exhibit A at p. 5.

The Debtors were, and are not, in default. See *Debtors' Record on Appeal*, Tab 27 at ¶ 17. Because the Debtors were not in default on April 30, 2004, they could operate the property

---

[3] The value of the rental stream is the fundamental factor in determining the property's market value. The Lender's real estate expert prepared a "preliminary" opinion on the market value of the real estate, using the discounted cash flow method. As he described, this method relies on the projected income stream generated by the property. The Lender's expert used the "contracts in place" at the property to determine rental revenue. It is unclear whether he relied on the three postpetition leases in his analysis. See *Affidavit of Donald P. Bouchard*. Under the methodology followed by the Lender's own expert, the market value of the property would presumably increase when the rent generated by the new leases is included in the calculation. See <u>In re Kalian</u>, 169 B.R. 504, 506 n.4 (Bankr. D. R.I. 1994) (noting that where rent from one tenant increased, raising rental stream, slight increase in market value of property was likely under income approach to valuation).

as they deemed prudent with the rent due on May 1, 2004. The same analysis applies with each passing month. Therefore, every time a tenant pays a monthly installment of rent and that rent is used to operate the property, the Lender's lien, as to that rental payment, ceases to exist. Based on its own agreement with the Debtors, the Lender's lien on rental income extends forward to the rent due the next month, and the month after that, until such point in time as its lien ripens into a right to possess or collect the rent.

    D.    The Code Does Not Mandate Maximum Accumulation of Rental Payments for Lender's Benefit.

The Lender's basic argument is that the deposit account that holds any net income, after operational and administrative expenses are paid during the course of these cases, would have a higher balance if the Bankruptcy Court prohibited the Debtors from spending rental proceeds on management and professional fees. That is true – but it does not matter for the purposes of the cash collateral motion. The Lender has a security interest in the rental stream, not a possessory right to the rental stream, and in any event the Debtors have presented evidence that the rental stream is increasing, not decreasing, with each passing month. The Lender presented no evidence to the contrary.

The Lender argues that the accumulated cash or income generated from the rental stream on hand at the end of this case will be less than it would be had the Bankruptcy Court prohibited the Debtors from using the cash collateral to pay management and professional fees. The Lender cites for support to cases that hold that accumulated net rents during a bankruptcy case should augment the value of a lender's allowed secured claim at the end of the case. However, the Lender has cited no case or Code provision which would require the Bankruptcy Court to maximize such accumulation at the expense of prudent management of the underlying property. Such a result would amount to granting the Lender the right to collect the rents, a right, as stated

above, which the Lender did not have prepetition, and does not have postpetition absent relief from the automatic stay.

Moreover, the courts do not embrace the Lender's view of the Code: "A mortgagee who comes into the bankruptcy and asserts a right to control the use of specific rent payments, including ultimately the payment over of such payments to reduce its secured debt, without itself taking possession and operation of the premises . . . arguably would in fact be given greater rights than otherwise would obtain absent a bankruptcy." Rancourt, 123 B.R. at 150; see also Smithfield Estates, 48 B.R. at 914-15 ("adequate protection not designed or intended to place an undersecured or minimally secured creditor in a better post-filing position than it was in before the stay"); In re Oak Partners, Ltd., 135 B.R. 440, 449-50 (Bankr. N.D. Ga. 1991) (noting creditor's "interest in property" under Sections 506(a) and 361 (1)(2) refers to security interest without taking into account a right of possession of collateral upon default, because if it were taken into consideration, the value of entitlement to use collateral would increase with passage of time). "[T]he property of this estate may be encumbered, but it is still property of this estate. It does not belong to the secured creditors; they only have a security interest in it." In re Ben Franklin Retail Stores, 210 B.R. 315, 319 (Bankr. N.D. Ill. 1997) (rejecting argument that "this is secured lenders' money and they can do what they want with it" where payment would result in law firm reimbursement at higher percentage than other unsecured creditors).

