creditor or sequestered for disposition at confirmation.[19] (Appellant's Initial Brief at 13). Of these, six are plan confirmation cases and two having nothing to do with adequate protection. Of the remaining two, *In re Cason*, which is cited above, favors valuation for adequate protection purposes at the time adequate protection is sought. 190 B.R. at 931. Here, while no motion has been filed, IP Company has certainly raised adequate protection as its objection to allowing the Debtor to use cash collateral. Thus, the valuation will fall at or near the Petition Date even applying the *Cason* standard. Finally, *In re Flagler-at-First Assocs., Ltd.*, 114 B.R. 297, 304 (Bankr. S.D. Fla. 1990), which does support IP Company's theory that § 552(b) requires incoming, postpetition *net* rents be adequately protected or turned over, has received significant negative treatment in subsequent case law. *E.g., In re Oaks Partners, Ltd.*, 135 B.R. 440, 451 (Bankr. N.D. Ga. 1991) ("Finally, while the courts have politely discussed *Flagler* and have attempted to distinguish it, it is difficult to understand or apply and it has not been generally followed."), citing, *inter alia Confederation Life Ins. Co. v. Beau Rivage Ltd.*, 126 B.R. 632, 639 & n.11 (N.D.Ga.1991). *See also In re Kilian*, 169 B.R. 503, 504-05 (Bankr. D.R.I. 1994) (expressly declining to adopt the *Flagler* approach); *In re Reddington/Sunarrow Ltd. P'ship*, 119 B.R. 809, 813 (Bankr.D.N.M.1990). As this Court fully recognized in *Beal Bank*, the treatment of net rents at confirmation presents a question of allocation of those rents to either the secured or unsecured portion of a creditor's claim, not whether a creditor's cash collateral is adequately protected. *Beal Bank*, 248 B.R. at 684 ("The Rents: To Add or Subtract? – That is the question . . . The

---

[19] This Court recognized no such majority rule in *Beal Bank*, which postdates the cases cited by IP Company, when it noted, "[t]here is also considerable disagreement concerning the appropriate time to value a creditor's security." 248 B.R. at 685 n. 13.

34

dispute here centers on the bankruptcy court's decision to subtract the amount of the post-petition net rents from the value of the secured claim, rather that add it"). Thus, at the confirmation stage of a bankruptcy proceeding, treatment of accumulated postpetition net rents implicates an allocation pursuant to §506 and its "interplay" with §552(b), *Id.* at 685, whereas here the Court must determine the interplay among §§361-363 (adequate protection) and §552(b) pursuant to a motion that was actually filed on the Petition Date.

IP Company's insistence on using confirmation cases to support an argument for adequate protection of cash collateral ignores the practical and statutory distinctions between adequate protection and plan confirmation and certainly supplies no majority rule for any proposition governing adequate protection. *See In re Landing Associates, Ltd.*, 122 B.R. at 292-293 (where the debtor argued that the petition date value of a creditor's secured claim (including cash collateral) should be used *at confirmation*, the court disagreed stating, "[i]t might well be appropriate to value property as of the filing date in order to evaluate whether a creditor's interest has been adequately protected . . . When the valuation is for purposes of plan confirmation, however, value must be determined as of *that* date" (emphasis in original)). Allocation of net rents to IP Company's secured claim at confirmation is plainly a question for another day.

### 6. IP Company's Cash Collateral Continues to be Adequately Protected, Thereby Allowing the Debtors to Pay *All* Authorized Administrative Expenses.

Once a court determines that cash collateral is adequately protected, as Judge Feeney did here, the use of Cash Collateral over and above such value is available to the Debtors for the administration of the estates. 11 U.S.C. § 363(e). However, after a convoluted analysis, IP Company concludes, "in the absence of adequate protection, a secured creditor cannot be

required, directly or indirectly, to pay for the debtor's professionals during the Chapter 11 proceeding." (Appellant's Initial Brief at 26). While perhaps true in some other circumstance, as applied to Debtors' motion to use cash collateral, this statement demonstrates a fundamental misunderstanding of adequate protection.

