# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

## Civil Action No. 04-11473-PBS

## Bankruptcy Case Nos.
## 04-13855 and 04-13857-CJK
## (Jointly Administered)

## FORT HILL SQUARE ASSOCIATES and
## FORT HILL SQUARE PHASE 2 ASSOCIATES,
Debtors.

## I.P. COMPANY L.L.C.
Appellant,

v.

## FORT HILL SQUARE ASSOCIATES and
## FORT HILL SQUARE PHASE 2 ASSOCIATES
Appellees.

## APPELLANT'S INITIAL BRIEF

Submitted by:

R. Robert Popeo, Esq.
Richard E. Mikels, Esq.
Michael S. Gardener, Esq.
Kevin J. Walsh, Esq.
Daniel S. Bleck, Esq.
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Fax: (617) 542-2241

**TABLE OF CONTENTS**

Page

STATEMENT OF APPELLATE JURISDICTION ........................................................................2

STATEMENT OF ISSUES ON APPEAL ................................................................................3

STANDARDS OF APPELLATE REVIEW ..............................................................................4

STATEMENT OF THE CASE ..............................................................................................5

STATEMENT OF THE FACTS ............................................................................................8

ARGUMENT ....................................................................................................................10

I.    THE BANKRUPTCY COURT ERRED IN FINDING THAT THERE WAS
      ADEQUATE PROTECTION FOR THE DEBTORS' PROPOSED USE OF IP
      COMPANY'S CASH COLLATERAL ..........................................................................10

      A.    It Is Undisputed That A Secured Lender's Cash Collateral May Not
            Be Used To Pay Administrative Expenses In The Absence Of Adequate
            Protection For Such Use Of The Collateral ......................................................10

      B.    IP Company Is Entitled To Adequate Protection For Any Use By The Debtors
            Of The Rents Received From The Property ......................................................11

      C.    The Bankruptcy Court's Holding That There Is Adequate Protection For Use of
            the Collateral to Pay The Debtors' Professional Fee Is Wrong As A Matter Of
            Law ...............................................................................................................12

            1.    The majority of courts reject the Bankruptcy Court's holding. .................12

            2.    The Bankruptcy Court's Order ignored tha mandate of Sections 552(b)
                  and 363(e). ..........................................................................................14

            3.    The Cash Collateral Order is based on the discredited Mullen decision
                  and would render this Court's ruling in Beal meaningless. ......................17

      D.    The Finding Of Fact That Adequate Protection Is Not Required
            Because The Real Property Is Not Declining In Value Is Unsupported
            By The Record And Is Irrelevant in Any Event ................................................21

II.   THE BANKRUPTCY COURT ERRED BY FAILING TO PROVIDE ADDITIONAL
      REMEDIES FOR THE ADEQUATE PROTECTION OF IP COMPANY'S SECURITY
      INTEREST ..............................................................................................................23

      A.    Payment Of Net Rents ...................................................................................24

      B.    Reporting ......................................................................................................24

III.  BECAUSE IP COMPANY'S SECURED INTEREST IS NOT ADEQUATELY
      PROTECTED, DEBTORS CANNOT USE IP COMPANY'S CASH COLLATERAL
      TO PAY THE ADMINISTRATIVE COSTS OF THE CASE ..........................................25

CONCLUSION ..................................................................................................................27

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship, 248 B.R. 668
(D. Mass. 2000) ............................................................................ 12, 17-19, 23, 24

Dewsnup v. Timm, 502 U.S. 410 (1992) ..........................................................................23

First Software Corp. v. Micro Education Corp., 103 B.R. 359 (D. Mass. 1988) ...............4

General Electrical Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodserv. Corp.)
739 F.2d 73 (2d Cir. 1984)......................................................................................20, 27

Gold Coast Asset Acquisition L.P. v. 1441 Veteran Street Co. (In re 1441 Veteran Street
Co.), 144 F.3d 1288, reh'g denied, 154 F.3rd 1103 (9th Cir. 1998), cert. denied, 525
U.S. 1142, 119 S. Ct. 1035 (1999) ...............................................................................13

Goldsby v. Stewart, 46 B.R. 692 (S.D. Ala. 1983) ............................................................4

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 120 S. Ct. 1942 (2000) ..19

In re Addison Props., L.P., 185 B.R. 766 (Bankr. N.D. Ill. 1995) ...............................19, 20

In re Arden Props., Inc., 248 B.R. 164 (Bankr. D. Ariz. 2000) ........................................13

In re Berens, 41 B.R. 524 (Bankr. D. Minn. 1984)............................................................16

In re CG Chartier Constr., 126 B.R. 956 (E.D. La. 1991) .................................................12

In re Cafeteria Operators, 299 B.R. 400 (Bankr. N.D. Tex. 2003) ...................................16

In re Cason, 190 B.R. 917 (N.D. Ala. 1995) .....................................................................13

In re Columbia Office Assocs. Ltd. P'ship, 175 B.R. 199 (Bankr. D. Md. 1994) ............13

In re Emmer Bros. Co., 52 B.R. 385(D. Minn. 1985) .........................................................4

In re Federal Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship, 153 B.R.
204 (N.D. Ill. 1993) ......................................................................................................12

In re Flagler-at-First Assocs., Ltd., 114 B.R. 297 (Bankr. S.D. Fla. 1990) ......................13

In re Gaites, 466 F.Supp. 248 (M.D. Ga. 1979)................................................................22

In re Kennedy, 177 B.R. 967 (Bankr. S.D. Ala. 1995) ......................................................13

In re McCann, 140 B.R. 926 (Bankr. D. Mass. 1992) ........................................................25

In re Mount Pleasant Ltd. P'ship, 144 B.R. 727 (Bankr. W.D. Mich. 1992) .....................12

In re Mullen, 172 B.R. 473 (Bankr. D. Mass.1994) ...............................................7, 17, 18

In re National/Northway Ltd. P'ship, No. 02-41188-JBR, 2002 WL 32397224
        (Bankr. D. Mass. 2002) ...........................................................................................26

In re Panama-Williams Corp., 235 F.Supp. 729 (S.D. Tex. 1964) ....................................22

In re Parque Forestal, Inc., 949 F.2d 504 (1st Cir. 1991) ..................................................25

In re 680 Fifth Ave. Assocs., 154 B.R. 38, 43 (Bankr. S.D.N.Y. 1993) ............................25

In re Stanley, 185 B.R. 417 (Bankr. D. Conn. 1995) .........................................................13

In re Star Trust, 237 B.R. 827 (Bankr. M.D. Fla 1999).....................................................13

In re Union Meeting Partners, 178 B.R. 664 (Bankr. E.D. Pa. 1995) ..........................13, 24

In re Waste Conversion Techs., Inc., 205 B.R. 1004 (D. Conn. 1997) ...............................2

In re Westwood Plaza Apartments, 154 B.R. 916 (Bankr. E.D. Tex. 1993) ....................26

