UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
_____

Civil Action No. 04-11473-PBS
_____

Bankruptcy Case Nos.
04-13855 and 04-13857-JNF
(Jointly Administered)
_____

FORT HILL SQUARE ASSOCIATES and
FORT HILL SQUARE PHASE 2 ASSOCIATES
Debtors.

_____

I.P. COMPANY L.L.C.
Appellant,

v.

FORT HILL SQUARE ASSOCIATES and
FORT HILL SQUARE PHASE 2 ASSOCIATES
Appellees.

_____

<u>APPELLANT'S REPLY BRIEF</u>

Submitted by:


R. Robert Popeo, Esq.
Richard E. Mikels, Esq.
Michael S. Gardener, Esq.
Kevin J. Walsh, Esq.
Daniel S. Bleck, Esq.
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Fax: (617) 542-2241

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................................... 1

ARGUMENT............................................................................................................................. 2

I.     THE DEBTORS HAVE NO BASIS TO CHALLENGE  IP COMPANY'S STANDING .... 2

II.    SECTION 552(b)(2) MEANS WHAT IT SAYS................................................................. 3

III.   WHETHER OR NOT THE CASH FLOWS ARE STABLE OR INCREASING,
THE RENTS AS CASH COLLATERAL ARE NECESSARILY DIMINISHING ... 6

IV.   THE DEBTORS' EFFORT TO ANALOGIZE THIS CASE TO AN INVENTORY
OR ASSET-BASED LOAN FAILS AS A MATTER OF LAW......................................... 8

V.    SETTING A PARTICULAR VALUATION DATE IS A RED HERRING
DESIGNED TO AVOID THE EFFECT OF SECTION 552(b)(2) ...........................10

VI.   COMPLIANCE WITH SECTION 552(b)(2) WOULD NOT IMPROPERLY IMPINGE
ON DEBTORS' RIGHTS TO ATTEMPT A REORGANIZATION.................................13

VII.  THE DEBTORS DO NOT DISPUTE THAT IP COMPANY IS ENTITLED TO
IMMEDIATE PAYMENT OF NET RENTS IN EXCESS OF THE APPROVED
BUDGET EXPENSES......................................................................................................16

CONCLUSION...........................................................................................................................16

## TABLE OF AUTHORITIES

### FEDERAL CASES

Almendarez v. Barrett-Fisher Co., 762 F.2d 1275 (5th Cir. 1985) ..................................................6, 11

Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship, 248 B.R. 668 (D. Mass. 2000) .........................2, 3, 12

Coyne & Delaney v. Blue Cross & Blue Shield of Virginia, 102 F.3d 712 (4th Cir. 1996) ...............11

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000)..............................3

Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.),
    187 B.R. 856 (Bankr. E.D.N.Y. 1995)........................................................................................14

In re Addison Properties Ltd. P'ship, 185 B.R. 766 (Bankr. N.D. Ill. 1995)............................9, 12, 13

In re Barclay-Cupit Enters., 13 B.R. 86 (Bankr. N.D. Ga. 1981) ........................................................12

In re Cafeteria Operators, L.P., 299 B.R. 400 (Bankr. M.D. Tex. 2003) ............................................10

In re Cason, 190 B.R. 917 (N.D. Ala. 1995)  ......................................................................................12

In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061 (9th Cir. 2001) .....................................14

In re Delta Resources, Inc., 54 F.3d 722 (Bankr.W. D. Tex. 1990) ....................................................12

In re Farmer, 257 B.R. 556 (Bankr. D. Mont. 2000) ..........................................................................12

In re James Wilson Assoc., 965 F.2d 160 (7th Cir. 1992)...................................................................10

In re Johnson, 165 B.R. 524 (S.D. Ga. 1994) .....................................................................................12

In re LaRoche, 969 F.2d 1299 (1st Cir. 1992) ......................................................................................3

In re National/ Northway Ltd. P'ship, No. 02-41188-JBR, 2002 WL 32397224
    (Bankr. D. Mass. Dec. 20, 2002) ...............................................................................................15

In re Prichard Plaza Assocs. Ltd. P'ship, 84 B.R. 289 (Bankr. D. Mass. 1988) ................................13

In re S&S Indus., 30 B.R. 395 (Bankr. E.D. Mich. 1983) ....................................................................15

In re Westwood Plaza Apartments, 154 B.R. 916 (Bankr. E.D. Tex. 1993)  ......................................15

In re 680 Fifth Ave. Assocs., 154 B.R. 38 (Bankr. S.D.N.Y. 1993) .....................................................15

