UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

Civil Action No. 04-11473-PBS
_____

Bankruptcy Case Nos.
04-13855 and 04-13857-JNF
(Jointly Administered)
_____

FORT HILL SQUARE ASSOCIATES and
FORT HILL SQUARE PHASE 2 ASSOCIATES
Debtors.

_____

I.P. COMPANY L.L.C.
Appellant,

v.

FORT HILL SQUARE ASSOCIATES and
FORT HILL SQUARE PHASE 2 ASSOCIATES
Appellees.

_____

## APPELLANT'S REPLY TO BRIEF OF APPELLEE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Submitted by:

R. Robert Popeo, Esq.
Richard E. Mikels, Esq.
Michael S. Gardener, Esq.
Kevin J. Walsh, Esq.
Daniel S. Bleck, Esq.
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Fax: (617) 542-2241

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................... 1

ARGUMENT............................................................................................................................ 1

I.     IP COMPANY IS ENTITLED TO ADEQUATE PROTECTION FOR THE PROPOSED USE OF THE POSTPETITION RENTS, SINCE ABSENT SUCH PROTECTION THE RENTS WILL NOT ONLY "DEPRECIATE," THEY WILL BE LOST FOREVER ............................................................................................ 1

II.    THE SECTION 363 REQUIREMENT OF ADEQUATE PROTECTION DOES NOT DEPEND UPON A PRIOR DEFAULT, AND IN ANY EVENT THE LOANS ARE IN DEFAULT ................................................................................................ 3

III.   IP COMPANY SEEKS NO GREATER RIGHTS AS A RESULT OF THE BANKRUPTCY THAN IT HAD PREPETITION............................................................. 4

IV.   THE DISCREDITED <u>MULLEN</u> DECISION IS INAPPLICABLE IN LIGHT OF THE SUBSEQUENT AMENDMENT TO SECTION 552(b)(2), THE DECISION IN <u>BEAL BANK</u>, AND THE BANKRUPTCY COURT'S OWN AVERSION TO <u>MULLEN</u>........................................................................................................... 6

V.    THERE IS NO DISPUTE THAT CASH COLLATERAL CANNOT BE USED TO FUND ADMINISTRATIVE EXPENSES ABSENT CONSENT OR A SHOWING OF ADEQUATE PROTECTION AND BENEFIT TO THE SECURED CREDITOR............................................................................................................... 8

VI.   THE COMMITTEE DOES NOT DISPUTE THAT IP COMPANY IS ENTITLED TO IMMEDIATE PAYMENT OF NET RENTS IN EXCESS OF THE APPROVED BUDGET EXPENSES................................................................................ 9

CONCLUSION......................................................................................................................... 9

## TABLE OF AUTHORITIES

### FEDERAL CASES

Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship, 248 B.R. 668 (D. Mass. 2000) ...............5, 7

In re Ben Franklin Retail Store, Inc., 210 B.R. 315 (Bankr. N.D. Ill. 1997)..........................5

In re Berens, 41 B.R. 524 (Bankr. D. Minn. 1984) .................................................................2

In re Cafeteria Operators, L.P., 229 B.R. 400 (Bankr. M.D. Tex. 2003) ...............................2

In re CG Chartier Constr., 126 B.R. 956 (E.D. La. 1991) .....................................................2

In re Fed. Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship, 153 B.R. 204
    (N.D. Ill. 1993) ..................................................................................................................2

In re Manville, 43 B.R. 293 (Bankr. S.D.N.Y. 1984)..............................................................4

In re Mount Pleasant Ltd. P'ship, 144 B.R. 727 (Bankr. W.D. Mich. 1992)..........................2

In re Mullen, 172 B.R. 473 (Bankr. D. Mass.1994) .............................................................6, 7

In re Oak Partners, Ltd., 135 B.R. 440 (Bankr. N.D. Ga. 1991) ............................................5

In re Rancourt, 123 B.R. 143 (Bankr. D.N.H. 1991) ..............................................................4

In re Skyler Ridge, 80 B.R. 500 (Bankr. C.D. Cal. 1987) ......................................................4

In re Smithfield Estates, Inc., 48 B.R. 910 (Bankr. D.R.I. 1985) ...........................................5

In re Worldcom, Inc., 304 B.R. 611 (Bankr. S.D.N.Y. 2004) .................................................2

Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305
    (1st Cir. 1993).....................................................................................................................6

### FEDERAL STATUTES

11 U.S.C. § 361(2)....................................................................................................................2

11 U.S.C. § 363.....................................................................................................................3, 4

11 U.S.C. § 363(a) ....................................................................................................................2

11 U.S.C. § 363(c)(2) ............................................................................................................2, 3

11 U.S.C. § 363(e) ...............................................................................................................2, 3

11 U.S.C. § 506(c) ..................................................................................................................8

11 U.S.C. §552 .......................................................................................................................5

11 U.S.C. §552(b) ..................................................................................................................7

11 U.S.C. § 552(b)(2) ..............................................................................................1, 2, 4, 6, 7

# INTRODUCTION

I.P. Company, L.L.C. ("IP Company") respectfully submits this Reply Brief in response to the brief (the "Committee's Brief") filed by the Appellees, Official Committee of Unsecured Creditors. As set forth below, the Committee has failed to advance any argument which would prevent this Court from granting all of the relief sought by IP Company in this appeal.

# ARGUMENT

**I.    IP COMPANY IS ENTITLED TO ADEQUATE PROTECTION FOR THE PROPOSED USE OF THE POSTPETITION RENTS, SINCE ABSENT SUCH PROTECTION THE RENTS WILL NOT ONLY "DEPRECIATE," THEY WILL BE LOST FOREVER**

The Committee argues that IP Company is not entitled to adequate protection for the proposed use of the postpetition rents because the Bankruptcy Court held that the value of IP Company's cash collateral was not declining. This argument is wrong because both the Bankruptcy Court and the Committee are measuring the wrong thing.

The Assignment of Rents executed by the Debtors provides IP Company with a perfected first priority lien on <u>all</u> rents received from the Property. (<u>See</u> IP Company's Initial Brief ("Initial Brief"), App., Tab F at 6-7). Pursuant to section 552(b)(2) of the Bankruptcy Code, this lien expressly extends to all rents received by the Debtors following the filing of the petition in bankruptcy.[1/] IP Company's interest is entirely separate from the mortgage lien that IP Company also has on the realty, as the Bankruptcy Court itself expressly acknowledged. (<u>See</u> Initial Brief,

---

[1/]    Section 552(b)(2) provides in pertinent part:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property . . . then such security interest extends to such rents . . . as assigned by the estate after the commencement of the case to the extent provided in such security agreements, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

1

App., Tab J at 2). The rents subject to this distinct security interest constitute cash collateral. 11 U.S.C. § 363(a).

The Bankruptcy Code, 11 U.S. C. § § 363(c)(2) and 363(e), provides, the Bankruptcy Court itself so found (see Initial Brief, App. Tab J at 2), and the case law is well settled that IP Company, as the secured lender holding first priority liens on both the real estate and the rents, is entitled to adequate protection of both its lien on the real property and its lien on the postpetition rents. See, e.g., In re Fed. Nat'l Mortgage Ass'n. v. Dacon Bolingbrook Assocs. Ltd. P'ship, 153 B.R. 204, 212 (N.D. Ill. 1993); In re CG Chartier Constr., 126 B.R. 956, 960 (E.D. La. 1991); In re Mount Pleasant Ltd. P'ship, 144 B.R. 727, 737 (Bankr. W.D. Mich. 1992).

"Adequate protection" means the provision of additional or replacement collateral. 11 U.S.C. § 361(2). Thus, the Debtors may not make use of the postpetition rents without first providing a lien on assets that are not already encumbered. See, e.g., In re Cafeteria Operators, Inc., 299 B.R. 400, 410 (Bankr. N.D. Tex. 2003); In re Berens, 41 B.R. 524, 526-27 (Bankr. D. Minn. 1984). This regard for the protection of the creditor's security interests in the collateral reflects not only sound bankruptcy policy, but is also rooted in strong Fifth Amendment concerns for the property rights of the lender who, but for the automatic stay provisions of the Bankruptcy Code, would be able to foreclose on its collateral. See, e.g., In re Worldcom, Inc., 304 B.R. 611, 618-19 and n.5 (Bankr. S.D.N.Y. 2004). These rights are even more compelling where, as here, it is undisputed that the collateral securing Debtors' loan is less than the amount owed to IP Company.