E.     The *Mullen* Decision Is Persuasive.

The Lender's focus on the accumulation of net income at the end of the case, rather than on the factual issue of whether or not its collateral is declining in value at this stage of the case, puts the cart before the horse. The focus on the wrong time period also leads the Lender to rely heavily on Beal Bank, S.S.B. v. Waters Edge Ltd. P'shp, 248 B.R. 668 (D. Mass. 2000). Yet the Beal case, decided after three days of trial on the ultimate issue in any reorganization proceeding

(confirmation of a chapter 11 plan), and which determined how the net income accumulated in that case should be treated in calculating the lender's secured claim, provides no guidance on deciding the present motion here seeking interim use of cash collateral. The holding in Beal may well control how the net accumulated rents are treated when a plan is presented for confirmation in this case, but it does not mandate a ruling on a cash collateral motion that would maximize the accumulation of net rents for the benefit of the secured creditor by denying permission to pay valid postpetition expenses of the estate.

As the Bankruptcy Court held, even if the Lender were now entitled to some additional form of adequate protection (as perhaps would be the case if its collateral were depreciating), the Lender is adequately protected with respect to the Debtors' use of rents by the accumulation of surplus net rents during the pendency of this action. In this way, the lien on next month's rent protects the Lender's interest in this month's rent despite the Debtors' partial use of it, as eloquently expressed in In re Mullen, 172 B.R. 473 (Bankr. D. Mass. 1994). See also In re Addison Properties Ltd. Pshp, 185 B.R. 766. Despite the Lender's attempt to discredit Mullen by citing commentators who criticize the decision on other grounds, Mullen's holding that the lien on each month's rents replaces the lien on the prior month's rent remains controlling precedent in this District.[4]  Indeed, Mullen has been followed by other courts in a number of other cases. See, e.g., In re Barkley 3A Investors, 175 B.R. 755 (Bankr. D. Kan. 1994); In re Ridgewood Apartments, 183 B.R. 784 (Bankr. S.D. Ohio 1995).

The Lender also mis-states the holdings of both Mullen and Beal. Mullen held that the secured lender was not entitled to turn over of net rents on two alternative grounds: (i) the

---

[4] The Lender went so far as to represent to the Bankruptcy Court that Mullen had been reversed on appeal. The Lender appears to argue that Beal overturned Mullen. This is more than a stretch, as Mullen was not appealed to the District Court, and Beal simply disagreed with the analysis in one part of the Mullen decision not applicable to the dispute here.

secured lender was adequately protected; and (ii) allowing turnover of net rents would inequitably improve the secured lender's position (in effect reducing the gap between the secured lender's overall claim and the value of its security). See Mullen, 172 B.R. at 481. Beal held that accumulated net rents should augment the undersecured lender's allowed secured claim at the time of plan confirmation (effectively improving the secured lender's position), thereby joining a line of "addition" cases on the issue of how to evaluate a secured claim when a lender holds both a mortgage and an assignment of rents. See Beal, 248 B.R. at 685. Beal disagrees with the reasoning supporting Mullen's second alternative holding under the Section 552(b) equities of the case analysis.

However, Mullen is fundamentally neither an "addition" or a "subtraction" case – it is an adequate protection case. Mullen decided whether a debtor's interim use of cash collateral should be permitted, ultimately holding that the secured lender was not entitled to turn over of net rents where the value of its collateral was not declining, and that its continuing lien on future rents provided adequate protection. Because Mullen is squarely on point, the Lender, of necessity, argues that it is "discredited" and should not be followed.[5] The court in Mullen noted:

> Baybank says the value of its interest in the Debtor's property declines each time the Debtor consumes a month's rent in its operations. That is not so. Although Baybank loses its security interest in each month's rents as the rents are consumed, BayBank retains its security interest in all future rents. The value of that stream of future rents is not declining. The lien on each month's rents replaces the lien on the prior month's rents, so there is a replacement lien of equal value, within the meaning of section 361.

---

[5] The Lender implies that because Mullen was decided before the 1994 amendment to Section 552, it may not be relied on. That is not correct. The 1994 amendment was intended to correct a problem where lenders' otherwise valid prepetition security interests in rents had been invalidated in some bankruptcy matters because of the lenders' difficulties in perfecting such security interests under some state laws. See 140 Cong. Rec. H 10,768 (Oct. 4, 1994). However, in Mullen, the secured lender had a duly perfected security interest in rents and this change in law had no effect on the outcome of the case. See Mullen, 172 B.R. at 480.