First, for the reasons herein stated, IP Company *is* adequately protected. Second, IP Company is not being asked to pay for anything. Rather, its cash collateral is being used pending the generation of additional cash collateral. Third, IP Company's statement implies that the fees paid to Estate Professionals are singled out by the Code for separate treatment and scrutiny. This is not the case. While strategically, IP Company may have targeted Estate Professional Fees as a means of hamstringing the bankruptcy proceeding, the Code treats them as any other administrative expense.[20] Sections 503(b) and (b)(1)(A), which govern administrative expenses of the estate, provide, "after notice and a hearing, there shall be allowed, administrative expenses. . . including – the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." Despite that IP Company apparently finds the Estate Professionals Fees particularly problematic, the Code treats them as routine, expected, and deserving of the same treatment of all other postpetition expenses. Rather than a unique imposition particular to this case, using cash collateral to pay administrative expenses is a well established practice for *any* debtor when the cash collateral is adequately protected. *Addison Properties*, 185 B.R. 766, 769 (Bankr. N.D. Ill. 1995) (collecting cases).

---

[20] Notably, while targeting $800,000 in Estate Professionals Fees, IP Company has consented to or waived over $11 million in other administrative expenses for the Budget Period.

36

### 7. IP Company's Argument that the Collateral is Declining is a Red Herring.

Attempting to confuse the issue on appeal, IP Company goes to great lengths to argue that Judge Feeney's finding that the properties are not declining in value was error, although ultimately and correctly it concludes that its position is irrelevant. IP Company's claim is further flawed because: (1) it is black letter law that the burden of demonstrating that the collateral *is* declining in value rests with IP Company, and (2) IP Company did not raise this argument before Judge Feeney, and cannot, therefore, raise it now.

The Debtors bear no responsibility for proving the collateral is not declining in value unless and until IP Company raises the issue. *E.g., Zink v. Vanmiddlesworth*, 300 B.R. 394, 402 (N.D.N.Y. 2003) "the initial burden is typically on the creditor to show that adequate protection is necessary because of the likelihood that the value of the collateral is declining"); *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 870-71 (Bankr .D.Colo. 2001); *In re Wrecclesham Grange*, 221 B.R. at 980-81; *see also In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir.1990) (initial burden to show cause to lift stay is on movant; if movant fails to make such showing, the court should deny relief without requiring nonmovant to adduce proof that stay should not be lifted).

More important, however, is that IP has clearly waived this argument. *See Beal Bank*, 248 B.R. at 682 ("Issues not raised in previous proceedings can not be raised for the first time on appeal."). IP Company did not suggest in any pleading before Judge Feeney that the value of its collateral is declining. More to the point, at the May 28 Hearing, the Court, Debtors' counsel, and counsel for the Committee mentioned no fewer than four times that the parties agreed the value of the collateral *is not* declining:

37

>MR. MURPHY (for the Debtors):  ...I cannot and I do not believe there is any allegation in the opposition that the value of International Place is declining; and, indeed, Your Honor, it would be impossible to make that allegation, given the creation of value that we have provided for these estates since the cases's inceptions.

(IP App., Tab N, May 28 Hearing, 4:23 – 4:2);

>MR. BALDIGA (for the Committee):  ... And I think in that instance, despite the great volume of paper that we enjoy to read, it doesn't seem to be any serious contest on that issue. The building is at least stable, as long as my clients keep providing their services and have assurance of payments....

(IP App., Tab N, May 28 Hearing, 20:3-5);

>THE COURT:  It seems to me that both parties agree that evidence is not necessary on the limited issues before the Court today with respect to the particular categories of expense that are re –are requested to be approved pursuant to the budget.

(IP App., Tab N, May 28 Hearing, 48:3-6);

>MR. BENNETT (for the Debtors):  ... Nobody contests or nobody challenges that the building is – is going to decline; everybody agrees it's going to be at least the same value, if not increasing in value.
>
>THE COURT: You mean isn't going to decline.
>
>MR. BENNETT:  Is not going to decline. It's going to stay where it is or increase.

(IP App., Tab N, May 28 Hearing, 58:17-22).