In re Willowood East Apartments of Indianapolis II, Ltd., 114 B.R. 138 (Bankr. S.D.
        Ohio 1990) ...............................................................................................................26

In re Wrecclesham Grange, Inc., 221 B.R. 1978 (Bankr. M.D. Fla. 1977) ......................17

Lamie v. U.S. Trustee, 124 S. Ct. 1023 (2004) ..................................................................19

Liberty National Enterprises v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa
        Ltd. P'ship), 115 F.3d 650, cert. denied, 522 U.S. 110, 118 S. Ct. 1039 (1998) ..13, 24

Prudential Ins. Co. of America v. Boston Harbor Marina Co., 159 B.R. 616 (D. Mass
        1993) ..........................................................................................................................2

Ranch Partners, Ltd. v. Resolution Trust Corp. (In re Ranch Partners, Ltd.), 146 B.R. 833
        (D. Colo. 1992) .........................................................................................................26

Shadduck v. Rodolakis, 221 B.R. 573 (D. Mass. 1998) ....................................................22

U.S. v. Barden Fin. Corp., 164 B.R. 260 (E.D. La. 1994) ...................................................2

U.S. v. Ron Pair Enters., Inc., 109 S. Ct. 1026 (1989) ......................................................19

## FEDERAL STATUTES

11 U.S.C. § 361(2) ................................................................................6, 14, 15, 17

11 U.S.C. § 363(a) ...........................................................................................11

11 U.S.C. § 363(c)(2) .............................................................................10, 11, 19

11 U.S.C. § 363(e) ................................................................... 11, 13-15, 19, 26

11 U.S.C. § 506(c) .................................................................14, 15, 18, 25, 26

11 U.S.C. §552(b) ................................................................................14, 19, 25, 26

11 U.S.C. § 552(b)(2) ..............................................................  3, 6, 11-19, 23

11 U.S.C. § 1107(2) ..........................................................................................10

28 U.S.C. §§ 158(a) ...........................................................................................2

## OTHER AUTHORITIES

Neal Batson, Selected Issues In Single-Asset Real Estate Cases, 6 J. Bankr. L. & Prac. 3
    (1996) .............................................................................................................26

Sally S. Neely et al., Postpetition Rents and the Claims of Undersecured Creditors With
    Assignment of Rents in Chapter 11 Cases, SD 24 ALI-ABA (1998)...........................12

Sally S. Neely et al., Postpetition Rents and the Claims of Undersecured Creditors
    With Assignment of Rents in Chapter 11 Cases,
    108 ALI-ABA 221 (2002) ........................................................ 13, 17, 20, 24

David E. Peterson et al., Bankruptcy Valuation of a Claim Secured by a Mortgage on
    Realty and an Assignment of Rents, 101 Com. L.J. 263, 284 (1996) ...................... 18

Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 361.03[2][a] (15th ed.
    rev. 2004) ......................................................................................................17

## INTRODUCTION

This appeal is taken by IP Company, the sole secured creditor of the Debtors, Fort Hill Square Associates and Fort Hill Square Phase 2 Associates, the owners of the Boston office towers known as One and Two International Place. The Bankruptcy Court erred in entering an order in this single asset bankruptcy proceeding permitting the Debtors to use the rents from the buildings without providing, as required by law, adequate protection for IP Company's statutorily mandated security interest in those rents.

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(a).  See, e.g.,

Prudential Ins. Co. of America v. Boston Harbor Marina Co., 159 B.R. 616 (D. Mass 1993)

(district court exercises appellate jurisdiction over order of bankruptcy court authorizing use of

cash collateral); In re Waste Conversion Techs., Inc., 205 B.R. 1004, 1006 (D. Conn. 1997)

(same); U.S. v. Barden Fin. Corp., 164 B.R. 260 (E.D. La. 1994) (same).

## STATEMENT OF ISSUES ON APPEAL

1.  Did the Bankruptcy Court err in finding that IP Company's interest in property of the Debtors consisting of cash collateral is adequately protected by the granting of "replacement liens" in future rents that were and are subject to IP Company's liens and security interests under section 552(b)(2) of the Bankruptcy Code, 11 U.S.C. §552(b)?

2.  Did the Bankruptcy Court commit a plain error of law in ruling that "a lien on each month's rents replaces the lien on the prior month's rents" where IP Company's interest in the rents comprises all future rents as recognized under section 552(b)(2) of the Bankruptcy Code, 11 U.S.C. §552(b)?

3.  Did the Bankruptcy Court err in not requiring the Debtors to turn over or sequester the rents net of items in the proposed budget that had been consented to by IP Company, as requested by IP Company in its objection to the Debtors' use of cash collateral?

4.  Did the Bankruptcy Court err in not directing the Debtors to furnish IP Company with reports reconciling on a line by line basis actual to budgeted expenses and revenues, including a line by line variance report, as requested by IP Company in its objection to the Debtors' use of cash collateral?

5.  Based upon the record, did the Bankruptcy Court err in finding that the present value of IP Company's security interest in the cash collateral consisting of rent receipts and future rents is not declining?

6.  Based upon the record, did the Bankruptcy Court err in finding that the value of the real property is not declining?

7.  Based upon the record, did the Bankruptcy Court err in finding that IP Company's interest in the cash collateral is not eroding as a result of the Debtors' use of such cash collateral to pay non-consensual administrative expenses of the chapter 11 cases?

8.  Did the Bankruptcy Court err in finding that IP Company's interests are adequately protected?

## STANDARD OF APPELLATE REVIEW

The issues presented in this appeal are limited to issues of law.  Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure, and the cases decided thereunder, district courts are to review the bankruptcy court's conclusions of law de novo.  See, e.g.,  First Software Corp. v. Micro Education Corp., 103 B.R. 359, 360 (D. Mass. 1988) (citing In re Pizza of Hawaii, Inc., 40 B.R. 1014, 1015 (D. Hawaii), aff'd, 761 F.2d 1374 (9th Cir. 1985); Goldsby v. Stewart, 46 B.R. 692, 693 (S.D. Ala. 1983); In re Emmer Bros. Co., 52 B.R. 385, 390 (D. Minn. 1985)). Accordingly, the matters under consideration pursuant to this appeal must be reviewed de novo.

## STATEMENT OF THE CASE

This appeal is taken from a final order entered in the United States Bankruptcy Court for the District of Massachusetts (Feeney, J.) (the "Bankruptcy Court") on May 28, 2004, as amended on June 3, 2004 (the "Cash Collateral Order"). The Cash Collateral Order was entered following a contested hearing between Fort Hill Square Associates and Fort Hill Square Phase 2 Associates (collectively, the "Debtors"), the owners of the International Place office towers, and IP Company, L.L.C. ("IP Company), the sole secured creditor of the Debtors. The hearing concerned the use by the Debtors of IP Company's cash collateral for the thirteen-week period covered by the budget submitted by the Debtors, and whether the statutorily-required adequate protection existed for the use of such collateral.