Lamie v. United States Trustee, 124 S. Ct. 1023 (2004) ........................................................3

Marcos Gurnee P'ship, 252 B.R. 712 (Bankr. M.D. Ill. 1997)...............................................9

Miles v. Apex Marine Co., 498 U.S. 19 (1990)......................................................................5

Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305
     (1st Cir. 1993).................................................................................................................14

United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd., 484 U.S 365 (1988)..........8

United States v. Ron Pair Enters., 489 U.S. 235 (1989) .......................................................3

**FEDERAL STATUTES**

11 U.S.C. § 361(2) ...............................................................................................................7

11 U.S.C. § 363..........................................................................................................8, 13-15

11 U.S.C. § 363(c)(2) ...........................................................................................................7

11 U.S.C. § 363(e) .............................................................................................................5, 7

11 U.S.C. §552 ..................................................................................................................4, 5

11 U.S.C. §552(a) ......................................................................................................8, 10, 11

11 U.S.C. § 552(b)(1) .........................................................................................................8, 9

11 U.S.C. § 552(b)(2) .................................................................................................1, 3-5, 7-14

**OTHER AUTHORITIES**

Sally S. Neely et al., Postpetition Rents and the Claims of Undersecured Creditors With
     Assignment of Rents in Chapter 11 Cases, SD 24 ALI-ABA 363 (1998) ......................4, 12, 13

Sally S. Neely et al., Postpetition Rents and the Claims of Undersecured Creditors With
     Assignment of Rents in Chapter 11 Cases, 108 ALI-ABA 221 (2002)..........................................4

**INTRODUCTION**

Appellant I.P. Company, L.L.C. ("IP Company") respectfully submits this Reply Brief in response to the brief filed by the Appellees Fort Hill Square Associates and Fort Hill Square Phase 2 Associates (collectively, the "Debtors").

The Debtors work mightily to persuade this Court that 11 U.S.C. § 552(b)(2) does not mean what it says, but in doing so they remain silent about the key features of this case which, when considered together, compel reversal of the Bankruptcy Court's Cash Collateral Order. First, it is undisputed that IP Company's claim is undersecured and, thus, there is not equity value in the Debtors' assets: IP Company is the true stakeholder here. Second, whatever value there is in the Debtors' assets continues to be subject to IP Company's perfected, first priority lien. And under Section 552(b)(2) of the Bankruptcy Code, that perfected, first prioroty liens extends to all postpeition rents of the Debtors. Third, the only use of IP Company's cash collaeral in dispute is the funding of professionals who have been commissioned by the Debtors' minority partner to try to impair IP Company's claims. Finally, the Bankruptcy Court authorized the Debtors to proceed with this hostile use of IP Company's cash collateral without granting IP Company any form of protection other than a lien on collaetral in which it already has a lien. In short, IP Company is being forced, in a situation in which it is already undersecured, to fund the efforts of the Debtor's minority partner to further impair the rights of IP Company, without any protection of what are supposed to be IP Company's stautorily protected interests. This is not what Congress intended when it enacted section 552(b)(2).

## ARGUMENT

### I. THE DEBTORS HAVE NO BASIS TO CHALLENGE IP COMPANY'S STANDING

In their brief, the Debtors claim, for the first time, that IP Company lacks standing to prosecute this appeal. The Debtors' claim is flawed for several reasons. First, the Assignment of Mortgage dated as of April 2, 2004, was given by IP Company to UBS Real Estate Investments Inc. ("UBS") to secure a loan and for no other purpose. (See IP Company's Initial Brief ("Initial Brief"), App., Tab C, at 7 n.6). As a result, IP Company continues to maintain the primary interest in the Debtors' secured obligations and, therefore, has a critical stake in the outcome. Second, in a letter dated August 19, 2004 between UBS and IP Company, UBS expressly consents to IP Company's appearing in the Bankruptcy Proceeding and the Adversary Proceeding in its own name to assert the rights of the holder.[1/] A copy of this letter is attached as an addendum hereto. Finally, even if this were a material issue, which it is not, the Debtors failed to raise the lack of standing issue below and have therefore waived their right to assert that claim now. "Issues not raised in previous proceedings cannot be raised for the first time on appeal." Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship, 248 B.R. 668, 682 (D. Mass. 2000). Debtors had an opportunity, both in their motion and memorandum for the interim use of cash

---

[1/] Specifically, the letter agreement provides that:

> UBS consents to IP Company appearing in the Bankruptcy Proceeding and the Adversary Proceeding in its own name to assert the rights of the holder of: the Amendment and Restatement of Mortgage Note (Phase I), dated February 22, 1993, by and between Fort Hill Square Associates and Teachers Insurance Annuity Association of America ("TIAA"); the Amendment and Restatement of Mortgage Note (Phase 2), dated February 22, 1993, by and between Fort Hill Square Phase 2 Associates and TIAA; and the mortgages described and amended by the Agreement of Confirmation and Amendment of Mortgage Amendment, Spreader and Consolidation Agreement, dated February 22, 1993, by and among Fort Hill Square Associates, Fort Hill Square Phase 2 Associates and TIAA (collectively, the "Mortgage Loans") (including taking action to enforce, prosecute or assert any claim or right arising under or from the aforementioned Mortgage Loans, and defending any claims, offsets or litigation against the holder of the Mortgage Loans that may arise in the Bankruptcy Proceeding and the Adversary Proceeding in connection with the Mortgage Loans).

collateral and during the cash collateral hearing, to raise the issue of lack of standing, but failed

to do so.  Accordingly, Debtors waived any claim with respect to the IP Company's lack of

standing to prosecute this appeal.  <u>See</u>, <u>e.g.</u>, <u>Beal Bank</u>, 248 B.R. at 682 ("By failing to squarely

raise the effective date argument at the confirmation hearing, Beal waived the right to raise it on

appeal"); <u>see also</u> <u>In re LaRoche</u>, 969 F.2d 1299, 1305 (1st Cir. 1992).

## II.     SECTION 552(b)(2) MEANS WHAT IT SAYS

Section 552(b)(2) is clear and unambiguous:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property … then such security interest extends to such rents … acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

It is undisputed that IP Company had a security interest in all rents at International Place

pursuant to the loan documents (<u>See</u> Initial Brief, App., Tab F at 6-7).  Under section 552(b)(2),

IP Company's security interest extends to all rents received by the Debtors since commencement

of these Chapter 11 cases.  The Debtors attempt to argue from legislative history that

section 552(b)(2) is only intended to solve certain technical perfection problems arising under

state law. (Debtors' Brief, at 22-23).  From this they somehow divine that IP Company is not

entitled to receive adequate protection for any proposed use of rents received postpetition.  This

argument is both illogical and misses the point.  The legislative history is neither relevant to nor

inconsistent with the requirement of adequate protection.

It is axiomatic that where a statute is clear on its face, there is neither need nor

requirement to look to its legislative history.  <u>See</u> <u>Lamie v. United States Trustee</u>, 124 S. Ct.

1023, 1030 (2004); <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1, 6

(2000); <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 240-41 (1989).  Simply stated, if a

statute is unambiguous, a court must apply the statute according to its express terms.  See id.

Nowhere do the Debtors suggest that the statute is ambiguous – even they cannot stretch their

argument that far.  Section 552(b)(2) clearly and unambiguously provides that if a secured

creditor has a lien against rents before the commencement of the case, as IP Company

indisputably did here, then such "security interest extends to such rents …acquired by the estate

after the commencement of the case…"  See 11 U.S.C. § 552(b)(2).  Attempting to minimize the

effect of section 552 by characterizing it as a "perfection" statute does not change the

unambiguous reality that the statute established the existence and full extent of a secured

creditor's lien on all rents generated after a bankruptcy filing.

The Debtors invoke the leading commentary on postpetition rents, Sally S. Neely in her

article Postpetition Rents Claims and the Claims of Undersecured Creditors with Assignment of

Rents in Chapter 11 Cases,  SD24 ALI – ABI 363 (1998) (the "Neely Article"), as support for

their argument.  The Debtors rely on the Neely Article for the historical  observation that "[t]he

issue of rent perfection became a subject of much litigation and numerous diverse rules were

developed by courts, creating a situation in which creditors and debtors faced uncertainty as to

the status of their respective interest."  (Debtors' Brief, at 22, citing Neely Article).  Not

surprisingly, the Debtors do not quote further from Neely, who proceeds to summarize the

majority rule regarding section 552(b)(2) as follows:

> rents cannot be used for purposes other than those authorized under [11 U.S.C. ]
> 552(b) without adequate protection (such as substitute collateral or a more-than-
> adequate equity cushion).  Net rents must either be paid to the secured creditor
> during the case or sequestered for application and confirmation.