In this context, the discussion in the Committee' brief as to whether or not the collateral is stable is wholly irrelevant. The undisputed facts are that IP Company is undersecured, and by virtue of the loan documents and the operation of section 552(b)(2) IP Company already has a

continuing security interest in all of the postpetition rents. This entire cash pool is always subject to IP Company's continuing lien. Accordingly, any use of those rents constitutes a diminishment of the collateral requiring adequate protection. Indeed, once any of the postpetition rents are expended by the Debtors without a lien in some other <u>unencumbered</u> property first being provided, that collateral is lost forever and can never be recouped.

II.  **THE SECTION 363 REQUIREMENT OF ADEQUATE PROTECTION DOES NOT DEPEND UPON A PRIOR DEFAULT, AND IN ANY EVENT THE LOANS ARE IN DEFAULT**

The Committee contends that IP Company is not entitled to adequate protection for the use of its collateral by the Debtors because the Debtors are not in default under the Debtors' agreement with IP Company. This argument is wrong both because section 363 does not require a prior default, and because in any event the loans are in default.

Section 363 specifically requires that each time the Debtors seek to use rents subject to the lien of IP Company, they must either obtain the consent of IP Company or provide IP Company with a replacement lien on property not already encumbered. 11 U.S.C. § § 363(c)(2) and 363(e). There is no condition in section 363 for a prior default to occur before the statute's requirements come into play.

In any event, the loans are in default. The loan documents for International Place One require monthly payments of principal and interest. Failure to make such payments constitutes an event of default. (<u>See</u> *Amendment and Restatement of Mortgage Note (Phase 1) and Phase (2),* contained in IP Company's Designation of Record, Tab 10, Exh. D at 28, Exh. E at 25). The International Place One and International Place Two loans are cross-defaulted. (<u>See</u> Initial Brief, App., Tab C, at 7). As the cash collateral budgets submitted by the Debtors indicate, no principal or interest payments are being made during the 13-week period covered by the budget. (<u>See</u> Initial Brief, App., Tab A, at Exhs. A & B). Accordingly, even if a default were required for the

3

adequate protection provisions of section 363 to apply, which it is not, such a default has occurred and is continuing.

Finally, as a matter of law the very filing of the bankruptcy itself gives rise to an automatic acceleration of the loans. See, e.g., In re Manville, 43 B.R. 293, 297 (Bankr. S.D.N.Y. 1984); In re Skyler Ridge, 80 B.R. 500, 507 (Bankr. C.D. Ca. 1987). Accordingly, under any set of facts the adequate protection requirements of section 363 are applicable.

**III.    IP COMPANY SEEKS NO GREATER RIGHTS AS A RESULT OF THE BANKRUPTCY THAN IT HAD PREPETITION**

The Committee argues that "the lender is not entitled to any greater rights in its collateral that it would have had if the debtor had not filed for bankruptcy" (Committee's Brief, at 2). IP Company does not seek any greater rights. Before the bankruptcy, IP Company had a security interest in all of the rents. It has that same interest in the rents following the bankruptcy, and it is only those identical rights that it seeks to protect through this appeal.

The Committee apparently suggests that the Debtors have no obligation to account to IP Company for those rents collected and expended postpetition. As support the Committee heavily relies on In re Rancourt, 123 B.R. 143, 150 (Bankr. D.N.H. 1991). Rancourt, however, is readily distinguishable from the facts here. First, Rancourt was decided before the 1994 Amendments which added section 552(b)(2) to the Bankruptcy Code. Second, and more importantly, Rancourt deals with an *oversecured* creditor. As a result, the court did not even reach the matters at issue here because in Rancourt, the mortgagee had a "clear equity cushion in the underlying real property." Id. at 152-153. IP Company has no equity cushion and is undisputedly undersecured. Thus, the rationale in Rancourt simply does not apply to the facts here.