> What BayBank actually wants to do is to now realize upon its security interest in rents. In <u>United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.</u>, (citation omitted), the Supreme Court held a secured creditor's "interest in property" does not include the right to immediate possession of collateral or its proceeds at foreclosure. By the same token, "interest in property" does not include the right to immediate possession of rents.

172 B.R. at 476-77. <u>Mullen</u> rejected the same arguments the Lender raises here, on the same facts. The same result is entirely appropriate here.

    F.    <u>Cash Collateral May Be Used For Professional Fees Where the Secured Creditor's Collateral Is Adequately Protected</u>.

Because the Lender's interest in its collateral is not depreciating, it is not entitled to extraordinary protection authorized under Section 361. <u>Timbers</u>, 484 U.S. at 368-79. The Lender's lien is deemed to be "protected" because the value of its collateral is not declining. The Bankruptcy Court held that even if the Lender were entitled to "adequate protection" under Section 361, the lien on each successive month provides such protection. In such situations, and absent some pre-bankruptcy seizure of the borrower's cash by the lender, the decided cases uniformly hold that a debtor may use cash collateral to pay professional expenses. See, e.g., <u>In re James Wilson Assoc.</u>, 965 F.2d 160, 171 (7th Cir. 1992) (single asset debtor permitted to use rents to pay professional fees where the secured creditor's interest was adequately protected); <u>WHBA Real Estate Ltd. P'shp v. Lafayette Hotel P'shp</u>, 227 B.R. 445, 453 (S.D.N.Y. 1998) (debtor may use the creditor's cash collateral for administrative expenses, including attorneys' fees, because the debtor provided adequate protection); <u>Addison Properties Ltd. P'ship</u>, 185 B.R. at 785 (holding single asset debtor may use rents to pay attorneys if it establishes that property is not declining in value and accrued rents are sufficient to cover fees, as it is "well established" that cash collateral can be used for administrative expenses if interest secured by collateral is adequately protected); <u>In re Citicorp Park Assocs.</u>, 180 B.R. 15, 18 (Bankr. D. Me. 1995)

(rejecting argument that replacement lien in future rents was insufficient, and holding debtor may use postpetition rental income to pay attorneys' fees when the secured creditor is adequately protected); In re Mullen, 172 B.R. at 475 (debtor may use a creditor's cash collateral provided the use does not deprive the creditor of adequate protection). Indeed, the Lender repeatedly acknowledges this principle in its brief. *Appellant's Initial Brief* at pp. 25, 26 ("Cash collateral cannot be used to pay interim compensation to professionals without the secured creditor's consent, unless . . . the secured creditor is adequately protected").

Awarding interim fees is within the court's discretion, and whether to award interim fees from cash collateral rests on the particular facts before the court. In re Precast Structures, Inc., 122 B.R. 304, 305-06 (Bankr. S.D. Tex. 1990). Allowing payment of professionals out of cash collateral is consistent with the Bankruptcy Code's policy of encouraging attorneys to take representations of bankruptcy debtors. Id. at 306 (noting need for parties to "be represented by competent counsel throughout bankruptcy proceedings to ensure protection and fair treatment to all parties involved").

In addition to providing for the payment of Debtors' counsel, the Bankruptcy Code permits the allowance of reasonable compensation for professional services rendered to an official committee of unsecured creditors. See 11 U.S.C. § 330. Thus, contrary to the assertion in Lender's brief (*Appellant's Initial Brief* at p. 20), the Debtors are not the only party who will benefit from the expenditure of cash collateral to pay professional fees. The unsecured creditors are caught in the middle of the dispute. Their committee is entitled to legal representation and to have professional expenses paid as cost of administration. See 11 U.S.C. §§ 330, 331.