At no point during the May 28 Hearing or otherwise did any of the five attorneys appearing on IP Company's behalf question the foregoing assertions respecting the collateral's stability. Accordingly, IP Company waived its claim that Judge Feeney's finding with respect to adequate protection was error. *See, e.g., Beal Bank*, 248 B.R. at 682 ("By failing to squarely raise the effective date argument at the confirmation hearing, Beal waived the right to raise it on appeal.") and 690 ("Whether WELP satisfied its

38

burden is an issue that need not be decided because Beal failed to challenge WELP's assertion ... and never raised an issue as to WELP's failure to put on evidence of a liquidation analysis."); *see also In re LaRoche*, 969 F.2d 1299, 1305 (1st Cir. 1992).[21]

## CONCLUSION

For the aforementioned reasons, the decision of the United States Bankruptcy Court for the District of Massachusetts (Feeney, J.), dated June 3, 2004, should be affirmed.

    Respectfully Submitted,

    FORT HILL SQUARE ASSOCIATES and
    FORT HILL SQUARE PHASE 2
    ASSOCIATES,

    By: their proposed counsel,

    */s/ Kathleen Cross*
    Charles R. Bennett, Jr., BBO #037380
    Harold B. Murphy, BBO #362610
    Kathleen E. Cross, BBO #556934
    Christopher M. Morrison, BBO #651335

    HANIFY & KING
    Professional Corporation
    One Beacon Street
    Boston, MA 02108
    Tel: (617) 423-0400
    Fax: (617) 556-8985

Dated: August 6, 2004

---

[21] In its brief, IP Company claims it raised only legal issues, subject to *de novo* review. (*See* Appellant's Initial Brief at 4). Notwithstanding this claim, IP Company asserts a lack of evidence as to the stability of the collateral. Unquestionably, this is a factual finding, reviewable only for clear error. *In re Winthrop Old Farm Nurseries*, 50 F.3d at 73. Because IP Company utterly fails to point to any evidence to the contrary, Judge Feeney's factual finding must stand.

39

## CERTIFICATE OF SERVICE

I, Kathleen E. Cross, hereby certify that on August 6, 2004, I caused a copy of the Brief Of Appellees Fort Hill Square Associates And Fort Hill Square Phase 2 Associates to be served by hand on the following parties:

| Counsel to the IP Company, L.L.C. | Counsel to the Creditors' Committee |
|---|---|
| R. Robert Popeo, Esq. (BBO #403360)<br>Richard E. Mikels, Esq. (BBO #345620)<br>Michael S. Gardener, Esq. (BBO #185040)<br>Kevin J. Walsh, Esq. (BBO #629984)<br>Daniel S. Bleck, Esq. (BBO #560328)<br>Mintz, Levin, Cohn, Ferris,<br> Glovsky & Popeo, PC<br>One Financial Center<br>Boston, MA  02111<br><br>w/copy of Record Additions | c/o William R. Baldiga, Esq.<br>John C. Elstad, Esq.<br>Brown, Rudnick, Berlack, Israels, LLP<br>One Financial Center<br>Boston, Massachusetts  02111<br><br>w/o copy of Record Additions |
| **Counsel to the IP Company, L.L.C.** | **Office Of The U.S. Trustee** |
| c/o Charles R. Dougherty, Esq.<br>Epstein, Becker & Green, P.C.<br>111 Huntington Avenue<br>Boston, Massachusetts  02199<br><br>w/o copy of Record Additions | Thomas P. O'Neill, FOB<br>10 Causeway Street<br>Boston, Massachusetts  02222<br><br>w/o copy of Record Additions |

      Any interested party who did not receive copies of Brief Of Appellees Fort Hill Square Associates And Fort Hill Square Phase 2 Associates may receive same on request.

      Respectfully submitted

FORT HILL SQUARE ASSOCIATES and
FORT HILL SQUARE PHASE 2
ASSOCIATES,

*/s/ Kathleen Cross*

Charles R. Bennett, Jr., BBO #037380
Harold B. Murphy, BBO #362610
Kathleen E. Cross, BBO #556934
Christopher M. Morrison, BBO #651335

HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108
Tel: (617) 423-0400
Fax: (617) 556-8985

Dated: August 6, 2004

*410053*