The Debtors commenced these bankruptcy cases by filing voluntary petitions on May 7, 2004 (the "Petition Date") (See Appellant's Appendix ("App."), Tab A at 2). As one of their so-called "first day" pleadings filed at the beginning of the cases, the Debtors filed a "Motion for Authorization of (1) the Interim and Permanent Use of Cash Collateral, (2) the Granting of Replacement Liens, (3) Entry of Scheduling Order Regarding Continued Use of Cash Collateral and (4) Additional Relief" (the "Cash Collateral Motion"). (See App., Tab A). The Debtors requested the Bankruptcy Court to determine the Cash Collateral Motion on an emergency basis. IP Company objected to the request for emergency consideration on the basis that the "emergency" was entirely self-created by the Debtors. IP Company had approached the Debtors to attempt to work out an agreement on the use of cash collateral, to which overtures Debtors chose not to respond at all (See App., Tab N at 22).

On May 10, 2004, IP Company filed a further objection to the Cash Collateral Motion. That objection stated, inter alia, that (i) use of rents by the Debtors should be limited to the

amounts necessary for operation and maintenance of the International Place towers; (ii) rents and other cash collateral on hand in excess of the funds required for the operation and maintenance of the buildings should be segregated, accounted for and turned over to IP Company; and (iii) the Debtors should not be permitted to use cash collateral to pay the general costs of administering their bankruptcy proceedings, such as the cost of professional fees (See App., Tab C).

Notwithstanding IP Company's objection, the Bankruptcy Court permitted the Debtors to use cash collateral on an interim basis, until May 28, 2004, subject to the budget attached to the Cash Collateral Motion (See App., Tab D). The Bankruptcy Court purported to grant IP Company "adequate protection" for such interim use of its cash collateral in the form of a "replacement lien" on the same collateral already securing IP Company's claim (i.e., the rents received from the property) (See App., Tab E at 3).

On May 26, 2004, IP Company filed an objection to the entry of a final order authorizing the use of cash collateral. (See App., Tab F). In addition to the objections stated in its original objection, IP Company noted that (i) it is entitled as a matter of law to adequate protection for the use by the Debtors of cash collateral; (ii) because, by operation of Section 552(b)(2) of the Bankruptcy Code, all rents generated postpetition are already subject to IP Company's existing lien, a "replacement lien" in postpetition rents as a matter of law would not provide adequate protection to IP Company for the use of its cash collateral, as it was not the additional or replacement collateral required by § 361(2) of the Bankruptcy Code; (iii) at the same time that Debtors are not making any debt service payments to IP Company and, to the contrary, are proposing to use up its cash collateral in litigating against IP Company, one of the Debtor's equity holders is paying itself a management fee, which IP Company asserted to be at above-

market rates[1], from that collateral; (iv) Debtors have failed to provide the reports and other information required by the Notes and the Mortgage, so that IP Company has no means of verifying the proposed use of its cash collateral; and (v) except for certain limited circumstances not applicable here, as a matter of law a debtor in a Chapter 11 proceeding is not entitled to have its professional fees funded by the secured creditor. (See id.)

The Debtors submitted a reply memorandum of law in support of their Cash Collateral Motion, which, in essence, urged the Bankruptcy Court to adopt the view espoused in In re Mullen, 172 B.R. 473 (Bankr. D. Mass.1994). In particular, the Debtors argued that (i) IP Company is not entitled to a separate determination of adequate protection for its real estate collateral and its cash collateral; and (ii) as long as IP Company receives a "replacement lien" on rents as they are collected, its interest in the rents is "adequately protected."

On May 28, 2004, after a hearing, the Bankruptcy Court entered an order allowing the Debtors to use cash collateral for all of the purposes set forth in the budget, including professional fees in litigating against IP Company, and finding that IP Company's interest in the cash collateral was adequately protected on the grounds that the rents and the realty were not declining in value, and as each month's rents were used, IP Company would receive a replacement lien on the next month's rents. (See App., Tab H). Subsequently, the Bankruptcy Court made certain amendments to its order (See App., Tab J). IP Company timely appealed from these orders.

---

[1]    The Bankruptcy Court reserved decision on the question of whether management fees exceeded market rates (see App., Tab J at 5 n.4). accordingly, the fact that IP Company has not challenged here the Bankruptcy Court's failure to conclude that Debtors are paying above-market management fees to certain equity holders shall not constitute a waiver of IP Company's right to challenge such management fees in other proceedings in this case.

## STATEMENT OF THE FACTS

### The Property and the Amount Owed

The Debtors, each a Massachusetts general partnership, own property known as One and Two International Place located in Boston, Massachusetts (the "Property") (See App., Tab F at 5-6). The Debtors have no operations or employees; rather, they are merely entities created to hold bare legal title to the Property. (See App. Tab F at 17-18). In 1993, the Debtors entered into two promissory notes (the "Notes"), a mortgage agreement (the "Mortgage") granting a first priority mortgage against the Property, and an assignment of all rents generated from the Property (the "Assignment of Rents") in favor of the Teachers Insurance and Annuity Association of America ("Teachers") (See App., Tab F at 6-7). As of the Petition Date, the aggregate outstanding base principal and interest owed under the Notes is not less than $650,830,820, plus additional amounts due for Contingent Interest and the Acceleration Premium,[2] both as defined in the Notes (See App., Tab F at 6-7).

### The Notes and the Collateral Supporting the Obligations Thereunder

IP Company purchased the Notes and the related loan documents evidencing the obligations owed by the Debtors thereunder, pursuant to an auction at which Teachers offered to sell the Notes and related loan documents (collectively, the "Loan Documents") (See App., Tab F at 6). The sale of the Notes closed in early April 2004 (See App., Tab F at 6).

As collateral for the obligations due under the Notes, the Debtors, *inter alia*, (i) granted a valid and perfected first priority mortgage against the Property, and (ii) entered into an assignment of leases and rents, pursuant to which the Debtors assigned, *inter alia*, all current and

---

[2]     The Acceleration Premium consists of two (2) components. The first component is an accrued amount owing as of the Petition Date in the sum of $616,861,659. This number is the amount necessary to maintain the benefit of the parties' bargain – an 11% internal rate of return. The second component represents an additional unliquidated amount.

future tenant leases on the Property and the rents derived therefrom. (See App., Tab F at 7-8). As additional collateral, IP Company obtained rights in certain escrow accounts established in connection with the Property (See id.).