Neely Article, as updated, SG 108 ALI-ABA 221, 236 (2002).  Nowhere in her Article does

Neely even remotely suggest that section 552(b)(2) is some sort of technical correction of the

law of perfection.  Rather, Neely makes clear the true import of section 552(b)(2) - a mortgagee such as IP Company has a lien on all postpetition rents that is entitled to full adequate protection.

Continuing to miss the point, the Debtors then make much of the fact that "Section 552, however, neither mentions nor adverts to adequate protection."  (Debtors' Brief, at 24).  Of course it does not.  Section 552(b)(2) did not have to mention or advert to adequate protection because section 363(e), which was already in place when the amendment to section 552(b)(2) was enacted, expressly sets forth the requirements for adequate protection.  When Congress decided to afford lenders a security interest in postpetition rents by virtue of section 552(b)(2) it necessarily was mandating, given the existing requirements of section 363(e), that postpetition rents as collateral could only be used by debtors if adequate protection was first provided.

There is nothing inconsistent between the Congressional intent to extend security interests to postpetition rents and the requirement that adequate protection must be provided before use may be made of such rents.  To the contrary, the latter is a necessary corollary to the former.  That is, it would have been an empty act for Congress to have gone to the trouble of granting security interests in postpetition rents if the Debtor was nevertheless free to ignore those liens and make unbridled use of such rents without first having to provide adequate protection for that use.  If that were the case, the lender would receive no benefit whatsoever from the perfection right granted by the Congressional amendment to section 552.  In sum, because: (i) section 363(e) was in existence prior to the amendment to section 552, and Congress must be presumed to have known of the interplay between these statutory provisions, see, e.g., Miles v. Apex Marine Corp., 498 U.S. 19, 31 (1990); and (ii) the enactment of section 552(b)(2) would have little if any meaning if the adequate protection provisions of section 363 were not applicable to the security interests recognized by section 552(b)(2), and (iii) legislative actions

are presumed to be meaningful, see, e.g., Almendarez v. Barrett-Fisher Co., 762 F.2d 1275, 1280

(5th Cir. 1985), the Debtors' argument must be rejected.

### III.    WHETHER OR NOT THE CASH FLOWS ARE STABLE OR INCREASING, THE RENTS AS CASH COLLATERAL ARE NECESSARILY DIMINISHING

The Debtors assert that the absolute amount of the cash collateral is not diminishing, but

is increasing, and, "therefore," IP Company is not entitled to adequate protection for the use of

postpetition rents.  Again, this contention is a non-sequitur.

As an initial matter, it is necessary to point out the emptiness of this assertion.  The

Debtors crow that as of the petition date the cash on hand was $19,713,032, and that as of the

end of the budget period the cash on hand is projected to be $23,290,576.  What the Debtors fail

to tell the Court is that during the 13-week budget period neither the rental stream nor the

operating expenditures will change from what they were prepetition.  What then accounts for this

$3.5 million "increase" in cash collateral?  The Debtors have not had to pay debt service to IP

Company since April of 2004.  It is much easier to accumulate cash when you do not have to pay

your obligations.

The Debtors also assert that they have "increased" the collateral value by entering into

certain leases that supposedly will result in greater rental payments.  What the Debtors fail to

mention, and perhaps do not recognize, is that the new leases are structured so that initially the

tenants are entitled to receive the benefit of enormous tenant improvements and extended free-

rent periods, all of which are to be paid for out of IP Company's cash collateral.  But the rental

income under these new leases will not be received until 2005 at the earliest, and in some cases

as late as 2006 or 2007, and in any event long after the period covered by the cash collateral

order at issue here.  (See, e.g., *Transcript of Hearing on Motion for Order Authorizing Debtor to*

*Enter Into Nonresidential Real Estate Lease With Choate, Hall & Stewart* [Docket 193], IP

Company's Designation of Record, Tab 18 at 8, 21).

      Indeed, the Debtors fail to explain how it is that despite being a premier office property,

under their ownership International Place has limped along at a 25 percent vacancy rate . (See

Initial Brief, Tab A, at 3).  The Debtors also fail to inform the Court that by the time the three

new tenants identified in their papers finally begin to actually pay rents, leases for existing

tenants will be expiring.  Given the historic inability of the Debtors to keep the buildings fully

leased, there is simply no basis for concluding that the future rental stream will be any better than

the present cash flow.

      In any event, the Debtors' entire argument on the collateral value again misses the point.

IP Company, by operation of the loan documents and section 552(b)(2), has a security interest in

all postpetition rents, those rents that have been paid and those to be paid in the future.  The total

pool of those present and future rents is finite.  Thus, a withdrawal from that pool can only be a

diminution of the pool.  With each expenditure of the pool of rental income by the Debtors, on

which IP Company holds the first priority lien, there is overall less rents as cash collateral.  It is

obvious and inescapable.