4

The Committee also relies on In re Smithfield Estates, Inc., 48 B.R. 910 (Bankr. D.R.I. 1985), for the proposition that "adequate protection [is] not designed or intended to place an undersecured or minimally secured creditor in a better post-filing position than it was in before the stay" (Committee's Brief, at 6). Again, the Committee cites to a case which is inapposite. The issue of rents and section 552 did not even arise in Smithfield. The Court wrote that "notwithstanding certain discrepancies which make it difficult to ascertain an exact amount attributable to post-petition delinquencies, as of June 30, 1984 the debtor was at least five months in default on post-petition mortgage and tax payments . . . [a]t this stage, where the equity cushion is marginal, at best, regular payments are essential to maintain the status-quo." Smithfield, 48 B.R. at 915. Thus, the proposition on which the Committee relies (i.e. adequate protection should not improve the position of the creditor) only refers to the underlying real property, and not to the "separate" collateral – the rents. Further, IP Company is not seeking to "better [its] post-filing position"; rather it is simply looking to maintain the status quo by seeking adequate protection for the use of its postpetition rents, in which rents IP Company already has a security interest.

Similarly, the Committee's reliance on In re Oaks Partners, Ltd., 135 B.R. 440 (Bankr. N.D. Ga. 1991), and In re Ben Franklin Retail Store, Inc., 210 B.R. 315 (Bankr. N.D. Ill 1997), can also be summarily disregarded. In Oak Partners, the issue before the Court was whether to adopt the "addition" or "subtraction" approach. The Court ultimately adopted the "subtraction" approach, a conclusion explicitly rejected by the District Court in Beal Bank S.S.B. v. Waters Edge Ltd. P'ship, 248 B.R. 668 (D. Mass. 2000). Finally, the holding in Ben Franklin Retail Stores, where the Court concluded that the lender could not enter into an agreement to pay debtor's counsel out of the proceeds of its collateral following liquidation of the debtor's assets,

5

has been rejected in the First Circuit by Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305 (1st Cir. 1993).

The Committee has failed to provide any case law to support their argument that IP Company is somehow "bettering" its position or that the Debtors do not have to account to IP Company for the use of its cash collateral.

## IV. THE DISCREDITED MULLEN DECISION IS INAPPLICABLE IN LIGHT OF THE SUBSEQUENT AMENDMENT TO SECTION 552(b)(2), THE DECISION IN BEAL BANK, AND THE BANKRUPTCY COURT'S OWN AVERSION TO MULLEN

The Committee argues for the resurrection of In re Mullen, 172 B.R. 473 (Bankr. D. Mass. 1994). Even the Debtors did not have the heart to shoulder such a burden.[2/] For very good reasons, the commentators have uniformly discredited the decision, the Bankruptcy Court itself repudiated the case, the holding is inconsistent with the subsequent Congressional enactment of section 552(b)(2), and the case is effectively trumped by Judge Saris' opinion in Beal Bank.

The Committee headnotes its discussion of this issue by asserting that "[t]he *Mullen* decision is persuasive" (Committee's Brief, at 6). Yet nowhere in their brief does the Committee even attempt to address the observations of the numerous critics, addressed at pages 17-18 of IP Company's Initial Brief, discrediting the ruling in Mullen. The Committee cannot cite to a single commentator who has found the Mullen rationale "persuasive."

As pointed out in the Initial Brief at 17, the Bankruptcy Court itself went out of its way to attempt to disassociate its decision on the cash collateral motion from Mullen. The Committee cannot explain why this Court should find "persuasive" the very decision that was expressly repudiated by the court whose order they seek to uphold on this appeal.

---

[2/] Indeed, the Debtors' brief is completely silent regarding Mullen.

6

Moreover, <u>Mullen</u> was decided before the Congressional amendment that enacted section 552(b)(2). As discussed at length in the Initial Brief at 14-17, the decision in <u>Mullen</u> is thoroughly inconsistent with the security interest in postpetition rents established by section 552(b)(2). If a debtor were free to expend each month's rents without first providing a replacement lien on other unencumbered property, the security interest in all postpetition rents created by virtue of section 552(b)(2) would be rendered meaningless. The Committee's brief fails to square the rights created by Congress in section 552(b)(2) with the effect of the holding in <u>Mullen</u>. In short, whatever weight <u>Mullen</u> carried is gone with the adoption of Section 552(b)(2).