The Lender also overlooks the Committee in arguing that the professional services will provide no benefit to the Lender or its collateral. The unsecured creditors provide the people

-10-

who show up for work every day to keep the building clean, prevent trash from piling up, operate the parking garage, and maintain security and order in the buildings. They have an enormous stake in these cases, and absent representation of the Committee as a whole each unsecured creditor would have to retain counsel to represent its interests. Such an outcome would result in a fractured and inefficient means of protecting their interests. This outcome is to be avoided – hence the provision for a Committee's professional fees under Sections 330 and 331. Unsecured creditors' committees provide a valuable "watchdog" function in bankruptcy proceedings. Official Comm. of Unsecured Creditors v. Belgravia Paper Co. (In re Great Northern Paper, Inc., 299 B.R. 1, 5-6 (D. Me. 2003); see also Official Comm. of Unsecured Creditors of Western Pac. Airlines v. Western Pac. Airlines (In re Western Pac. Airlines), 219 B.R. 575, 578 (D. Colo. 1998) (unsecured creditors' committees serve a supervisory role as bankruptcy "watchdog" and enjoy unique rights and responsibilities). "Given its duties and responsibilities, a creditors' committee needs competent and effective representation." In re Subpoenas Duces Tecum, 978 F.2d 1159, 1161 (9th Cir. 1992).

## VI.    CONCLUSION

The Rancourt decision places the crucial nature of a cash collateral motion in perspective. Even if viewed as a request to restrict usage of postpetition rents, instead of a demand that the rents be turned over, the Lender's ability to control use of rents would "arguably totally change the dynamics of negotiation with regard to the target of a consensual plan of organization . . . ." Rancourt, 123 B.R. at 151. The cash collateral motion was determined at the beginning of this case - it "really has to do with only the first month or two or the reorganization proceedings, and then only in terms of procedural and negotiating advantages sought by the respective parties." Id. at 152. "A heavy thumb laid upon the debtor and its professionals at the outset of the case" does not provide the flexibility and breathing room from creditors' demands that are goals of the

Code. Id. at 153 n. 11 (rejecting secured lender's argument that debtor could not use collateral for professional services necessary for reorganization effort). If the Debtors are not permitted to use cash collateral to pay administrative expenses here, it would mean that the Lender, an undersecured creditor with a lien on rents, could prevent the reorganization of the Debtors before a plan is even proposed, even when the value of the collateral securing the debt is stable or increasing. That result is not required by any applicable law and contrary to the rules governing the protection of collateral and the use of cash in chapter 11 proceedings.

WHEREFORE, the Official Committee of Unsecured Creditors respectfully requests that the Court affirm the Bankruptcy Court's decision allowing the Debtors' use of cash collateral.

Respectfully submitted,

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By its attorneys,

**BROWN RUDNICK BERLACK ISRAELS LLP**

By: _/s/ Amanda Buck Varella_
William R. Baldiga (BBO#542125)
Margaret M. Pinkham (BBO#561920)
Amanda Buck Varella (BBO#641736)
John C. Elstad (BBO#654469)
One Financial Center
Boston, MA 02111
Tel. No.:(617) 856-8200

DATED: August 6, 2004

## CERTIFICATE OF SERVICE

I, Amanda Buck Varella, hereby certify that I have this 6th day of August, 2004 served a copy of the Brief of Official Committee of Unsecured Creditors upon all counsel of record by hand delivering a copy to:

**Counsel to Fort Hill Square Associates and Fort Hill Square Phase 2 Associates**

Charles R. Bennett, Jr., Esq.
Kathleen E. Cross, Esq.
Christopher M. Morrison, Esq.
Hanify & King
Professional Corporation
One Beacon Street
Boston, MA 02108

**Counsel to the IP Company, L.L.C.**

R. Robert Popeo, Esq.
Richard E. Mikels, Esq.
Michael S. Gardener, Esq.
Kevin J. Walsh, Esq.
Daniel S. Bleck, Esq.
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY & POPEO, PC
One Financial Center
Boston, MA 02111

**Counsel to the IP Company, L.L.C.**

c/o Charles R. Dougherty, Esq.
Epstein, Becker & Green, P.C.
111 Huntington Avenue
Boston, Massachusetts 02199

**Office Of The U.S. Trustee**

Thomas P. O'Neill, FOB
10 Causeway Street
Boston, Massachusetts 02222

/s/ Amanda Buck Varella
Amanda Buck Varella

#1290180 v\4 - pinkhamm - rn$c04!.doc - 24456/11

-13-