### The Value of the Collateral

The appraiser retained by IP Company has valued the real estate at no more than $600 million (See App., Tab F at 8). As of the Petition Date, the Debtors have listed cash on hand in the amount of $7,243,128, as well as funds in the escrow accounts in the amount of $12,469,904 (See id.). The appraisal submitted by IP Company was the only evidence presented to the Court on the issue of valuation. Indeed, in their Schedules of Assets submitted to the Bankruptcy Court, the Debtors again failed to provide any evidence of value for the Property, despite the fact that such information is required to be disclosed. Accordingly, the total value of IP Company's collateral in the real estate and the escrow as of the Petition Date is not more than $619,713,032. Thus, IP Company is substantially undersecured on the indebtedness due to it from the Debtors.

### Bankruptcy

On May 7, 2004, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. This single asset bankruptcy is nothing more than a two-party business dispute between the equity holders of the Debtor entities and the sole secured creditor. The remaining unsecured creditors in these cases are a handful of trade creditors whose claims are entirely manufactured by the Debtors to meet their strategic needs, as there existed more than sufficient cash to pay all of these claims in full prior to these petitions being filed. In contrast to their treatment of the trade debt, prior to commencing this proceeding the Debtors did make certain to pay in full the invoices of the management companies owned by their affiliate. The Debtors also timed their filing just before an interest payment was due to be paid and just as IP

Company was about to commence an audit. Because of the lack of any adequate protection for the use of its collateral, IP Company objected and continues to object to the use of its cash collateral for any purpose other than to preserve and maintain the Property. (See App., Tab B, F).

### The Cash Collateral Motion

The budget submitted by the Debtors in connection with the Cash Collateral Motion indicates that in addition to using the cash collateral to operate the Property, they will spend some $800,000 on costs of administering these bankruptcy cases during just the thirteen-week period covered by the Cash Collateral Motion (See App., Tab A).

### The Appeal

IP Company filed a Notice of Appeal from the Cash Collateral Order on June 7, 2004, together with an Election to Proceed before this Court. (See App., Tab L, M).

### ARGUMENT

I.    **THE BANKRUPTCY COURT ERRED IN FINDING THAT THERE WAS ADEQUATE PROTECTION FOR THE DEBTORS' PROPOSED USE OF IP COMPANY'S CASH COLLATERAL**

A.    **It Is Undisputed That A Secured Lender's Cash Collateral May Not Be Used To Pay Administrative Expenses In The Absence Of Adequate Protection For Such Use Of The Collateral**

The Bankruptcy Code is clear, as the Bankruptcy Court here expressly acknowledged, that cash collateral cannot be used to pay the administrative expenses of the estate unless the interest secured by the collateral is adequately protected. Section 363(c)(2) of the Bankruptcy Code prohibits a debtor from making any use of cash collateral "unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes

such use . . . in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).[3] Section 363(e) of the Bankruptcy Code provides that a bankruptcy "court . . . *shall* prohibit or condition [the] use, sale or lease [of collateral] as is necessary to provide adequate protection of [a secured lender's interest in] such [collateral]." 11 U.S.C. § 363(e) (emphasis supplied). The Bankruptcy Court here succinctly acknowledged this principle in the Cash Collateral Order:

> It is well established that cash collateral may appropriately be used to pay operation expenses and administrative expenses if the interest secured by the cash collateral is adequately protected.

(See App., Tab J at 3) (citations omitted).

## B.    IP Company Is Entitled To Adequate Protection For Any Use By The Debtors Of The Rents Received From The Property

Under the Assignment of Rents signed by the Debtors, IP Company has a valid, perfected first priority lien on all rents received from the Property. This lien is separate and apart from the mortgage lien which IP Company also has on the realty itself. Section 552(b)(2) of the Bankruptcy Code expressly provides that a secured creditor's prepetition lien in rents extends to any postpetition rents generated from the underlying property. 11 U.S.C. § 552(b)(2).[4] The rents subject to this distinct security interest are cash collateral. 11 U.S.C. § 363(a).

It is well settled that IP Company, as the secured lender holding first priority liens on both the real estate and the rents, is entitled to adequate protection for *both* the real property and

---

[3]    Section 363(c)(2) applies to "trustees." 11 U.S.C. Section 1107(2) provides that a debtor-in-possession shall perform its functions and duties in the same way as a trustee.

[4]    Section 552(b)(2) provides in pertinent part:

> if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property ... then such security interest extends to such rents ... acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

the future rents.  See In re Fed. Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship,

153 B.R. 204, 213 (N.D. Ill. 1993); In re CG Chartier Constr., 126 B.R. 956, 960 (E.D. La.

1991); In re Mount Pleasant Ltd P'ship, 144 B.R. 727, 737 (Bankr. W.D. Mich. 1992) (stating

that whether the rents are adequately protected should be determined apart from whether the

underlying property is adequately protected).  The Bankruptcy Court here expressly

acknowledged in the Cash Collateral Order that IP Company has a security interest in the realty

and in rents received after the commencement of the bankruptcy, and that the existence of

adequate protection is to be determined separately for each such interest:

> IP has an enforceable security interest in rents, including postpetition
> rents, see 11 U.S.C. Section 552(b), which are cash collateral, and its interest in
> rents in deserving of adequate protection.  In addition to IP's security interest in
> rents, it has mortgages on the Debtor's real estate, which are separate and distinct
> interests.  (See App., Tab J at 2) (emphasis added).

Accord, Beal Bank, S.S.B. v. Waters Edge Limited P'ship, 248 B.R. 668, 686 (D. Mass. 2000).

### C.    The Bankruptcy Court's Holding That There Is Adequate Protection For Use Of The Collateral To Pay The Debtors' Professional Fees Is Wrong As A Matter Of Law

#### 1.    The majority of courts reject the Bankruptcy Court's holding.

Despite recognizing IP Company's statutorily-mandated security interest in postpetition

rents as a result of § 552(b), the Bankruptcy Court then inexplicably rejected the logical corollary

of that provision's command.  In doing so, the Bankruptcy Court erroneously rejected the

decisions of the majority of courts which have addressed this issue.

In its ruling in Beal, this Court cited extensively to the leading commentary on the

appropriate treatment of postpetition rents, Sally S. Neely et al., Postpetition Rents and the

Claims of Undersecured Creditors With Assignment of Rents in Chapter 11 Cases, SD24 ALI-

ABA (1998).  See Beal, 248 B.R. at 685, 686.  That analysis was updated by the same author

under the same title in 2002. Id., SG 108 ALI-ABA 221 (2002). As is reported in both articles, the majority rule is that:

> rents cannot be used for purposes other than those authorized under [11 U.S.C.] § 552(b) without adequate protection (such as substitute collateral or a more-than-adequate equity cushion). Net rents must either be paid to the secured creditor during the case or sequestered for application at confirmation.