      What is also undisputed is that IP Company's claim is undersecured.  Where a loan is

undersecured and the creditor already has a security interest in the collateral proposed to be used,

the debtor may not make use of such collateral without first providing a replacement lien on

unencumbered property.  11 U.S.C. § 361(2); see also cases cited at page 16 of the Initial Brief.

Accordingly, the Debtors may not make use of the postpetition rents without the consent of IP

Company or providing a replacement lien on some other unencumbered property.  11 U.S.C. § §

363(c)(2), 363(e).  Whether the postpetition rents are greater than, equal to or less than the

prepetition rents is simply irrelevant.  The loan is undisputedly undersecured, and IP Company already has a statutorily-mandated security interest in <u>all</u> postpetition rents.  Therefore, as the very cases relied upon by the Debtors hold, the Debtors as a matter of law cannot use those rents without providing adequate protection in the form of a lien on new collateral because to do so would clearly diminish the value of IP Company's already existing lien on all rents.  As the Debtors thmselves acknowledge, adequate protection requires "that the value of the creditor's interes interest in the cash collateral be protected from diminution while the Debtors are using the cash for collateral." (Debtors' Brief, at 20, citing <u>United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.</u>, 484 U.S. 365 (1988).

In sum, given IP Company's continuing lien in all rents generated postpetition, it is irrelevant that (i) new leases are being executed, or (ii) the cash position during the course of the bankruptcy proceeding may be higher than at the beginning of the case.  The entire pool of all rents (including the rents from any new leases) is already subject to IP Company's lien pursuant to section 552(b)(2).  Accordingly, not only is any purported "increase" in that pool not adequate protection for the use of IP Company's cash collateral because it is already part of that cash collateral, but sections 363 and 552(b)(2) require that any dip into the pool by the Debtors be offset by the grant to IP Company of a lien on unencumbered assets.

## IV. THE DEBTORS' EFFORT TO ANALOGIZE THIS CASE TO AN INVENTORY OR ASSET-BASED LOAN FAILS AS A MATTER OF LAW

The Debtors attempt to analogize this matter to an inventory or asset-based loan.  (<u>See</u> Debtors' Brief, at 25-26).  This effort must fail, as section 552(b)(2) creates a separate rule for security interests in rents.

It is generally the case under bankruptcy law that after-acquired property of a debtor is not subject to the lien of a secured party.  <u>See</u> 11 U.S.C. § 552(a).  Sections 552(b)(1) and (b)(2)

provide for certain exceptions to this basic proposition. Specifically, under section 552(b)(1) a prepetition lien against assets of a debtor which extends to the proceeds, products or offspring of such property will continue to attach to such proceeds, products or offspring even if acquired after the bankruptcy. However, in a non-real estate situation, the prepetition lien will not extend to other property acquired by the debtor after the bankruptcy filing, even if the express terms of the security agreement provide otherwise. For example, if a secured party has a lien against inventory prior to the filing, although the lien will extend to the proceeds, products or offspring of such inventory (under section 552(b)(1)), this security interest will not extend to inventory obtained by the debtor after a bankruptcy filing, even if the security agreement provides for an after acquired clause. This rule, however, is inapplicable to rents. Section 552(b)(2) expressly provides that a prepetition lien in rents generated from property will extend to new rents generated from the property post-Chapter 11 filing.

The Debtors' brief ignores this crucial distinction. The Debtors suggest that the situation before this Court is analogous to an "inventory-or asset-based loan where lender has a blanket lien on inventory, cash and receivables …." (Debtors' Brief, at 25). The Debtors further argue that a replacement lien against receivables generated subsequent to a bankruptcy filing may be considered adequate protection. (Id.) The Debtors then take a giant leap and assert that "[t]he same is true of International Place – using gross rents allows a cycle of new rents to be generated, while, as demonstrated by the Budget maintaining and even expanding Cash Collateral benefits for the Debtors and creditors alike." (Id.) Other than those cases decided by Judge Wedoff (i.e., In re Addison Props. Ltd. P'ship, 185 B.R. 766 (Bankr. N.D. Ill. 1995) and Markos Gurnee P'ship, 252 B.R. 712 (Bankr. M.D. Ill. 1997)), the rationale of which is addressed below, the Debtors cannot offer any authority to support their position that IP

Company is not entitled to receive the benefit of those postpetition rents subject to its lien. For example, In re Cafeteria Operators, L.P., 299 B.R. 400 (Bankr. M.D. Tex. 2003), relied upon by Debtors, addresses a lien in inventory and not a lien on postpetition rents which, as noted, are treated completely differently under section 552(b)(2). Further, in In re James Wilson Assoc., 965 F.2d 160 (7th Cir. 1992), also relied upon by the Debtors, the court was faced with an oversecured creditor seeking adequate protection – once again, a case inapposite to the facts at bar.