Finally, the Committee is also unable to reconcile the decision in <u>Mullen</u> with Judge Saris' opinion in <u>Beal Bank</u>. As addressed in IP Company's Initial Brief at 17-20, the Bankruptcy Court's decision in <u>Mullen</u> simply cannot be squared with the later ruling by the District Court in <u>Beal Bank</u>. Nowhere in its brief does the Committee even attempt to rebut this obvious point. As the Court held in <u>Beal Bank</u>, lenders have a continuing lien on all accumulated net rents under Section 552(b). 248 B.R. at 685-86. If <u>Mullen</u> were still good law and debtors were free to spend each month's rents without any requirement to first provide adequate protection for that collateral, the entire ruling in <u>Beal Bank</u> would effectively be voided. Because the District Court decision in <u>Beal Bank</u> came after the Bankruptcy Court's ruling in <u>Mullen</u> and after the enactment of section 552(b)(2) -- which statute formed the root of the decision in <u>Beal Bank</u>, 248 B.R. at 685 -- then <u>Mullen</u> plainly can no longer be found, as the Committee suggests, to be "persuasive."

Accordingly, for all these reasons the Committee's solitary effort to resurrect a ruling which has been uniformly discredited by scholars, superseded by an act of Congress, dismissed

7

by the Bankruptcy Court itself, and trumped by the subsequent decision of the District Court, must fail.

**V.    THERE IS NO DISPUTE THAT CASH COLLATERAL CANNOT BE USED TO FUND ADMINISTRATIVE EXPENSES ABSENT CONSENT OR A SHOWING OF ADEQUATE PROTECTION AND BENEFIT TO THE SECURED CREDITOR**

As explained in the Initial Brief, at 26-27, under section 506(c) cash collateral can only be used to pay administrative expenses of a debtor's bankruptcy where the secured creditor consents, or where the expenditure will benefit the secured creditor and adequate protection is provided. IP Company has consented to the expenditure of cash collateral for the operation and maintenance of the Property. IP Company also consents to the use of the cash collateral to pay the reasonable professional fees of the counsel for the Committee. The Committee is mostly vendors whose services are needed to properly maintain the Property, and such creditors only exist at all because the minority equity owner of the Debtors deliberately failed to pay such vendors despite having more than enough cash on hand to do so -- and despite paying in full his affiliated management company -- in order to create an "impaired class" and thereby gain a tactical advantage in the bankruptcy. IP Company does not object to the payment of reasonable counsel fees for those vendors. The only expenditure that IP Company is objecting to is the use of its cash collateral by that minority owner to pay his lawyers to litigate against the interests of IP Company. No authority is cited, or exists, that would mandate such use of the secured lender's cash collateral.

VI. **THE COMMITTEE DOES NOT DISPUTE THAT IP COMPANY IS ENTITLED TO IMMEDIATE PAYMENT OF NET RENTS IN EXCESS OF THE APPROVED BUDGET EXPENSES**

On page 24 of its Initial Brief, IP Company established its right to immediate payment of all net rents in excess of the Bankruptcy Court-approved operating expenses. Because neither the Debtors nor the Committee dispute that the Bankruptcy Court erred in failing to order such payment, this relief should be granted.

## CONCLUSION

For the reasons stated above and in its Initial Brief, IP Company respectfully submits that this Court should grant the relief sought in this appeal.

Dated: August 19, 2004                    Respectfully submitted,

                                          IP COMPANY, L.L.C.

                                          By its attorneys,


                                          */s/ Michael S. Gardener*_____
                                          R. Robert Popeo, BBO No. 403360
                                          Richard E. Mikels, BBO No. 345620
                                          Michael S. Gardener, BBO No. 185040
                                          Kevin J. Walsh, BBO No. 629984
                                          Daniel S. Bleck, BBO No. 560328
                                          Mintz, Levin, Cohn, Ferris,
                                            Glovsky and Popeo, P.C.
                                          One Financial Center
                                          Boston, Massachusetts 02111
                                          Telephone: (617) 542-6000
                                          Fax: (617) 542-2241

## CERTIFICATE OF SERVICE

      I, Michael S. Gardener, counsel for IP Company, L.L.C., hereby certify that a copy of the foregoing, *APPELLANT'S REPLY TO BRIEF OF APPELLEE OFFICIAL COMMITTEE OF UNSECURED CREDITORS*, was served, this day, via CM/ECF or first class mail, postage prepaid, on:

Charles R. Bennett, Jr.
Kathleen E. Cross
Christopher M. Morrison
Hanify & King
One Beacon Street
Boston, MA  02108
Tel: 617-423-0400

August 19, 2004

/s/ *Michael S. Gardener*
Michael S. Gardener

LIT 1473634v3