Id., SG 108 ALI-ABA at 236. See, e.g., Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship), 115 F.3d 650, 654 (9th Cir. 1997), cert. denied, 522 U.S. 110, 118 S. Ct. 1039 (1998); In re Arden Props., Inc., 248 B.R. 164, 168-170 (Bankr. D. Ariz. 2000) (stating it is the law in the Ninth Circuit after Ambanc); In re Star Trust, 237 B.R. 827, 837 (Bankr. M.D. Fla 1999) (in context of § 1111(b) election); In re Cason, 190 B.R. 917, 928 (N.D. Ala. 1995); In re Stanley, 185 B.R. 417, 424 (Bankr. D. Conn. 1995); In re Kennedy, 177 B.R. 967, 974 (Bankr. S.D. Ala. 1995); In re Columbia Office Assocs. Ltd. P'ship, 175 B.R. 199, 203 (Bankr. D. Md. 1994); see also Gold Coast Asset Acquisition L.P. v. 1441 Veteran Street Co. (In re 1441 Veteran Street Co.), 144 F.3rd 1288, 1292 (9th Cir. 1998), reh'g denied, 154 F.3rd 1103 (9th Cir. 1998), cert. denied, 525 U.S. 1142, 119 S. Ct. 1035 (1999) (rents generated by debtor's apartment building are collateral of undersecured creditor with assignment of rents and cannot be used to pay debtor in possession's attorney's fees absent compliance with 11 U.S.C. § 506(c)); In re Union Meeting Partners, 178 B.R. 664, 675 (Bankr. E.D. Pa. 1995); In re Flagler-at-First Assocs., Ltd., 114 B.R. 297, 304 (Bankr. S.D. Fla. 1990).

This majority rule, often referred to as the "continuous valuation approach," is adopted by the courts because it is the only approach that is consistent with the clear provisions of the Bankruptcy Code. That is, Section 552(b)(2) provides that secured lenders like IP Company who

have security interests in prepetition rents are to have a security interest "in such rents …

acquired by the estate after the commencement of the case to the extent provided in such security

agreement…." Under its Assignment of Rents, IP Company has a security interest in <u>all</u> rents

received from the Property. Thus, by virtue of the operation of Section 552(b)(2), IP Company

continues to have a security interest in <u>all</u> rents received postpetition. Further, as noted, Section

363(e) mandates that IP Company's security interest in <u>all</u> the postpetition rents must be

protected, so that those rents shall not be used by the Debtors without adequate protection being

provided. As stated in the above-quoted Neely article, and as clearly defined in 11 U.S.C.

§ 361(2), "adequate protection" means the provision of <u>additional</u> or <u>replacement</u> collateral.

Plainly, providing IP Company, an undersecured creditor, a lien in collateral in which IP

Company <u>already possesses a security interest</u> cannot constitute the provision of adequate

protection.

### 2.    The Bankruptcy Court's Order ignored the mandate of Sections 552(b) and 363(e).

Against this backdrop it is apparent why the Bankruptcy Court's Cash Collateral Order is

erroneous as a matter of law. That is, after recognizing that "IP has an enforceable security in

rents, including postpetition rents, see 11 U.S.C. Section 552(b)" (<u>See</u> App., Tab J at 2), the

Bankruptcy Court nevertheless goes on to hold that "IP does not lack adequate protection in the

present value of the future stream of rents because, according to the Debtor's Budgets, the net

rents remain steady and are increasing." (<u>See</u> <u>id.</u> at 3). The Bankruptcy Court further finds that

"even though further adequate protection is not necessary, the Debtors' proposal of a

replacement lien on postpetition rents, so-called 'renewal rents,' adequately protects IP's interest

in rents." (See id.). The Bankruptcy Court finds that because the lien on each month's rents replaces the lien on the prior month's rent, adequate protection exists. (See id.).

By this holding, the Bankruptcy Court in effect ignores the requirements of §§ 361(2) and 363(e), and eviscerates the provisions of § 552(b)(2). That is, nowhere does § 552(b)(2) provide secured creditors with simply a lien in only one month's rent. To the contrary, the statute expressly provides the creditor with an interest in postpetition rents coextensive with the security interest that existed prepetition. Indeed, the very purpose of a security interest is to provide the lender with an interest in collateral sufficient to secure the amount of the loan. That is why IP Company, and its predecessor, made certain to obtain a security interest in all rents received on the Property. For the Court to find that the Debtors are free to use each month's postpetition rents because IP Company will have a security interest in the following month's rents is to deprive IP Company of the security interest postpetition that it had prepetition, *i.e.*, a lien on all rents, and therefore to eviscerate the protections afforded by Section 552(b)(2). The Bankruptcy Court's ruling simply ignores the fact that IP Company's security interest in rents continues indefinitely into the future until its claim is paid in full. Any time the Debtors spend a dollar of net rents, such dollar is removed from the rental stream, and therefore is a dollar that is not available to pay the secured lender's claim, thereby reducing the security value of that rental stream to the secured creditor. Those rents, once spent, are lost to the secured lender forever.

Similarly, the Bankruptcy Court's ruling effectively reads §§ 361(2) and 363(e) of the Bankruptcy Code out of existence. By virtue of section 552(b)(2), IP Company already has a security interest in all postpetition rents. Plainly then, a grant of a "replacement lien" in future postpetition rents cannot constitute adequate protection as a matter of law, since it only provides the lender with a lien it already has; there is no addition or replacement of collateral as the Code

requires. See, e.g., In re Cafeteria Operators, 299 B.R. 400, 410 (Bankr. N.D. Tex. 2003) (debtors' use of cash collateral conditioned by court on grant to creditor of replacement lien in unencumbered property); In re Berens, 41 B.R. 524, 526-27 (Bankr. D. Minn. 1984) (finding adequate protection for use of cash collateral where replacement lien was on formerly unencumbered property). Simply put, once the current month's rents are spent, that cash collateral is forever lost. A lien on the next month's rent does not replace the lost collateral, as IP Company already had a lien against these subsequent rents. Indeed, as each month's rents are spent by the Debtors, the loss of IP Company's collateral is mounting and irreplaceable.

The fact that this view of the law is correct and that the opposing view must be incorrect is demonstrated by a simple example. Assume that at the beginning of a Chapter 11 case, the secured creditor's collateral consists of a building, leases and cash on hand generated from rental payments. Further assume each month after operating costs, the cash on hand generated from postpetition rents equals $100,000. It is a mathematical certainty that at the end of 3 months of Chapter 11 operation the cash on hand (clearly "cash collateral") would have increased $300,000. If the Bankruptcy Court had authorized the Debtors to pay $50,000 per month in legal fees for the Chapter 11, then there is a mathematical certainty that the cash collateral would be diminished by $150,000. Adequate protection under the Bankruptcy Code is designed to protect against such diminishment resulting from the use of collateral. In the example, the diminishment is clear and is precisely the kind of diminishment that the Bankruptcy Code requires adequate protection to avoid. Adequate protection could not be granted by placing a new lien on the building, because the secured party already has the building as collateral particularly where, as her, the creditor is undersecured. Adequate protection could not be granted by conferring a new lien on the rents because, as a result of § 552(b)(2), the secured party already has all rents as

collateral. Therefore, there can be no grant of adequate protection that can protect the secured creditor against diminution of the value of its cash collateral. The collateral has clearly been diminished and the diminishment has clearly arisen from the Debtor's use of that collateral.