What the Debtors fail to recognize or acknowledge is that a secured real estate loan is not an inventory and receivables situation. Where a lender simply has a prepetition lien against receivables and/or inventory, that lien ceases to exist against new receivables created or new inventory obtained subsequent to a bankruptcy filing. See 11 U.S.C. § 552(a). Consequently, in considering the case of receivables as cash collateral, the courts have found that a replacement lien granted against postpetition inventory or postpetition receivables may be considered adequate protection, because it is a lien on unencumbered property. Under section 552(b)(2), postpetition rents are encumbered to the same extent as prepetition rents. IP Company already has a ***continuing lien*** against rents generated postpetition. Accordingly, allowing the Debtors the use of the gross rents to "cycle new rents to be generated" simply misses the mark and fails to recognize the express exception created under section 552(b)(2). In sum, because IP Company already has a lien against these postpetition rents as a result of section 552(b)(2), a "replacement" lien against these rents is illusory.

## V. SETTING A PARTICULAR VALUATION DATE IS A RED HERRING DESIGNED TO AVOID THE EFFECT OF SECTION 552(b)(2)

Knowing that section 552(b)(2) grants IP Company a lien on all postpetition rents, the Debtors attempt a side step by undertaking a lengthy disquisition on the choice of valuation dates

for determining adequate protection.  But there is no such choice to be made.  It is apparent that

when dealing with rents as cash collateral there is no one date by which to determine adequate

protection.  The loan agreements granted IP Company a continuing lien on all rents and section

552(b)(2) mandates that IP Company has a continuing lien on all postpetition rents.  The loan

agreements and section 552(b)(2) do not simply give IP Company a lien on rents up to the

petition date or for just one month after the petition date**.**  To the contrary, they provide IP

Company with a security interest in all postpetition rents from the date the loan was made to the

date it is repaid.  By definition then, the valuation of the lienholder's interest must be as

continuous as the rental stream that is subject to the lien.

It is a well settled rule of statutory construction that wherever possible a statute must be

interpreted so as to give meaning to its provisions.  <u>See</u>, <u>e.g.</u>, <u>Coyne & Delaney v. Blue Cross &</u>

<u>Blue Shield of Virginia, Inc.</u>, 102 F.3d 712, 715 (4th Cir. 1996); <u>Almendarez</u>, 762 F.2d at 1275.

The Debtors' valuation argument would require this Court to flout this basic principle.  To fix

one particular date as the only point at which to value IP Company's security interest would

entirely defeat the purpose of section 552(b)(2), which by its plain words grants mortgagees a

perfected lien on all postpetition rents, not just those in existence on a day chosen by the

Debtors.

The Debtors argue that a number of cases hold that the value of the creditors' security

interest is to be measured as of the date of the filing of the petition.  But with non-real estate

businesses the lien of the secured creditor is always fixed and established as of the filing date

pursuant to section 552(a).  Thus, it is neither surprising nor inappropriate that the courts in such

cases would have selected the petition date as the valuation date as well.  Indeed, each of these

cases  relied upon by the Debtors either addresses collateral other than real property (thus not

implicating section 552(b)(2)), or were decided prior to the 1994 adoption by Congress of section 552(b)(2).  See In re Farmer, 257 B.R. 556, 558 (Bankr. D. Mont. 2000) (collateral was a pick-up truck); In re Cason, 190 B.R. 917, 920 (Bankr. N.D. Ala. 1995) (1994 Ford 150 truck); In re Delta Resources, Inc., 54 F.3d 722, 724 (Bankr. W.D. Tex. 1990) (13 pieces of heavy equipment); In re Johnson, 165 B.R. 524, 526 (S.D. Ga. 1994) (vehicle); In re Landing Assoc., Ltd., 122 B.R. 288 (Bankr. W.D. Tex. 1990) (prior to 1994 Amendments); In re Barkley-Cupit Enters., 13 B.R. 86 (Bankr. N.D. Ga. 1981) (prior to 1994 Amendments).