### 3.    The Cash Collateral Order is based on the discredited Mullen decision and would render this Court's ruling in Beal meaningless.

The Bankruptcy Court's Cash Collateral Order purports to disavow, but then proceeds to follow the approach taken in In re Mullen, 172 B.R. 473, 476 (Bankr. D. Mass. 1994). In that case, the court held that "[t]he lien on each month's rents replaces the lien on the prior month's rents, so there is a replacement lien of equal value, within the meaning of [11 U.S.C.] Section 361." The Bankruptcy Court here employed the identical reasoning in its Order (See App., Tab J at 2-3).[5] This is surprising, since at the oral argument on the motion the Court itself acknowledged that Mullen was decided prior to the amendment which added the current § 552(b)(2) to the Bankruptcy Code, and the Court further stated that it was "not referring to the Mullen case" and that "I don't think that that case should enter into the -- enter into the equation." (See App., Tab N at 47). It is not surprising that the Bankruptcy Court would have wished to distance itself from Mullen, as that decision has been roundly criticized. See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 361.03[2][a] (15th ed. rev. 2004) (terming the "addition" approach the "better" approach, in part, because "any payment to the creditor of the rents is a transfer of its own collateral"); see also Neely, supra at SG108 ALI-ABA 221, 233-34 (criticizing Mullen because it "relies in part on a misunderstanding of the way in which developers and appraisers value commercial real estate" and "ignores the fact that

---

[5]    While the Court cited not to Mullen but to another case, In re Wrecclesham Grange, Inc., 221 B.R. 1978 (Bankr. M.D. Fla. 1997), for support, this is a distinction without a difference, as the court in that case relied heavily on Mullen.

commercial developments depreciate, meaning that the monthly rental stream is not a constant forever but will diminish due to functional and economic obsolescence"); David E. Peterson et al., Bankruptcy Valuation of a Claim Secured by a Mortgage on Realty and an Assignment of Rents, 101 Com. L.J. 263, 284 (1996) (writing that the primary logic of Mullen is "hard to swallow"). The plain error in the Bankruptcy Court's holding is underscored by the fact that in order to justify its decision, the Court was compelled to fall back upon the discredited reasoning of the very case the Bankruptcy Court sought to avoid.

In Beal, this Court held that a creditor's secured claim would consist not only of the security interest in the building, but also would be added to by the accumulated postpetition rents. 248 B.R. at 686. By doing so, this Court brought itself in line with the majority approach which holds that "the amount of post-petition rents not reinvested into real estate should be added to the size of the creditor's secured claim. . . ." Id. at 685. The Court found that "[t]his position is rooted in the plain language of § 552(b)(2). . . ."

It is respectfully submitted that these rulings by this Court in Beal compel the reversal of the Bankruptcy Court on this appeal. As discussed above, this appeal too "is rooted in the plain language of § 552(b)(2)." The plain words of the statute are rendered meaningless if they are to result in a secured lender simply getting a security interest in at most one month's rents, which is what would result if the Bankruptcy Court's holding were to be upheld. Indeed, the foundation of the holding in Beal is that a lender's secured claim is to receive the benefit of the accumulated postpetition net rents. That foundation would be wholly undermined if, as the Bankruptcy Court's holding would allow, debtors were under no obligation whatsoever to protect that

collateral, and instead were free to spend as much as possible of each month's receipts in order to avoid the very effect of this Court's ruling in Beal.[6/]

The Bankruptcy Court's Cash Collateral Order cites In re Addison Props., L.P., 185 B.R. 766 (Bankr. N.D. Ill. 1995). In that case, the bankruptcy court took an undeniably contradictory approach to the effect of Section 552(b). That is, the court recognized that the rents coming into the estate during the case automatically increased the secured creditor's claim. 185 B.R. at 784. However, the court failed to require adequate protection for the use of such collateral by the debtor prior to confirmation, thereby making the value of such collateral meaningless. This approach is internally inconsistent. A debtor's property is either a creditor's collateral or it is not. Addison held that the postpetition rents are collateral, but completely ignored the requirement of § 363(c)(2) that adequate protection is a prerequisite for the use of such collateral. Rather, Addison allows a debtor to use a creditor's cash collateral without providing any adequate protection; it simply revalues the secured claim at the end of the case, increasing such claim by the amount of accumulated rents, but rendering the "increased" claim meaningless because the debtor is free to spend the rents without providing any additional or replacement lien. Addison thus places a secured creditor at significant risk of loss.

There are two glaring problems with the Addison approach. First, the Addison court cannot reconcile sections 552(b)(2) and 363(3) with the results of the case. In particular, although the court purports to acknowledge the rights of a secured creditor under section 552(b)(2), such rights are ignored in the final analysis. As the hypothetical example cited above

---

[6/]    The fact that § 552(b)(2) of the Bankruptcy Code accords this special status to postpetition rents, thereby distinguishing it from the treatment given to virtually all other forms of collateral received postpetition, is yet a reason why courts should be chary of ignoring the clear mandates of the statutory language. See Lamie v. U.S. Trustee, 124 S. Ct. 1023, 1030 (2004); Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 120 S. Ct. 1942, 1947 (2000); U.S. v. Ron Pair Enters., Inc., 109 S. Ct. 1026, 1030 (1989).

demonstrates, while a secured creditor may have a lien in accumulated postpetition rents of $300,000, if such rents are spent by the debtor prior to confirmation, the secured creditor loses its rights to this cash collateral where no substitute additional collateral has been proffered.

Second, Addison improperly skews the bankruptcy process in favor of the debtor. As Neely noted in her recent article:

> [The Addison approach] provides the debtor with a strong incentive to use net rents for other purposes during the case -- even though they are admittedly part of the secured creditor's collateral. That is because net rents available at confirmation will have to be paid to the secured creditor, but will not be applied to reduce the secured debt below the value of the underlying collateral. If there are no available net rents at confirmation, then (all other things being equal) the creditor's secured claim will still equal the value of the underlying collateral, but no additional monies will have to be paid to the secured creditor.

SG 108 ALI-ABA at 241.

At bottom, Addison is only explainable as a decision designed to achieve a certain result. That is, the decision provided the debtor's counsel an opportunity to obtain a $10,000 retainer in the case. Absent the relief, the case would have been administratively insolvent, as the debtor had no other funds to pay its counsel. Of course, such concerns cannot alter the clear language of the statute. In any event, that is not the case here. The equity owners of the Debtors, which owners are the sole parties who will benefit from the expenditure of the cash collateral to pay professional fees to litigate against IP Company, are in no way insolvent and should appropriately bear the expense of such fees. See, e.g., General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodserve. Corp), 739 F.2d 73, 77 (2nd Cir. 1984).