By contrast, section 552(b)(2) clearly provides that the lien of IP Company in the rents of the Debtors continues in all rents generated postpetition.  In order to satisfy the statutory protection of this lien, courts must recognize the secured lender's interest in both present and future rents.  To hold otherwise would render section 552(b)(2) meaningless.  If the debtor were entitled to expend the postpetition rents without having to provide any adequate protection therefore, then amending the Code to provide lenders with a security interest in such rents would have been an empty act by Congress.  Indeed, debtors would actually have an incentive to spend all of the postpetition rents where, as here, the lender is undersecured, since any accumulated rents must at confirmation be added to the amount of the secured lender's claim.  See Beal Bank, 248 B.R. at 686 (D. Mass. 2000); see also Neely Article, supra, SD24 ALI – ABI at 363.  Other than Addison Properties, none of the cases relied upon by the Debtors in support of their argument that the secured claim of IP Company should be valued as of the petition date for adequate protection purposes address the impact of section 552(b)(2) and, therefore, are inapplicable to the instant action.

Against the clear language of section 552(b)(2), the requirements of section 363(e), the mandate of the Fifth Amendment to the Constitution, and the well-settled rules of statutory

construction discussed above, all that the Debtors can offer in rebuttal is the anomalous authority of In re Addison Props., L.P., 185 B.R. at 766.  That decision is analyzed fully in IP Company's Initial Brief, at 19-20, and has been roundly criticized by the same commentator whom the Debtors themselves rely upon in their brief.  See Neely Article, supra.  If the decision in Addison were followed, then section 552(b)(2) would effectively be read out of the Code.  Debtors would not only be free to expend net postpetition rents as they come in without regard to the Lienholder's interest, they would be incentivized to do so, even though those rents are undisputedly part of the secured creditor's collateral.  Such a result is bad law, bad policy, and simply unfair.

## VI.    COMPLIANCE WITH SECTION 552(b)(2) WOULD NOT IMPROPERLY IMPINGE ON DEBTORS' RIGHTS TO ATTEMPT A REORGANIZATION

Throughout their brief the Debtors raise the specter that if the plain meaning of sections 363 and 552(b)(2) is honored and Debtors are precluded from using postpetition collateral without providing adequate protection, then Debtors' efforts to reorganize will be improperly hamstrung.  What the Debtors really are saying is that their equityholders would be denied the free ride they now have to use IP Company's collateral to fund their attack on IP Company.

The Debtors acknowledge, as they must, that in fact IP Company has not objected to the cash collateral budget items relating to the operation and maintenance of the property, which items constitute the vast bulk of the proposed expenses. IP Company recognizes the need to maintain and operate its real property collateral and consented to that expenses, "to the extent the Debtor applies rental income to the operation and maintenance of the property (which the Debtor has been doing here) the mortgagee may be considered adequately protected." In re Prichard Plaza Assocs. Ltd. P'ship, 84 B.R. 289, 301-02 (Bankr. D. Mass. 1988) (see also Debtors' Brief,

13

at 24).  Enforcement of IP Company's rights under sections 363 and 552(b)(2) will in no respect

"hamstring" the maintenance and operation of the Debtors' real property.

The dispute centers on the Debtors' desire to use IP Company's collateral to fund an

attack on IP Company's claims, attacks which can benefit only the existing equity partners of the

Debtors.[2/]  "Reorganization" by the Debtors here means nothing other than the attempt by the

existing equity holders to find a way out from under the debt burden they voluntarily undertook,

admitting, as they have, that otherwise there is no equity value today in the Debtors' assets.  IP

Company does not contend that the Debtor's equityholders are not entitled to prosecute these

attacks; Chapter 11 provides them that opportunity.  All that IP Company asks is that its

collateral not be used to fund proceedings - - that will benefit only the equityholders and are of

no benefit to the Property -- against IP Company itself.  Where there is no equity value in a

Chapter 11 debtor, as there is not here, it in no respect offends the principles of Chapter 11 to

impose on equityholders rather than their secured creditors the cost of "reorganization."

Despite the Debtors' predictable contention that Chapter 11 is all about rehabilitation, a

balanced reading of the statute evidences an equal concern for the rights and interests of a

debtor's creditors.  This is why the Bankruptcy Code, among other things,  allows a secured

creditor to consent to the use of its cash collateral for specific expenditures and not others.  See

Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305, 1313 (1st

Cir. 1993); In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061, 1067-68 (9th Cir. 2001);

Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.),

187 B.R. 856, 861 (Bankr. E.D.N.Y. 1995).  To the extent a secured creditor does not consent,

---

[2/]        It is apperent from the pleadings filed to date that the unsecured creditors are at no real risk in these cases.
They were unpaid by the Debtors prior to the commencement of these cases solely in order to manufacture a class of
creditors other than IP Company and will in any event see their claims satisfied.

then a debtor must demonstrate that the secured creditor is adequately protected for the use of its cash collateral for that particular purpose. <u>See</u> 11 U.S.C. § 363.