**D.     The Finding Of Fact That Adequate Protection Is Not Required Because The Real Property Is Not Declining In Value Is Unsupported By The Record And Is Irrelevant In Any Event**

The Cash Collateral Motion sought authority from the Bankruptcy Court to use IP Company's rents. The question of the adequate protection of IP Company's interest in the Debtors' real property was not raised by the Debtors in the Cash Collateral Motion or during the hearings on the Cash Collateral Motion. Accordingly, the only evidence presented on valuation of the Property was the Affidavit of Donald Bouchard, which established that the Debtors' loan is undersecured. (See App., Tab F, Exhibit A). Otherwise, as the Bankruptcy Court correctly notes, "[n]one of the interested parties have argued or submitted evidence that the value of the Debtors' real estate is declining." (See App., Tab J at 2). The Bankruptcy Court then asserts that "at the hearing, the interested parties **acknowledged** that the value of the Debtors' real estate is not declining." (See id.) (emphasis added). This second proposition, however, has no support in the record. The transcript of the May 28 hearing contains several statements by Debtors' counsel, unsupported by any offer of evidence or proof, that the value of the Property is not declining and may even be increasing. (See App., Tab N at 4-5, 7, 58). No other interested party "acknowledged" the truth of the Debtors' counsel's assertions at oral argument.[7] Indeed, the only other reference in the record to the value of the Property was the statement of counsel for IP Company, supported by the Bouchard affidavit, that IP Company's loan is undersecured, with no "acknowledgement" whatsoever that the real property collateral was not declining in value. (See id. at 45). There simply was no agreement, admission or acknowledgement – much less evidence – that the Property was not declining in value.

---

[7]     As noted infra at 23, the matter is irrelevant in any event, and therefore did not warrant comment.

Having posited an illusory "acknowledgement" of the Debtors' naked assertions at oral argument, the Cash Collateral Order treats the absence of diminishing value as an established fact, despite the failure of the Debtor, who bore the burden of proof, to offer **any** evidence on the question of valuation.  The Bankruptcy Court then repeatedly premises its conclusions of law on the counterfactual finding that the Property was not declining in value:

- Adequate protection is unnecessary, the Bankruptcy Court concluded, because "[i]n the absence of evidence that the value of the real property is declining, IP does not lack adequate protection in the realty."  (See App., Tab J at 3).

- Based on its finding that "the cash collateral (and the realty) are not depreciating," the Bankruptcy Court concluded that the Debtors could use cash collateral to pay administrative expenses.  (See id. at 4).

- The Bankruptcy Court denied IP Company's objections to the Debtors' payments of certain management fees, marketing expenses and administrative labor charges based on the finding that "the real property is not declining in value, and therefore the mortgagee is adequately protected against any diminution in value of its collateral by virtue of the Debtor's use of the cash collateral."  (See id. at 4-5).

It is well established that Bankruptcy Court findings that are unsupported by evidence in the record are "clearly erroneous" and, therefore, are entitled to no weight on appeal.  See Fed. R. Bankr. 8013 (permitting reviewing court to overturn "clearly erroneous" findings of fact); see In re Panama-Williams Corp., 235 F.Supp. 729, 732 (S.D. Tex. 1964) ("a finding that the lower court's decision was clearly erroneous can be made when the findings are unsupported by substantial evidence. . . ."); In re Gaites, 466 F.Supp. 248, 251 (M.D. Ga. 1979) (same); see also Shadduck v. Rodolakis, 221 B.R. 573, 584 (D. Mass. 1998) (rejecting on appeal the Bankruptcy Court's findings of fact where the factual record "does not admit of the construction given it by the Bankruptcy Court.").  The Bankruptcy Court's finding of fact that the value of the Property is

not declining must be stricken by this Court and all conclusions of law, to the extent that they rest on such finding, must be reversed as unsupported by the evidence.

Indeed, the Bankruptcy Court's discussion as to whether or not the realty and/or the rental was declining, remaining steady or increasing in value is wholly irrelevant. As this Court found in <u>Beal</u>, the undersecured lender is entitled to the benefit of all postpetition rents, irrespective of the "movement" of the valuation of the collateral. In <u>Beal</u> this Court expressly cited to the Supreme Court's holding in <u>Dewsnup v. Timm</u>, 502 U.S. 410, 417, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992), that any appreciation in the value of collateral should be used "to the benefit of the creditor, not to the benefit of the debtor and not to benefit of the other unsecured creditors." <u>Beal</u>, 248 B.R. at 686. Accordingly, the Bankruptcy Court's findings, unsupported in the record, are irrelevant in any event.

## II.    THE BANKRUPTCY COURT ERRED BY FAILING TO PROVIDE ADDITIONAL REMEDIES FOR THE ADEQUATE PROTECTION OF IP COMPANY'S SECURITY INTEREST

As additional protection, IP Company has requested from the Bankruptcy Court that the use of Cash Collateral be conditioned upon certain terms and conditions typically afforded any secured lender. Specifically, IP Company requested that net rents be turned over to it and that it receive a weekly reconciliation of the Cash Collateral budget to actual funds collected and spent.

The Bankruptcy Court did not grant either of these forms of adequate protection, but instead granted IP Company the illusory adequate protection described above. The requested items of additional adequate protection are commonly given to secured lenders to allow them to protect and police their collateral. It was clear error for the Bankruptcy Court to deny this relief.

### A.    Payment Of Net Rents

All net rents in excess of Bankruptcy Court-approved operating expenses are subject to the lien of IP Company (pursuant to Section 552(b)(2) of the Bankruptcy Code) and the Debtors themselves claim in their budget to have no need for such funds. Because no entity other than IP Company is entitled to these net rents, there is no justification for excusing Debtors from their obligation to pay these funds to IP Company. See Beal, 248 B.R. at 684-86 ("[T]he Court concludes that Beal's prepetition security interest in rents should be added to the value of its secured claim"); In re Ambanc La Mesa Ltd. P'ship, 115 F.3d at 654 ("[T]he value of [creditor's] secured claim for the purposes of confirmation is the market value of real property plus the net amount of the rents collected post-petition and pre-confirmation and subject to a deed of trust and assignment of rents"), cert. denied, 522 U.S. 110, 118 S. Ct. 1039 (1998); In re Union Meeting Partners, 178 B.R. at 676; see also Neely, supra, at SG108 ALI-ABA at 236.

### B.    Reporting

IP Company conditioned its consent to the Debtors' use of net rents for certain non-administrative expenditures on the issuance of an order requiring minimal disclosure from Debtors regarding (i) compliance with the budget and (ii) reconciliation of amounts actually collected and expanded. (See App., Tab F at 27-28). Such disclosures, had they been ordered, would have protected IP Company from waste or misuse of cash collateral by the Debtors. The burden to Debtors had the request been allowed would have been minimal, as IP Company only sought information that the Debtors would keep in the ordinary course of their business. Indeed, the information was less than what the Debtors have been providing to IP Company's predecessors for the past eleven years under the terms of the Notes and the Mortgage. The

Bankruptcy Court, without explanation, refused to grant IP Company's request. This unexplained failure was a clear abuse of discretion and error of law.