In this instance, IP Company has not consented to the use of its cash collateral to pay the "Estate Professional Fees," and thus such cash collateral cannot be used for such purposes unless it is shown that IP Company is adequately protected. In fact, courts have universally held that a an undersecured creditor cannot be forced to finance the administrative costs of a bankruptcy proceeding. If the creditor does not consent to the use of its cash collateral it must be adequately protected to permit the nonconsensual use. <u>See</u> <u>In re Westwood Plaza Apartments, Ltd.</u>, 154 B.R. 916, 921 (Bankr. E.D. Tex. 1993) ("Although acknowledging a narrow exception if fees and expenses are (i) necessary, (ii) reasonable, and (iii) incurred primarily for the benefit of the secured creditor resulting in a quantifiable direct benefit to the secured creditor, '[t]he general rule in bankruptcy is that administrative expenses are charged against the estate and not against secured creditors… The debtor must look to unencumbered assets of the estate to pay administrative expenses."); <u>In re 680 Fifth Ave. Assocs.</u>, 154 B.R. 38, 43 (Bankr. S.D.N.Y. 1993) ("[A]dministrative expenses are to be paid from the debtor's unencumbered assets."); <u>In re S&S Indus.</u>, 30 B.R. 395, 399 (Bankr. E.D. Mich. 1983) ("A secured creditor unless he consents, cannot be compelled to finance a chapter 11 proceeding except to the limited extent provided for in Section 506(c)."). In fact, one Massachusetts Bankruptcy Court, in refusing to permit a debtor's use of lender's collateral to pay professional fees, noted that "the claim of an attorney rendering services to an estate is not entitled to priority over the claim of a secured creditor to his collateral." <u>In re National/Northway Ltd. P'ship</u>., No. 02-41188-JBR, 2002 WL 32397224, at * 10 (Bankr. D. Mass. Dec. 20, 2002).

**VII.   THE DEBTORS DO NOT DISPUTE THAT IP COMPANY IS ENTITLED TO IMMEDIATE PAYMENT OF NET RENTS IN EXCESS OF THE APPROVED BUDGET EXPENSES**

Perhaps the most disquieting feature of the Bankruptcy Court's Cash Collateral Order was its refusal to require the Debtors' to pay IP Company the net rents, that is, the rents net of all approved payments, or even to provide IP Company with the reports that it has received under its agreements with the Debtors for more than 10 years. Not even the Debtors pretend to defend those portions of the Bankruptcy Court's Order. Given the Debtor's silence, it is undisputed that the Bankruptcy Court erred in failing to order the limited adequate protection of payment of net rents and periodic reporting.

**CONCLUSION**

For the reasons stated above and in its Initial Brief, I.P. Company respectfully submits that this Court should grant the relief sought in this appeal.

Dated:  August 19, 2004                    Respectfully submitted,

                                           IP COMPANY, L.L.C.

                                           By its attorneys,

                                           __/s/__Michael S. Gardner_____
                                           R. Robert Popeo, BBO No. 403360
                                           Richard E. Mikels, BBO No. 345620
                                           Michael S. Gardener, BBO No. 185040
                                           Kevin J. Walsh, BBO No. 629984
                                           Daniel S. Bleck, BBO No. 560328
                                           Mintz, Levin, Cohn, Ferris,
                                             Glovsky and Popeo, P.C.
                                           One Financial Center
                                           Boston, Massachusetts 02111
                                           Telephone: (617) 542-6000
                                           Fax: (617) 542-2241

**CERTIFICATE OF SERVICE**

I, Michael S. Gardener, counsel for IP Company, L.L.C., hereby certify that a copy of the foregoing, *APPELLANT'S REPLY BRIEF*, was served, this day, via CM/ECF or first class mail, postage prepaid, on:

Charles R. Bennett, Jr.
Kathleen E. Cross
Christopher M. Morrison
Hanify & King
One Beacon Street
Boston, MA  02108
Tel: 617-423-0400


                                              /s/ *Michael S. Gardener*
August 19, 2004                               Michael S. Gardener

LIT 1474664v2

17