In In re McCann, the Bankruptcy Court order permitting the debtor to use a secured creditor's cash collateral also included provisions to "insure that the [creditor] can intelligently evaluate the [debtor's] current operations" by "requir[ing] Debtor to allow the [creditor] reasonable access to such financial and other records as it may require to make its determination." 140 B.R. 926, 929-30 (Bankr. D. Mass. 1992). By contrast, the Bankruptcy Court has denied IP Company the information necessary to make any assessment, intelligent or otherwise, of the Debtors' current operations. Instead, the Bankruptcy Court is permitting the Debtors to dissipate IP Company's cash collateral while denying IP Company any means to hold the Debtors accountable for how those funds are spent. Such accountability, a minimal and ordinary incident of the lender-borrower relationship, is both necessary and appropriate and should have been required here, particularly in the absence of any other form of adequate protection for the uncompensated use of IP Company's cash collateral.

**III.    BECAUSE IP COMPANY'S SECURED INTEREST IS NOT ADEQUATELY PROTECTED, DEBTORS CANNOT USE IP COMPANY'S CASH COLLATERAL TO PAY THE ADMINISTRATIVE COSTS OF THE CASE**

The First Circuit has made clear that the **debtor**, and not the secured creditor, is required to bear the cost of administering a bankruptcy case. In re Parque Forestal, Inc., 949 F.2d 504, 511 (1st Cir. 1991) ("It is the general rule that the unsecured creditors must assume the costs of administering the estate), *overruled on other grounds by* In re The Home Restaurants, Inc., 285 F.3d 111 (1st Cir. 2002). The natural corollary to this prohibition is that, in the absence of adequate protection, a secured creditor cannot be required, directly or indirectly, to pay for the

debtor's professionals during the Chapter 11 proceeding. In re 680 Fifth Ave. Assocs., 154 B.R. 38, 43 (Bankr. S.D.N.Y. 1993) (debtors cannot utilize the rents to pay professional fees of the creditors' committee counsel); In re Willowood East Apartments of Indianapolis II, Ltd., 114 B.R. 138, 145 (Bankr. S.D. Ohio 1990) (debtors cannot utilize rents to pay retainer for bankruptcy counsel). One Massachusetts Bankruptcy Court, in refusing to permit a debtor's use of lender's collateral to pay professional fees, noted that "the claim of an attorney rendering services to an estate is not entitled to priority over the claim of a secured creditor to his collateral." In re National/Northway Ltd. P'ship, No. 02-41188-JBR, 2002 WL 32397224, at *10 (Bankr. D. Mass. 2002). The Bankruptcy Court, however, has erroneously permitted such use.

Section 506(c), 11 U.S.C. § 506(c), provides the sole, and narrow, statutory basis for imposing on a secured creditor the administrative costs of a bankruptcy; the standard that must be met for such imposition is high. Cash collateral cannot be used to pay interim compensation to professionals without the secured creditor's consent, unless (i) the professional services benefit the secured creditor, (ii) the court is convinced that there are (or will be) sufficient unencumbered funds available, or (iii) the secured creditor is adequately protected. See Neal Batson, Selected Issues In Single-Asset Real Estate Cases, 6 J. Bankr. L. & Prac. 3 (1996). None of these standards is met in this case.

The vast majority of professional fees will be incurred in two basic categories, neither of which benefit IP Company nor provide adequate protection for the use of the Rents. First, some of the professional fees spent on these cases will be for routine work such as preparing and filing schedules and statements of financial affairs, reviewing and objecting to claims, investigating plan scenarios and the like. These activities will provide no benefit to IP Company or its

collateral. See Ranch Partners, Ltd. v. Resolution Trust Corp. (In re Ranch Partners, Ltd.), 146

B.R. 833, 836 (D. Colo. 1992); see also In re Westwood Plaza Apartments, 154 B.R. 916, 922

(Bankr. E.D. Tax. 1993). Second, the vast majority of the professional fees incurred by the

Debtors will be to advance the goal of adversely altering the rights of IP Company. There is no

even colorable inference of any benefit to IP Company from such hostile activity on Debtors'

behalf.

Moreover, the Bankruptcy Code forbids a debtor to use the cash collateral of a secured

creditor to such creditor's detriment. 11 U.S.C. §§ 363(e) and 506(c). The Debtors having

chosen to retain professionals to advance the interests of their owners, should be compelled to

pay for such fees and expenses. Finally, any perceived right of the Debtors to attempt to

reorganize does not mean that the Debtors have the right to force IP Company to pay the costs of

such reorganization efforts. See General Elec. Credit Corp. v. Levin & Weintraub (In re

Flagstaff Foodserv. Corp.) 739 F.2d 73, 77 (2d Cir. 1984). The ultimate burden of the costs of

reorganization rests with the Debtors, and the Debtors alone. The Debtors' owners chose to

pursue Chapter 11 reorganization, as they were entitled to do.[8] What they are not entitled to is a

free ride through Chapter 11 at the expense of IP Company.

## CONCLUSION

For the reasons stated above, it is respectfully submitted that this Court should enter an

Order:

---

[8]    In fact, the 60 percent majority owner of the Debtor entity preferred to negotiate a resolution with IP
Company and did not wish to commence bankruptcy. That majority owner was compelled to join in the proceedings
only because the minority owner -- which incidentally also owns the affiliate entities receiving the management fees
from the buildings -- refused event to meet with IP Company. (See App. A., Tab P at 4 -7).

(i)    Reversing the Cash Collateral Order entered by the Bankruptcy Court authorizing the use of IP Company's cash collateral to pay the administrative expenses of these proceedings because no adequate protection was provided for such use of that collateral;

(ii)    Striking the finding in the Cash Collateral Order that the value of the Property is not declining in value and reverse all conclusions of law resting on such finding, as no evidence exists in the record to support such finding;

(iii)    Requiring the Debtors to pay all Net Rents to IP Company;

(iv)    Requiring the Debtors to provide IP Company with the reporting information as requested by IP Company in its pleadings filed with the Bankruptcy Court; and

(v)    Such other and further relief as the Court deems appropriate.

Date:  July 14, 2004

Respectfully submitted,

I.P. Company L.L.C.

By its attorneys,

*Michael S. Gardener (Karen)*

R. Robert Popeo, BBO No. 403360
Richard E. Mikels, BBO No. 345620
Michael S. Gardener, BBO No. 185040
Kevin J. Walsh, BBO No. 629984
Daniel S. Bleck, BBO No. 560328
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Fax: (617) 542-2241